Jeff D. Friedman (Cal. Bar No. 173886)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
jefff@hbsslaw.com

Steve W. Berman (*pro hac vice* to be filed)
Thomas E. Loeser (Cal. Bar No. 202724)
Ashley Bede (*pro hac vice* to be filed)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com
toml@hbsslaw.com
ashleyb@hbsslaw.com

Terrence A. Beard (Cal. Bar No. 98013)
LAW OFFICES OF TERRENCE A. BEARD
525 Marina Blvd.
Pittsburg, CA  94565
Telephone: (925) 778-1060
Facsimile:  (925) 473-9098
TBeard1053@aol.com

*Counsel for Plaintiffs and Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CATHERINE PAPASAN, NELSON GOEHLE, ANDREW YOUNG, JIMMY BYERS, CHRISTOPHER JOHNSTON, and all persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DOMETIC CORPORATION, a Delaware Corporation; and DOMETIC LLC, a Delaware Limited Liability Company,<br><br>Defendants. | No.<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

1

2

**TABLE OF CONTENTS**

<u>Page</u>

I.     INTRODUCTION ..................................................................................................1

II.    JURISDICTION AND VENUE ...........................................................................3

III.   PARTIES ..............................................................................................................3

       A.    Plaintiff Catherine Papasan ......................................................................3

       B.    Plaintiff Nelson Goehle ............................................................................5

       C.    Plaintiff Andrew Young ............................................................................7

       D.    Plaintiff Jimmy Byers................................................................................8

       E.    Christopher Johnston ..............................................................................10

       F.    Defendants ...............................................................................................12

IV.    FACTUAL ALLEGATIONS .............................................................................13

       A.    How Gas Absorption Refrigerators Work ..............................................13

       B.    Defendants' Defective Gas Absorption Refrigerators Contain Common
             Design and Manufacturing Defects That Have Caused Thousands of Fires..............14

       C.    Defendants Have Twice Recalled *Some* of the Defective Refrigerators, but
             the Recalls Have Done Nothing to Alleviate the Serious Safety Defects ..................21

       D.    Defendants Produced, Marketed, and Sold the Defective Gas Absorption
             Refrigerators Despite Actual Knowledge of the Defects and Risk of Fires...............24

       E.    Defendants Possess a Safer Alternative to the Defective Gas Absorption
             Refrigerators ...........................................................................................30

       F.    Defendants Have an Ongoing Duty to Disclose Material Facts about the
             Defective Gas Absorption Refrigerators That They Placed into the Stream
             of Commerce ...........................................................................................31

       G.    Defendants Have Concealed and Suppressed Material Facts about the
             Ongoing Fire Danger Despite any Recalls or Retrofits................................32

       H.    The Retrofits Defendants Installed Through Their Recalls Cause Injury to
             Consumers by Concealing and Suppressing that the Retrofit Devices
             Destroy Their Refrigerators in an Ineffective Effort to Prevent a Fire
             Caused by the Unrepaired Defect ...........................................................34

V.     TOLLING OF THE STATUTES OF LIMITATION .........................................38

       A.    Discovery Rule Tolling ...........................................................................38

       B.    Fraudulent Concealment Tolling.............................................................39

C.  Estoppel ............................................................................... 39

VI.  CLASS ALLEGATIONS ................................................................ 39

VII.  CLAIMS ON BEHALF OF THE NATIONWIDE CLASS ........................ 42

COUNT I VIOLATION OF MAGNUSON-MOSS WARRANTY ACT  (15 U.S.C. § 2301, *ET SEQ.*) ........................................................................... 42

VIII.  STATE LAW COUNTS ................................................................ 45

A.  CALIFORNIA ................................................................ 45

COUNT I VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT FOR BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (CAL. CIV. CODE §§ 1792 & 1791.1) ................................................. 45

COUNT II VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE § 17200, *ET SEQ.*) .............................. 47

COUNT III BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY (CAL. COM. CODE § 2314) ........................................................ 48

COUNT IV BREACH OF CONTRACT/COMMON LAW WARRANTY ................... 49

COUNT V VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT (CAL. CIV. CODE § 1750, *ET SEQ.*) .................................................... 50

COUNT VI VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW (CAL. BUS. & PROF. CODE §§ 17500, *ET SEQ.*) ...................................... 53

COUNT VII UNJUST ENRICHMENT ....................................................... 55

COUNT VIII NEGLIGENCE .................................................................. 55

B.  OHIO ........................................................................ 57

COUNT I VIOLATIONS OF THE CONSUMER SALES PRACTICES ACT (OHIO REV. CODE §§ 1345.01, *ET SEQ.*) .............................................. 57

COUNT II BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (OHIO REV. CODE § 1302.27 (U.C.C. § 2-314)) ....................................... 59

COUNT III UNJUST ENRICHMENT ........................................................ 60

COUNT IV NEGLIGENCE .................................................................. 60

C.  TEXAS ...................................................................... 62

COUNT I VIOLATIONS OF THE DECEPTIVE TRADE PRACTICES ACT (TEX. BUS. & COM. CODE §§ 17.41, *ET SEQ.*) ...................................... 62

COUNT II BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (TEX. BUS. & COM. CODE § 2.314) .................................................... 63

COUNT III FRAUD BY CONCEALMENT ..................................................................................... 63

COUNT IV UNJUST ENRICHMENT ......................................................................................... 65

COUNT V NEGLIGENCE ............................................................................................................ 66

       D.     WASHINGTON ................................................................................................ 68

COUNT I VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT
     (WASH. REV. CODE ANN. §§ 19.86.010, *ET SEQ.*) ............................................ 68

COUNT II BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (WASH.
     REV. CODE. ANN. § 62A.2-614) ........................................................................ 71

COUNT III UNJUST ENRICHMENT ....................................................................................... 72

COUNT IV NEGLIGENCE ........................................................................................................ 73

PRAYER FOR RELIEF ............................................................................................................... 75

DEMAND FOR JURY TRIAL .................................................................................................... 75

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I.   INTRODUCTION

1.      Millions of Americans own Recreational Vehicles ("RVs") and boats that are equipped with Dometic gas absorption refrigerators.  These refrigerators are ubiquitous in RVs and boats because they can run on AC current, DC current, and/or propane gas.  Defendants advertise and promise consumers that the refrigerators are safe to use for their intended purpose.  In reality, the refrigerators contain dangerous defects that can cause them to vent pressurized hydrogen and ignite a fire—a remarkably dangerous event in the close confines of an RV or boat where Dometic gas absorption refrigerators are used.

2.      Every gas absorption refrigerator manufactured by Defendants since 1997 shares common technology, common cooling unit design, and common defects, including the propensity of the refrigerator's cooling unit boiler tube to corrode, crack, and expel hydrogen gas at high pressure (the "Defective Gas Absorption Refrigerators").  Because the Defective Gas Absorption Refrigerators use a pressurized closed-loop system, the cracking of the boiler tube and venting of hydrogen gas can occur even when the refrigerator is not powered, *i.e.*, does not have the cooling unit in use.  The vented hydrogen can be ignited by any competent ignition source in the refrigerator cabinet and it can spontaneously combust due to an uncontrolled high pressure release.  Venting hydrogen can result in catastrophic fires that threaten the lives and property of product owners, as well as persons and property within the vicinity of a burning RV or boat.[1]

3.      Defendants have at all times maintained various databases to track the real-world performance of the Defective Gas Absorption Refrigerators, including, but not limited to, electronic databases of fire claims reported to Defendants allegedly involving their refrigerators, and warranty/return databases of failed refrigerators returned from the field.  Defendants, therefore, have at all times had actual knowledge of the dangerous defects inherent in their Defective Gas Absorption Refrigerators, but have failed and refused to eliminate the defects and/or provide consumers with adequate warnings or instructions on the safe use of the product.

---

[1] Anyone questioning the danger of a hydrogen gas release need only recall the infamous Hindenburg disaster, which was the result of a hydrogen gas explosion in a dirigible airship.

CLASS ACTION COMPLAINT - 1
010520-11  866131 V1

4.      While Defendants have instituted two voluntary recalls of the Defective Gas Absorption Refrigerators—one in 2006 (NHTSA No. 06E-076) and one in 2008 (NHTSA No. 08E-032)—the recalls have been wholly inadequate and ineffective in that:  (1) upon information and belief, the recalls have included only a small percentage of the total population of Defective Gas Absorption Refrigerators manufactured since 1997, notwithstanding common design defects and common safety risks; and (2) the recall remedy chosen by the Defendants did not, and has not, remedied or eliminated the defects inherent in the Defective Gas Absorption Refrigerators' cooling unit design.

5.      Defendants have used and manipulated the recall process to conceal the true dangers and safety risks inherent in their Defective Gas Absorption Refrigerators from both federal regulators and consumers.  As a result, United States highways and campgrounds are flush with RVs containing Defective Gas Absorption Refrigerators that can, and with alarming regularity do, spontaneously burst into flames.

6.      Plaintiffs are informed and believe, and thereon allege, that the Defective Gas Absorption Refrigerators have caused and/or contributed to at least 3,000 fires since 1997, resulting in over $100,000,000 in property damage and personal injury claims, all of which Defendants have tracked through a variety of non-public internal databases.  Notwithstanding this knowledge, Defendants have never disclosed the true nature and scope of the public safety risk that the Defective Gas Absorption Refrigerators' represent to either consumers or to federal regulators.  Instead, Defendants engage in a consistent pattern and practice of deception to conceal the true safety risks inherent in the Defective Gas Absorption Refrigerators.

7.      Defendants' duplicitous pattern and practice of conduct includes, but is not limited to, retaining a cadre of regionally-based fire investigators, third-party claims administrators, attorneys, and various engineering and metallurgical experts in fire origin and cause who, upon each report of a refrigerator fire or explosion, are deployed to the scene for the express purpose of diverting attention from the Defective Gas Absorption Refrigerators as the cause of the fire, and failing that, to quickly and quietly resolve any fire claim under strict confidentiality provisions so as to hide from the public

and from consumers the serious and continuing danger posed by the Defective Gas Absorption Refrigerators.

8.    Defendants are receiving new fire claims involving their Defective Gas Absorption Refrigerators at an alarming rate.  The inherent defects and frequency of fires, and Defendants' suppression of facts pertaining thereto, are part of a consistent, organized pattern and practice that is applied equally and uniformly to all consumers, and occurs nationwide.

9.    Through this action, Plaintiffs, on behalf of themselves and a class of all owners of RVs and boats that have installed the Defective Gas Absorption Refrigerators, seek to force Defendants (1) to make effective repairs and/or replacement of their defective and dangerous consumer products and (2) compensate consumers for the diminution of value of their RVs/boats as a result of these manufacturer defects.  Plaintiffs and the proposed class do not, in this action, seek damages on a class-wide basis for personal injuries sustained as a result of failure, explosion, or fire caused by Defendants' Defective Gas Absorption Refrigerators.

## II.    JURISDICTION AND VENUE

10.    This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from one Defendant, there are more than 100 class members nationwide; and the aggregate amount in controversy exceeds $5,000,000 and minimal diversity exists.

11.    Venue is proper in this District under 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to the claims occurred and/or emanated from this District, and Defendants have caused harm to Class members residing in this District.

## III.    PARTIES

**A.    Plaintiff Catherine Papasan**

12.    Plaintiff Catherine Papasan ("Papasan") is, and at all times relevant hereto was, a resident of Contra Costa County, California.  In 2005, Papasan purchased a new 2006 model year 27-foot R-Vision Trail Bay trailer from East Bay RV in Martinez, California, VIN No. 4WYT06M2161403439 (hereinafter the "Papasan RV").  The Papasan RV was equipped with a

Dometic Model 2652 gas absorption refrigerator, Serial No. 50605147, as original equipment (hereinafter the "Papasan Refrigerator").  As with all Class members, the Papasan Refrigerator was designed, manufactured, sold, distributed, constructed, manufactured and/or assembled and put into the stream of commerce by Defendants.  At all relevant times thereafter, Papasan owned and possessed the Papasan Refrigerator in California, and thus was owed the ongoing duties to disclose dangerous defects by Defendants in California.

13.     Papasan at all times used the Papasan Refrigerator for the purpose for which it was intended.  Papasan followed all directions and instructions from the Defendants regarding the proper use and maintenance of the Papasan Refrigerator.  Papasan did not make any modifications to the Papasan Refrigerator, but kept it in the same condition as when he first purchased the Papasan RV.

14.     The Papasan Refrigerator contained and/or developed serious safety-related defects as more fully described herein.  Defendants at all times knew or should have known of the defects in their products, and the safety risks those defects posed to Papasan and other members of the Class, but actively concealed and/or failed to disclose those facts, warn of the safety risks involved in the use of the product, or conduct an adequate recall/retrofit campaign to eliminate the defects and safety risks.

15.     The facts concealed by Defendants were material.  Papasan and the Class were at all times ordinary consumers acting reasonably under the circumstances, who were not versed in the art of inspecting and judging Defective Gas Absorption Refrigerators, including the Papasan Refrigerator, or involved in their preparation or manufacture.  Rather, all information regarding the Papasan Refrigerator's defects, risks and safety hazards was in the exclusive possession of Defendants.  Defendants therefore had an ongoing duty, throughout the Class Period, to disclose facts regarding product safety, defects, and risks to Papasan and the Class.

16.     Reasonable consumers, like Papasan and the Class, would want to know about the Defective Gas Absorption Refrigerators' inherent defects, ongoing risks and safety hazards.  Like other reasonable consumers, had Papasan been provided all material facts regarding the Papasan Refrigerator's inherent defects, risks and safety hazards that Defendants exclusively possessed but omitted, withheld and concealed, Papasan would have been aware of the safety concerns present and

acted differently, including, but not limited to, not purchasing (or retaining) a RV equipped with one of the Defective Gas Absorption Refrigerators containing the latent defects described herein.

17.     Defendants' wrongful conduct as described herein has caused and will continue to cause Papasan and all Class members common injury-in-fact.  Among other things—and regardless of whether Defendants paid for any recall or retrofit—as a result of Defendants' conduct described herein, Papasan and all Class members lost the benefit of their bargain as they unknowingly overpaid for a defective refrigerator; the Defective Gas Absorption Refrigerators have diminished in value; the Defective Gas Absorption Refrigerators have suffered a loss of usefulness; and Papasan and all Class members are or have been exposed to further costs and expenses to dispose of and/or replace said refrigerators, in that the refrigerators' cooling units contain chemicals/substances that are corrosive (ammonia), explosive (hydrogen) and a known carcinogen (sodium chromate).

18.     The amount of common injury and damage will be proven at trial according to proof.

**B.     Plaintiff Nelson Goehle**

19.     Plaintiff Nelson Goehle ("Goehle") is, and at all times relevant hereto was, a resident of Thurston County, Washington.  In June 2005, Goehle purchased a model year 2000 National Seaview 33 foot motorhome (hereinafter the "Goehle RV").  The Goehle RV was equipped with a Dometic RM2652 gas absorption refrigerator, Serial No. 01202638 (hereinafter the "Goehle Refrigerator").  As with all Class members, the Goehle Refrigerator was designed, manufactured, sold, distributed, constructed, manufactured and/or assembled and put into the stream of commerce by Defendants, and each of them.  At all relevant times thereafter, Goehle owned and possessed the Goehle Refrigerator in Washington, and thus was owed the ongoing duties to disclose dangerous defects by Defendants in Washington.

20.     Goehle at all times used the Goehle Refrigerator for the purpose for which it was intended.  Goehle followed all directions and instructions from the Defendants regarding the proper use and maintenance of the Goehle Refrigerator.  Goehle did not make any modifications to the Goehle Refrigerator, but kept it in the same condition as when he first purchased the Goehle RV.

21.     Goehle registered the Goehle Refrigerator by returning the registration card in accordance with the registration instructions.  Goehle handwrote "second owner" on the registration

card.  Goehle did not receive any information regarding recalls or retrofit opportunities for the Goehle Refrigerator.

22.     On March 27, 2016, Goehle witnessed flames from the Goehle RV's refrigerator vent while the Goehle RV was parked on the side of Goehle's residence.  Upon information and belief, the origin and cause of the fire was the Goehle Refrigerator.

23.     The Goehle Refrigerator contained and/or developed serious safety-related defects as more fully described herein.  Defendants at all times knew or should have known of the defects in their products, and the safety risks those defects posed to Goehle and other members of the Class, but actively concealed and/or failed to disclose those facts, warn of the safety risks involved in the use of the product, or conduct an adequate recall/retrofit campaign to eliminate the defects and safety risks.

24.     The facts concealed by Defendants were material.  Goehle and the Class were at all times ordinary consumers acting reasonably under the circumstances, who were not versed in the art of inspecting and judging Defective Gas Absorption Refrigerators, including the Goehle Refrigerator, or involved in their preparation or manufacture.  Rather, all information regarding the Goehle Refrigerator's defects, risks, and safety hazards was in the exclusive possession of Defendants.  Defendants, therefore had an ongoing duty, throughout the Class Period, to disclose facts regarding product safety, defects, and risks to Goehle and the Class.

25.     Reasonable consumers, like Goehle and the Class, would want to know about the Defective Gas Absorption Refrigerators' inherent defects, ongoing risks and safety hazards.  Like other reasonable consumers, had Goehle been provided all material facts regarding the Goehle Refrigerator's inherent defects, risks, and safety hazards that Defendants exclusively possessed but omitted, withheld and concealed, Goehle would have been aware of the safety concerns present and acted differently, including, but not limited to, not purchasing (or retaining) a RV equipped with one of the Defective Gas Absorption Refrigerators containing the latent defects described herein.

26.     Defendants' wrongful conduct as described herein has caused and will continue to cause Goehle and all Class members common injury-in-fact.  Among other things—and regardless of whether Defendants paid for any recall or retrofit—as a result of Defendants' conduct described herein, Goehle and all Class members lost the benefit of their bargain as they unknowingly overpaid

1    for a defective refrigerator; the Defective Gas Absorption Refrigerators have diminished in value; the

2    Defective Gas Absorption Refrigerators have suffered a loss of usefulness; and Goehle and all Class

3    members are or have been exposed to further costs and expenses to dispose of and/or replace said

4    refrigerators, in that the refrigerators' cooling units contain chemicals/substances that are corrosive

5    (ammonia), explosive (hydrogen) and a known carcinogen (sodium chromate).

6           27.     The amount of common injury and damage will be proven at trial according to proof.

7    **C.     Plaintiff Andrew Young**

8           28.     Plaintiff Andrew Young ("Young") is, and at all times relevant hereto was, a resident

9    of Greene County, Ohio.  In 2009, Young purchased a previously owned model year 2002

10   Gulfstream Yellowstone RV, identification number 1NL1YFR212059781 (hereinafter the "Young

11   RV").  The Young RV was equipped with a Dometic RM2852 gas absorption refrigerator

12   (hereinafter the "Young Refrigerator").  As with all Class members, the Young Refrigerator was

13   designed, manufactured, sold, distributed, constructed, manufactured and/or assembled and put into

14   the stream of commerce by Defendants.  At all relevant times thereafter, Young owned and

15   possessed the Young Refrigerator in Ohio, and thus was owed the ongoing duties to disclose

16   dangerous defects by Defendants in Ohio.

17          29.     Young at all times used the Young Refrigerator for the purpose for which it was

18   intended.  Young followed all directions and instructions from Defendants regarding the proper use

19   and maintenance of the Young Refrigerator.  Young did not make any modifications to the Young

20   Refrigerator, but kept it in the same condition as when he first purchased the Young RV.  Young did

21   not receive any information regarding recalls or retrofit opportunities for the Young Refrigerator.

22          30.     On August 16, 2015, the Young RV erupted into flames.  Upon information and

23   belief, the origin and cause of the fire was the Young Refrigerator.

24          31.     The Young Refrigerator contained and/or developed serious safety-related defects as

25   more fully described herein.  Defendants at all times knew or should have known of the defects in

26   their products, and the safety risks those defects posed to Young and other members of the Class, but

27   actively concealed and/or failed to disclose those facts, warn of the safety risks involved in the use of

28   the product, or conduct an adequate recall/retrofit campaign to eliminate the defects and safety risks.

CLASS ACTION COMPLAINT - 7
010520-11  866131 V1

32.     The facts concealed by Defendants were material.  Young and the Class were at all times ordinary consumers acting reasonably under the circumstances, who were not versed in the art of inspecting and judging Defective Gas Absorption Refrigerators, including the Young Refrigerator, or involved in their preparation or manufacture.  Rather, all information regarding the Young Refrigerator's defects, risks, and safety hazards was in the exclusive possession of Defendants, and each of them.  Defendants, and each of them, therefore had an ongoing duty, throughout the Class Period, to disclose facts regarding product safety defects and risks to Young and the Class.

33.     Reasonable consumers, like Young and the Class, would want to know about the Defective Gas Absorption Refrigerators' inherent defects, ongoing risks, and safety hazards.  Like other reasonable consumers, had Young been provided all material facts regarding the Young Refrigerator's inherent defects, risks, and safety hazards that Defendants exclusively possessed but omitted, withheld and concealed, Young would have been aware of the safety concerns present and acted differently, including, but not limited to, not purchasing (or retaining) a RV equipped with one of Defective Gas Absorption Refrigerators containing the latent defects described herein.

34.     Defendants' wrongful conduct as described herein has caused and will continue to cause Young and all Class members common injury-in-fact.  Among other things—and regardless of whether Defendants paid for any recall or retrofit—as a result of Defendants' conduct described herein, Young and all Class members lost the benefit of their bargain as they unknowingly overpaid for a defective refrigerator; the Defective Gas Absorption Refrigerators have diminished in value; the Defective Gas Absorption Refrigerators have suffered a loss of usefulness; and Young and all Class members are or have been exposed to further costs and expenses to dispose of and/or replace said refrigerators, in that the refrigerators' cooling units contain chemicals/substances that are corrosive (ammonia), explosive (hydrogen) and a known carcinogen (sodium chromate).

35.     The amount of common injury and damage will be proven at trial according to proof.

**D.     Plaintiff Jimmy Byers**

36.     Plaintiff Jimmy Byers ("Byers") is, and at all times relevant hereto was, a resident of Polk County, Texas.  On April 2, 2012, Byers purchased a model year 2011 Big Horn Fifth Wheel (hereinafter the "Byers RV") that was equipped with a Dometic RM1350 gas absorption refrigerator,

serial number 03796816 (hereinafter the "Byers Refrigerator").  As with all Class members, the Byers Refrigerator was designed, manufactured, sold, distributed, constructed, manufactured and/or assembled and put into the stream of commerce by Defendants, and each of them.  At all relevant times thereafter, Byers owned and possessed the Byers Refrigerator in Texas, and thus was owed the ongoing duties to disclose dangerous defects by Defendants in Texas.

37.     Byers at all times used the Byers Refrigerator for the purpose for which it was intended.  Byers followed all directions and instructions from Defendants regarding the proper use and maintenance of the Byers Refrigerator.

38.     In November 2014, the cooling unit in the Byers Refrigerator stopped working and Byers had it replaced by Camperland Trailer Sales in Conroe, Texas.  The replacement cooling unit was manufactured in 2014, model CU 949E, number 42388807.

39.     The Byers Refrigerator contained and/or developed serious safety-related defects as more fully described herein.  Defendants at all times knew or should have known of the defects in their products, and the safety risks those defects posed to Byers and other members of the Class, but actively concealed and/or failed to disclose those facts, warn of the safety risks involved in the use of the product, or conduct an adequate recall/retrofit campaign to eliminate the defects and safety risks.

40.     The facts concealed by Defendants were material.  Byers and the Class were at all times ordinary consumers acting reasonably under the circumstances, who were not versed in the art of inspecting and judging Defective Gas Absorption Refrigerators, including the Byers Refrigerator, or involved in their preparation or manufacture.  Rather, all information regarding the Byers Refrigerator's defects, risks, and safety hazards was in the exclusive possession of Defendants, and each of them.  Defendants, and each of them, therefore had an ongoing duty, throughout the Class Period, to disclose facts regarding product safety, defects, and risks to Byers and the Class.

41.     Reasonable consumers, like Byers and the Class, would want to know about the Defective Gas Absorption Refrigerators' inherent defects, ongoing risks, and safety hazards.  Like other reasonable consumers, had Byers been provided all material facts regarding the Byers Refrigerator's inherent defects, risks, and safety hazards that Defendants exclusively possessed but omitted, withheld and concealed, Byers would have been aware of the safety concerns present and

acted differently, including, but not limited to, not purchasing (or retaining) a RV equipped with one of the Defective Gas Absorption Refrigerators containing the latent defects described herein.

42.     Defendants' wrongful conduct as described herein has caused and will continue to cause Byers and all Class members common injury-in-fact.  Among other things—and regardless of whether Defendants paid for any recall or retrofit—as a result of Defendants' conduct described herein, Byers and all Class members lost the benefit of their bargain as they unknowingly overpaid for a defective refrigerator; the Defective Gas Absorption Refrigerators have diminished in value; the Defective Gas Absorption Refrigerators have suffered a loss of usefulness; and Byers and all Class members are or have been exposed to further costs and expenses to dispose of and/or replace said refrigerators, in that the refrigerators' cooling units contain chemicals/substances that are corrosive (ammonia), explosive (hydrogen) and a known carcinogen (sodium chromate).

43.     The amount of common injury and damage will be proven at trial according to proof.

**E.     Christopher Johnston**

44.     Plaintiff Christopher Johnston ("Johnston") is, and at all times relevant hereto was, a resident of Fort Worth, Texas.  On April 7, 2008, from Fun Time RV in Cleburn, Texas, Johnston purchased a model year 2008 Palomino Sabre Fifth Wheel, VIN No. 4X4FSRG2083000536 (hereinafter the "Johnston RV") that was equipped with a 2-door Dometic gas absorption refrigerator (hereinafter the "Johnston Refrigerator").  As with all Class members, the Johnston Refrigerator was designed, manufactured, sold, distributed, constructed, manufactured and/or assembled and put into the stream of commerce by Defendants.  At all relevant times thereafter, Johnston owned and possessed the Johnston Refrigerator in Texas, and thus was owed the ongoing duties to disclose dangerous defects by Defendants in Texas.

45.     Johnston at all times used the Johnston Refrigerator for the purpose for which it was intended.  Johnston followed all directions and instructions from Defendants regarding the proper use and maintenance of the Johnston Refrigerator.  Johnston did not make any modifications to the Johnston Refrigerator, but kept it in the same condition as when he first purchased the Johnston RV.  Johnston did not receive any information regarding recalls or retrofit opportunities for the Johnston Refrigerator.

46.     The Johnston Refrigerator contained and/or developed serious safety-related defects as more fully described herein.  Defendants at all times knew or should have known of the defects in their products, and the safety risks those defects posed to Johnston and other members of the Class, but actively concealed and/or failed to disclose those facts, warn of the safety risks involved in the use of the product, or conduct an adequate recall/retrofit campaign to eliminate the defects and safety risks.

47.     The facts concealed by Defendants were material.  Johnston and the Class were at all times ordinary consumers acting reasonably under the circumstances, who were not versed in the art of inspecting and judging Defective Gas Absorption Refrigerators, including the Johnston Refrigerator, or involved in their preparation or manufacture.  Rather, all information regarding the Johnston Refrigerator's defects, risks, and safety hazards was in the exclusive possession of Defendants.  Defendants therefore had an ongoing duty, throughout the Class Period, to disclose facts regarding product safety defects and risks to Johnston and the Class.

48.     Reasonable consumers, like Johnston and the Class, would want to know about the Defective Gas Absorption Refrigerators' inherent defects, ongoing risks, and safety hazards.  Like other reasonable consumers, had Johnston been provided all material facts regarding the Johnston Refrigerator's inherent defects, risks, and safety hazards that Defendants exclusively possessed but omitted, withheld and concealed, Johnston would have been aware of the safety concerns present and acted differently, including, but not limited to, not purchasing (or retaining) a RV equipped with one of the Defective Gas Absorption Refrigerators containing the latent defects described herein.

49.     Defendants' wrongful conduct as described herein has caused and will continue to cause Johnston and all Class members common injury-in-fact.  Among other things—and regardless of whether Defendants paid for any recall or retrofit—as a result of Defendants' conduct described herein, Johnston and all Class members lost the benefit of their bargain as they unknowingly overpaid for a defective refrigerator; the Defective Gas Absorption Refrigerators have diminished in value; the Defective Gas Absorption Refrigerators have suffered a loss of usefulness; and Johnston and all Class members are or have been exposed to further costs and expenses to dispose of and/or

1    replace said refrigerators, in that the refrigerators' cooling units contain chemicals/substances that

2    are corrosive (ammonia), explosive (hydrogen) and a known carcinogen (sodium chromate).

3         50.    The amount of common injury and damage will be proven at trial according to proof.

4    **F.    Defendants**

5         51.    Dometic Corporation is a Delaware corporation with its headquarters and principal

6    place of business at 9100 Shelbyville Rd. in Louisville, Kentucky.  Dometic Corporation is a wholly

7    owned subsidiary of Dometic AB.

8         52.    Dometic LLC is a Delaware Limited Liability Company, with its headquarters and

9    principal place of business at 2320 Industrial Parkway in Elkhart, Indiana.  Plaintiffs are informed

10   and believe and thereon allege that, at all times relevant hereto, Dometic LLC was operated as a

11   division or wholly owned subsidiary of Dometic Corporation.

12        53.    Defendants' Dometic-branded products, including the Defective Gas Absorption

13   Refrigerators, were and are sold in Washington, California, Ohio, Texas, and throughout the United

14   States.  Defendants, and each of them, were and are authorized to transact business and conduct

15   business in Washington, California, Ohio, Texas, and throughout the United States.

16        54.    Upon information and belief, all of Defendants identified herein were and are the

17   agents, servants, and employees of each of the remaining Defendants, and that in doing the things

18   alleged herein were acting within the purpose, course and scope of said agency, service, and/or

19   employment and with the permission, consent, authorization, and subsequent ratification of each of

20   the remaining Defendants.

21        55.    Upon information and belief, Defendants, and each of them, agreed to, cooperated

22   with, aided, abetted, encouraged, ratified, and/or adopted the acts, actions, wrongdoing, and

23   omissions of each of the remaining Defendants, and that in doing any act alleged herein, were acting

24   in concert and through a civil conspiracy by and among each Defendant to further the interests of

25   each Defendant individually, and all Defendants as a group.  For this reason as well, all Defendants

26   are jointly liable to Plaintiffs and the Class.

27

28

CLASS ACTION COMPLAINT - 12
010520-11  866131 V1

# IV.  FACTUAL ALLEGATIONS

56.     Plaintiffs Catherine Papasan, Nelson Goehle, Andrew Young, Jimmy Byers, and Christopher Johnston ("Plaintiffs"), on behalf of themselves and all other persons similarly situated, file this Class Action Complaint ("Complaint") against Defendants Dometic Corporation, a Delaware Corporation and Dometic LLC, a Delaware Limited Liability Company (collectively, "Defendants").

57.     The RV market has been a stalwart of growth in the U.S. economy with recent shipments the highest in 40 years.  The number of households in the U.S. that own an RV is expected to rise from 8.5% in 2013 to 9% in 2016 and 9.5% in 2020.  In 2014 alone, approximately 356,700 RVs were shipped from manufacturers.  And a record *nine million RVs are on the roads in the United States*.[2]  The market is particularly strong among older Americans and retirees, many of whom live for many months or fulltime in their RVs.

58.     Virtually every RV, and most boats that are equipped with a below deck cabin, have a small kitchen with at least a stovetop, a table, and a refrigerator.  Since at least 1997, Defendants have manufactured millions of refrigerators especially designed for use in RVs and in boats.  The common cooling systems in all Dometic RV and boat refrigerators at issue in this case is a nearly 100-year-old technology called "gas absorption."  Included in this category are the Defective Gas Absorption Refrigerators.

## A.     How Gas Absorption Refrigerators Work

59.     Unlike a regular household refrigerator that uses a motorized compressor, a gas absorption refrigerator has no moving parts.  Instead, gas absorption technology involves a process whereby a solution of ammonia, water, and sodium chromate is pressurized by hydrogen gas inside a sealed loop of low carbon steel tubing, and then heated by electricity or propane until the solution boils—at approximately 400 degrees Fahrenheit—and releases ammonia gas.  The ammonia gas circulates through the steel tubing at very high pressure—approximately 450 psi.  As the ammonia gas is first condensed to a liquid, and then evaporated through interaction with the hydrogen gas, heat is removed from the refrigerator box, causing the temperature in the box to decrease and providing

---

[2] Recreation Vehicle Industry Association, *Historical Glance: RV Wholesale Shipments*, available at www.rvia.org/?ESID=histglance (last accessed March 31, 2016).

1    the refrigeration effect.  The series of tubes housing the solution and its heating element is referred to

2    as a "cooling unit," and it is a separately replaceable part bolted to the back of the refrigerator box.

3          60.     The cooling unit includes the heat sources (propane and electric), as well as a

4    condenser, evaporator, absorber, and solution tank.  The cooling unit is a sealed no-maintenance

5    boiler system.  At rest, *i.e.*, when not operating on electric power or propane, the cooling unit's

6    internal pressure is approximately 350 psi, depending on ambient temperature.  Sodium chromate—a

7    known carcinogen—is included in the solution to offset the corrosive effect of the ammonia/water

8    combination on the low carbon steel tubing.  The following diagram explains how the ammonia

9    absorption process works, and the key components of a typical gas absorption refrigerator, including

10   the Defective Gas Absorption Refrigerators:



B.     **Defendants' Defective Gas Absorption Refrigerators Contain Common Design and Manufacturing Defects That Have Caused Thousands of Fires**

25         61.     Since at least 1997, the Defendants have designed, manufactured, assembled, sold,

26   and otherwise placed into the stream of commerce Defective Gas Absorption Refrigerators in a

27   number of different models and sizes, including, but not limited to:

| Model | Capacity |
|---|---|
| RM 2620, RM/DM2652, RM/DM2662 & RM/DM2663 | 6 cu. ft. |
| RM3762 & DMR/DMC 7-Series | 7 cu. ft. |
| RM 2820 | 7.7 cu. ft. |
| DM2852 & DM2862 | 8 cu. ft. |
| RM3862 & RM3863 | 8 cu. ft. |
| RM3962 | 9 cu. ft. |
| NDM1062 | 9.2 cu. ft. |
| RM 1350, 1350WIM | 12.3 cu. ft. |
| NDA1402, 1402IMS | 14 cu. ft. |

62.     The cooling units used on all of the Defective Gas Absorption Refrigerators contain common design and/or manufacturing defects that create an unreasonable risk of fire and explosion.

63.     The boiler tube is that part of the cooling unit where heat is applied to the cooling solution through electric heaters contained in pockets welded to the side of the boiler tube. The boiler tube configuration common to all Defective Gas Absorption Refrigerators is illustrated below:



64.     In this boiler tube design, heat from the electric heating elements is transferred first through the wall of the heating element pockets and then through the welds connecting the heating

pockets to the boiler tube.  The surface area of the welds along the boiler tube is small, leading to a concentration of heat on the inner surface of the boiler tube wall adjacent to the weld.  When operating, the Defective Gas Absorption Refrigerators are designed to cycle through heating and cooling periods 15 to 20 times per day.

65.    The heating and cooling cycles are managed through electronic controllers designed by Defendants and/or manufactured to their specifications.  During the heating and cooling cycles, the metals of each component of the boiler tube assembly—the heater pockets, welds, and boiler tubing—expand and contract at different rates, introducing cyclic stress into the assembly.  The stress is particularly acute when the system shifts from a cooling to a heating cycle, because Defendants have designed their electronic controllers with a very steep temperature gradient, *i.e.*, during a heating cycle, the heat is applied very rapidly and all at once.

66.    This cyclic thermal stress, when combined with the concentration of heat through the welds between the heater pockets and the boiler tube, causes a breakdown of any protective layer on the inside of the boiler tubing that may have been established through pre-production treatment of the boiler tubing, or through the sodium chromate component of the cooling solution.  Once the protective layer is compromised, the highly corrosive cooling solution begins to eat away at the boiler tube wall, creating microscopic corrosion pits and cracks.  When the wall of the boiler tube becomes too thin to withstand the internal pressures inherent in the cooling unit (350 psi when turned off and 450 psi under normal operation), the boiler tubing wall cracks and leaks flammable ammonia and hydrogen gas—along with cancer-causing sodium chromate—at high pressure into the refrigerator compartment, creating a serious health and fire hazard.

67.    The photograph below shows an actual boiler tube from a Defective Gas Absorption Refrigerator that cracked and caused a fire.  The gap in the tube wall is readily apparent, and is illustrative of thousands of similar failures in Defective Gas Absorption Refrigerators since 1997.



68.     This failure of the boiler tube under normal use is a common defect present in all Defective Gas Absorption Refrigerators, and carries the risk of property damage, serious injury or death to individuals who have the Defective Gas Absorption Refrigerators installed in their RVs and boats.

69.     The defective design of the boiler tube assembly can cause a catastrophic fire to be ignited, including, but not limited to, through the following processes:

    a.      The uncontrolled, high-pressure release of hydrogen gas due to a breach in the boiler tube wall is sufficient to cause the gas to self-ignite regardless of whether the refrigerator is operating or not;

    b.      The Defective Gas Absorption Refrigerators are designed to be installed in wooden cabinets that are not gas tight.  The gases escaping from a leaking cooling unit will therefore not be contained inside the refrigerator cabinet, but will flow outside the cabinet into the living space of the RV/boat, and out of the refrigerator cabinet vents to the area immediately around the RV/boat.  The escaping gases—particularly hydrogen gas—requires very little energy to ignite and has a very broad

flammability range.  Any momentary spark emanating from a source inside or around the RV or boat—from static electricity, a loose electrical connection, turning on a switch—is sufficient to cause ignition;

    c.    A leaking cooling unit that is as little as 20% low on cooling solution has a propensity to develop dry spots on the inside of the boiler tube walls that can lead to a "run-away heating event" that causes the steel tubing to reach temperatures in excess of 1000 degrees Fahrenheit, resulting in fires, either by ignition of the escaping flammable gases, or by ignition of the combustible unprotected wood inside the refrigerator compartment;[3]

    d.    The refrigerators' electric heaters, propane burner, and propane igniter are all in the immediate vicinity of the boiler tube assembly. Each is a competent ignition source for gases escaping from a leaking boiler tube assembly.

70.    In addition to the defective boiler tube assembly, the Defective Gas Absorption Refrigerators contain additional common design/manufacturing defects, including, but not limited to, a so-called "safety fuse," which actually decreases the safety of the cooling unit with respect to fire risk.  The safety fuse is a plug inserted into the end of the cooling unit solution tank.

71.    The photo below is illustrative of the safety fuse design common to all Defective Gas Absorption Refrigerators:

---

[3] The "dry boiler" phenomenon occurs when there is not sufficient flow of the cooling solution to wet the inside of the boiler tube wall, and is akin to a pot of water left on the stove.  So long as there is water in the pot to absorb the heat, the pot will be fine no matter the temperature.  Once the water is gone, however, the same amount of heat will destroy the pot.

1
2
3
4
5
6
7
8
9
10
11



12      72.     The safety fuse is designed to melt and "blow out" at relatively low temperatures (less

13 than 300 degrees Fahrenheit), thereby depressurizing the cooling unit in the event of a fire or other

14 malfunction before internal pressures reach the point where the cooling unit explodes and causes a

15 safety hazard due to flying shrapnel. However, because the safety fuse operates on temperature and

16 not on pressure, it is wholly ineffective as a pressure relief system, *i.e.*, it does *not* prevent the

17 cooling unit from rupturing due to high pressure.

18      73.     Further, when the safety fuse "blows out" because it is exposed to heat—as in a fire—

19 it releases the cooling solution into the enclosed space of the refrigerator compartment at over 400

20 psi, creating a cloud of highly flammable ammonia and hydrogen gas, which is then ignited by any

21 available ignition source, including the sudden uncontrolled release of the hydrogen gas itself. The

22 effect of this "safety" device—when operating as designed—is either to initiate a fire where none

23 existed, or turn a small fire into a hydrogen-fueled inferno.

24      74.     The photo below shows the destruction from an actual fire caused by a Defective Gas

25 Absorption Refrigerator:

26
27
28

CLASS ACTION COMPLAINT - 19
010520-11 866131 V1

1
2
3
4
5
6
7
8
9
10
11
12
13
14



15      75.     The public safety risks created by the defects inherent in the design of the Defective

16   Gas Absorption Refrigerators are not theoretical, but actual.  Upon information and belief, the

17   Defective Gas Absorption Refrigerators have caused thousands of fires since 1997, and continue to

18   cause *new* fires at an alarming rate.  Further, the public safety risk is not limited to owners or users of

19   Defective Gas Absorption Refrigerators.  The defects inherent in the design of the Defective Gas

20   Absorption Refrigerators cause the uncontrolled release of highly flammable and explosive gases,

21   most notably hydrogen gas.  These gases will either self-ignite, or once released, will be ignited by

22   any competent ignition source in or around the RV or boat in which they are installed.  The resulting

23   fire burns with an intense heat, and is capable of shooting flames both upwards and many feet to the

24   side of the refrigerator, thereby putting the lives and property of anyone near the refrigerator at risk.

25
26
27
28

1

**C.**     **Defendants Have Twice Recalled *Some* of the Defective Refrigerators, but the Recalls Have Done Nothing to Alleviate the Serious Safety Defects**

76.     Defendants have instituted two product safety recalls involving select models of their Defective Gas Absorption Refrigerators through the National Highway Traffic Safety Administration ("NHTSA")—one in 2006 (NHTSA No. 06E-076, "the 2006 Recall") and one in 2008 (NHTSA No. 08E-032, "the 2008 Recall").  Both recalls were self-initiated by Defendants; the recalls were not the result of any agency action by NHTSA.  The timing, nature, scope, and remedy involved in both recalls were controlled completely by Defendants.

77.     The 2006 Recall was limited to Dometic 2-door refrigerator Models NDR1062, RM2652, RM2662, RM 2663, RM2852, RM2862, RM3662, RM3663, RM3862, and RM3863 manufactured between April 1997 and May 2003.  A total of 926,877 refrigerators were recalled.

78.     The 2006 Recall blamed the problem—described as fatigue failure at the toe of the weld between the heater pocket and boiler tube—on the use of a higher wattage heater element (354 watts vs. 325 watts) between 97 and 2003.  But this was misinformation.  While the higher wattage heating element may have sped up the corrosion of the boiler tube walls, the problem was then, and is now that the caustic solution inside the boiler tubes corrodes the tubes at the welds, causing the high-pressure venting of dangerous hydrogen and ammonia.  This process occurs irrespective of the wattage of the heating element.

79.     The 2008 Recall involved all the same models, manufactured between June 1, 2003 and September 30, 2006, except Model RM3863.  A total of 745,574 refrigerators were recalled.  The 2008 Recall blamed the same problem—fatigue failure—on an "inconsistent weld process" that was supposedly remedied by updating their welding procedure in 2006.  But this was again misinformation.  While bad welds may cause the corrosion and cracking of boiler tubes to occur more quickly, again the defect and process at play are unchanged.  Defendants purposefully hid the true cause of the defect—corrosion—even though AEGI had published articles by then plainly documenting the corrosion failure that was becoming common in gas absorption refrigerators.

80.     Defendants have not expanded the recalls to include any refrigerators manufactured after September 30, 2006, notwithstanding that Defendants have at all times continued to

CLASS ACTION COMPLAINT - 21
010520-11  866131 V1

manufacture, sell, and otherwise place these same model refrigerators into the stream of commerce. The post-September 2006 refrigerators contain the same design defects as those manufactured before September 2006.  Defendants know well and have hidden that the gas absorption refrigerators manufactured after September 2006 continue to fail and cause fires because of the same defects that affected the pre-2006 refrigerators.

81.     Defendants have *never* recalled any of their Dometic Model RM2351, RM2354, RM2451, RM2454, RM2551, RM2554, RM3762, DMR/DMC 7-Series, RM2820, RM3962, RM1350 or NDA1402 refrigerators, notwithstanding that the Defendants continue to manufacture those refrigerator models; those refrigerators share the common design defects described above; and, Defendants have actual knowledge that these refrigerators continue to fail and cause fires because of the defects described above.

82.     The 2006 and 2008 Recalls called for identical retrofit campaigns for the Defective Gas Absorption Refrigerators.  The retrofit involved installing a "Thermo Disc" and "Thermal Fuse" on the metal shielding surrounding the cooling unit boiler tube, and installing a "Secondary Burner Housing Assembly"—essentially three thin metal plates—behind, below and in front of the cooling unit boiler tube.

83.     Upon information and belief, the Thermo Disc, Thermal Fuse, and metal shielding were designed and manufactured by Defendants, or at their direction.  Upon further information and belief, Defendants also began to install the Thermo Disc and Thermal Fuse on new production cooling units manufactured after June 2006.  The intended purpose of the Thermo Disc and Thermal Fuse was to sense temperature at the boiler tube, and to interrupt electric power to the refrigerator controls in the event the boiler tube exceeded a set temperature, thereby preventing ignition of a fire caused from an overheated cooling unit.  The metal shielding was intended to protect consumables inside the refrigerator cabinet (*i.e.*, bare wooden framing, insulation, wooden paneling, etc.) from flames and/or radiant heat caused by a failed boiler tube.

84.     While the retrofit remedy chosen by the Defendants was cheap to manufacture and quick to install, it was also wholly inadequate for its intended purpose in that it did not address, much less eliminate, the root cause of the boiler tube failures in the Defective Gas Absorption

Refrigerators—internal corrosion of the boiler tube leading to thinning of the boiler tube walls, cracks, and leaks of flammable hydrogen and ammonia gases at high pressure.

85.     The photo below is an actual cooling unit from a Dometic RM2652 refrigerator, taken after an RV fire in 2016.  The photo is illustrative of the typical post-fire condition of a Dometic cooling unit.  Upon information and belief, the galvanized metal portions of the boiler tube shielding have delaminated, which indicates that the fire originated from a leaking boiler tube.  Further, the yellow residue in and around the metal shielding is sodium chromate, the Level 1 carcinogen used by Dometic as an anti-corrosion element in their refrigerator cooling system.  The yellow residue on the outside of the cooling unit is a tell-tale sign of boiler tube failure due to the common defect alleged herein:



86.     Upon information and belief, as of the filing of this Complaint, fires are still occurring as a result of the defects in the Defective Gas Absorption Refrigerators, even in those Defective Gas Absorption Refrigerators that have been recalled and retrofitted to Defendants' specifications.

87.     Defendants had actual knowledge of the inadequacy of the retrofit campaign, in that they continued to receive fire claims involving their Defective Gas Absorption Refrigerators that had already been retrofitted with the above devices, or which had the devices installed during production.

**D.      Defendants Produced, Marketed, and Sold the Defective Gas Absorption Refrigerators Despite Actual Knowledge of the Defects and Risk of Fires**

88.      For at least 15 years, Defendants had actual knowledge of the existence of design and manufacturing defects in their Defective Gas Absorption Refrigerators.  Since at least 1999, Defendants have maintained non-public databases tracking the real-world performance of their gas absorption refrigerators in the field, including fire claims and warranty and return claims. Defendants have also been engaged in constant litigation in state and federal courts across the country arising from fires caused by their Defective Gas Absorption Refrigerators, and through that litigation have had access to expert reports from independent fire investigators and engineers documenting the defects inherent in their gas absorption refrigerators.

89.      Defendants knew or should have known of the serious safety risks inherent in the use of the Defective Gas Absorption Refrigerators, and of the many ways their Defective Gas Absorption Refrigerators could ignite a fire.  Defendants also knew, or should have known, that even if the defects in their Defective Gas Absorption Refrigerators did not cause a fire, a leaking boiler tube or blown safety fuse would destroy the functionality of the refrigerator, most likely after the Defendants' limited warranty had expired.  However, Defendants never stopped selling and placing their dangerously defective refrigerators into the stream of commerce, and have not even paused production and sales so that the refrigerators could be modified to operate safely.

90.      Defendants never adequately disclosed any of these risks to consumers in point of sale material provided with the refrigerators, or in post-sale material, including, but not limited to, recall notices involving the Defective Gas Absorption Refrigerators.  Defendants instead engaged in a consistent pattern and practice of conduct to conceal and suppress the serious safety defects and consequences from consumers in order to continue to sell the product, avoid scrutiny from federal regulators, and shift the risk and cost of their defective products onto consumers.

91.      Defendants' active concealment concerning their Defective Gas Absorption Refrigerators included the following:

(b)      Failing to disclose, suppressing, and minimizing the nature and number of defects inherent in the design of the Defective Gas Absorption Refrigerators limiting the description

CLASS ACTION COMPLAINT - 24
010520-11  866131 V1

of the defect leading to the 2006 Recall to "… a fatigue crack that may develop in the boiler tube in the area of the weld between the boiler tube and heater pocket."[4]  This description was deceptive and misleading in that the fatigue cracking of the boiler tube was a symptom and manifestation of the underlying defect—corrosion pitting and cracking of the inside of the boiler tube—rather than the defect itself.  This omission of material fact was designed to convey the impression that the defect was limited to cooling units that exhibited fatigue cracking, when in fact the propensity of the Defendants' cooling units to fail due to corrosion was a defect common to all of Defendants' Defective Gas Absorption Refrigerators;

(c)     Failing to disclose, suppressing, and minimizing the scope of the defects inherent in the design of the Defective Gas Absorption Refrigerators.  Notwithstanding Defendants' actual knowledge of the extensive fire claim and warranty history of its Defective Gas Absorption Refrigerators, Defendants, and each of them, consistently refused to acknowledge the existence of a problem, referring instead in the 2006 Recall notification to "…Dometic products which may contain potential defects…"  Further, Defendants consistently claimed and represented that the scope of the defective refrigerator population was limited to "…a fractional percentage of the potentially affected refrigerators…"  In the 2006 Recall (NHTSA 06E-076), Defendants estimated a "potential maximum incident rate" of boiler tube failures at .01% of 926,877 refrigerators included in the recall—a total of 92 refrigerators.  In the 2008 Recall (NHTSA 08E-032), Defendants estimated the potential maximum incident rate for the additional 745,574 refrigerators included in that recall population to be .005%—or a total of 37 refrigerators.  In truth and fact, there have been thousands of fires in RVs and boats caused by Defendants' Defective Gas Absorption Refrigerators;

(d)     Defendants intended for consumers and federal regulators to accept these "estimates" as representations of fact based on the superior knowledge of Defendants as the manufacturer of the product.  Given Defendants' actual knowledge of the thousands of fires and failures of their gas absorption refrigerators reported to them between 1997 and 2008—information

---

[4] Dometic NTSA Notification of Defect (April 11, 2008), 1, *available at* http://www-odi.nhtsa.dot.gov/acms/cs/jaxrs/download/doc/ACM9389927/RCDNN-08E032-1474.pdf (last accessed March 31, 2016).

never disclosed to consumers or federal regulators—these representations were grossly deceptive and misleading, in that they created the false impression that there were no safety problems associated with Defendants' gas absorption refrigerators, or that any problems were de minimus in nature;

(e)     Failing to disclose, suppressing, and minimizing the circumstances in which a failed boiler tube could ignite a fire.  For example, Defendants consistently maintained that certain specific conditions must exist in order for a failed boiler tube to cause a fire, including that the refrigerator "…must be on and normally operating…,"[5] when in fact, the high pressure release of hydrogen gas from a leaking boiler tube is sufficient to cause self-ignition of the gas regardless of whether the refrigerator is on or off;

(f)     Defendants further failed to disclose and suppressed the fact that these "conditions" were not based on any sound, independent scientific inquiry, but were instead the result of tests manufactured and controlled by Defendants themselves, using an engineer routinely hired by Defendants as an expert in litigation arising from fires caused by their Defective Gas Absorption Refrigerators.  This engineer is so biased from his years of compensation from Defendants that as recently as 2014 he testified under oath that he has never examined a Dometic brand gas absorption refrigerator that he determined to have been the cause of an RV fire.  This notwithstanding that Dometic has paid millions of dollars to individuals in private settlements for injuries and property damage from RV refrigerator fires.  The purpose and intent of these omissions and suppressions were to convey to both consumers and federal regulators that the defects inherent in Defective Gas Absorption Refrigerators were unlikely to occur, and that the refrigerators were therefore safer to use than they really were;

(g)     Concealing the dangerously defective safety fuse plug design;

(h)     Suppressing and concealing the fact that Defendants never adequately tested the Defective Gas Absorption Refrigerators prior to placing the products into the stream of commerce to determine if they were safe to operate under real-world conditions.  Defendants instead

---

[5] Both the 2006 Recall and 2008 Recall summaries state this to be the case.  While the 2006 Recall summary says that the propane gas system has to be on to ignite a fire, the 2008 Recall summary drops this condition.

made the business decision to use their customers as unknowing guinea pigs, and to shift the risk of any design or manufacturing defects onto them.  Even after Defendants began to receive a flood of fire claims and warranty claims that should have alerted them to the fact that serious defects existed in their products when used under real-world conditions, Defendants continued to conceal, suppress, and minimize the defects and safety risks from consumers and federal regulators, and continued to insert dangerously defective products into the stream of commerce;

(i)      Establishing a fraudulent and useless field testing protocol whereby Defective Gas Absorption Refrigerators are pressure tested in the field after a fire to determine if they leak due to a failure in the boiler tubing.  The testing protocol arbitrarily sets the maximum pressure of the leak test to 100 psi, notwithstanding that Defendants' refrigerators normally operate at up to 450 psi. Defendants' testing protocol is intentionally designed (a) not to find the kind of microscopic leaks described by Defendants in their product safety recalls; and, (b) not to find leaks in any other part of the refrigerator cooling unit, notwithstanding Defendants' knowledge that such leaks regularly occur. The testing protocol is misleading and deceptive in that it conceals and suppresses material facts regarding the dangerous defects inherent in Defendants' products.  Defendants routinely use this testing protocol as part of their risk management practices to reduce their claims exposure, and to mislead consumers and federal regulators into believing that the Defective Gas Absorption Refrigerators are not defective, or that the population of Defective Gas Absorption Refrigerators is smaller than it really is;

(j)      Limiting the scope of their product safety recalls to only certain 2-door models manufactured between 1997 and 2006, and excluding some models of refrigerator from any product safety recall at all, notwithstanding the fact that all models of Defendants' gas absorption refrigerators at issue and described herein are designed the same way; use the same gas absorption technology; share the same defective boiler tube and safety fuse plug designs; have the same propensity to fail for the same reasons; and, present the same safety risk to consumers of fire;

(k)      Conducting repeated manufacturer-initiated and controlled retrofit campaigns to install Thermo Discs and Thermal Fuses onto the cooling units of Defective Gas Absorption Refrigerators that were represented to "fix" the defects, while concealing the material fact that the

retrofits were ineffective to render the refrigerators safe to use for their intended purpose.  In truth the retrofit devices did not and do not address, much less eliminate, the root cause of boiler tube failure—*i.e.*, internal corrosion of the boiler tube wall—but only seek to counter the propensity of the underlying defect to cause fires by shutting off electricity to the refrigerator controls.  The retrofit devices did not and do not work to prevent Defendants' products from causing and/or enhancing fires, because the devices do not stop the Defective Gas Absorption Refrigerator's cooling units from corroding and leaking in the first place.  The Defective Gas Absorption Refrigerators continue to cause fires, notwithstanding being retrofitted by Defendants.  Defendants, and each of them, have actual knowledge that their retrofit campaigns have been ineffective to render the Defective Gas Absorption Refrigerators safe to use, but have suppressed and concealed that fact from Plaintiffs, all members of the Class, and the federal regulators at NHTSA; and

(l)       Concealing and suppressing the fact that, at all times relevant hereto, Defendants knew or should have known that feasible alternative designs were readily available to eliminate or substantially reduce the propensity of their Defective Gas Absorption Refrigerators to fail and ignite fires, including, but not limited to, changing the specifications of the boiler tubing to use material that was thicker and made of corrosion-resistant material (*e.g.*, stainless steel); changing the design of the boiler tube assembly to eliminate or reduce the concentration of heat and the resulting breakdown of the protective layer on the inside of the boiler tubing; reconfiguring the electronic controls to moderate the temperature gradient of the AC heaters; changing the design of the safety fuse plug so that it actually operated on pressure and not temperature, and vented outside and away from the refrigerator cabinet, thereby preventing cooling unit ruptures and the uncontrolled release of hydrogen gas into an enclosed space; and replacing dangerously explosive hydrogen gas with inert helium to eliminate or decrease the risk of fire in the event of a boiler tube or safety fuse plug failure.

92.     Defendants concealed and suppressed the above facts in furtherance of their business decision and plan to continue to manufacture defectively designed products rather than invest the time and money to develop products that were actually safe to use, and which conformed to their sales representations and warranties.  In doing so, Defendants also made the decision that,

CLASS ACTION COMPLAINT - 28
010520-11  866131 V1

notwithstanding their actual knowledge of the serious public safety risks their Defective Gas Absorption Refrigerators posed to the general public, it was cheaper to deal with warranty and fire claims arising from their Defective Gas Absorption Refrigerators than fix the millions of defective refrigerators already in the marketplace.  As a result and in furtherance of these corporate decisions, Defendants engaged in the concerted, unified, and coordinated pattern and practice of deception, omission of material facts described above, with the intention and design to mislead consumers and federal regulators regarding the existence, nature and scope of defects in their gas absorption refrigerators, and the public safety risks those defects posed to users of the product and the general public.

93.     The design and manufacturing defects in the Defective Gas Absorption Refrigerators, Defendants' active concealment of those defects, and the inadequate and fraudulent product safety recall/retrofit campaigns conducted by Defendants, created serious and unreasonable safety risks to consumers and users of Defendants' products, *i.e.*, the risk of property damage, injury, and death by fire.

94.     Defendants never provided purchasers and users of their Defective Gas Absorption Refrigerators with adequate warnings of the risks of use of the product, either at the point of sale, or thereafter.  Rather, Defendants actively concealed and sought to minimize awareness of the dangers and risks inherent in their defective products from both consumers and federal regulators.

95.     These safety risks were and are material to a reasonable consumer, including Plaintiffs and the members of the Class, who own Defective Gas Absorption Refrigerators.  Had Defendants disclosed the true nature and scope of the safety risks inherent in the use of their products in the sales and marketing material provided to consumers along with the product, or with warnings prominently placed on the product, Plaintiffs, and all others similarly situated in the Class, would have been aware of it and acted differently, *i.e.*, purchased a different RV that did not contain a Defective Gas Absorption Refrigerator; decided not to keep an RV with a Defective Gas Absorption Refrigerator and/or, paid less for the RV or boat because of the Defective Gas Absorption Refrigerator or because of the cost of replacing the Defective Gas Absorption Refrigerator with a non-defective product.

96.     Defendants had actual and exclusive knowledge of the exact nature and scope of the defects in the Defective Gas Absorption Refrigerators, the fire claim history of the Defective Gas Absorption Refrigerators, and the fact that their recall and retrofit campaigns did not address or eliminate the defects.  Defendants, therefore, at all times, had a duty to disclose the safety risks inherent in the use of the Defective Gas Absorption Refrigerators, and the inadequacies of their recall/retrofit campaigns, to Plaintiffs and to the Class.  However, Defendants at all times actively concealed and suppressed the true nature and scope of the defects, safety risks, and recall/retrofit inadequacies from Plaintiffs and the Class.

97.     The very nature of the design defects inherent in the Defective Gas Absorption Refrigerators precluded Plaintiffs and Class members from learning of the defects and safety risks. The corrosion that is the root cause of boiler tube failure occurs on the inside of the boiler tube, which is not visible.  Once started, the corrosion is a mechanical process which continues until the boiler tube walls thin to the point of cracking.  Until the boiler tube wall cracks and leaks, there is nothing to put a consumer on notice of a potential defect or safety risk.  Even when a cooling unit develops a leak, it is not always apparent in that the boiler tube assembly is covered with insulation and metal shielding, and Defendants did not include any mechanism in the design of their cooling units—such as a pressure gauge or solution level gauge—by which a leak could be readily detected. Thus, as a result of Defendants' pattern and practice of deception, concealment and omission of material fact, Plaintiffs and Class members, as reasonable consumers, did not know—and could not know in the exercise of reasonable diligence—of the design and manufacturing defects inherent in the Defective Gas Absorption Refrigerators and the serious safety risks involved in the use of the product.

**E.      Defendants Possess a Safer Alternative to the Defective Gas Absorption Refrigerators**

98.     In 2014, Defendant Dometic Group acquired Atwood Mobile Products LLC ("Atwood").[6]

---

[6] *See* http://www.dometic.com/International/News/Dometic-Group-and-Atwood-Mobile-Products-LLC/.

99.     In or about 2001, Atwood began marketing and selling gas absorption refrigerators for RVs that utilize a helium-based cooling system ("Atwood Helium Refrigerators").  Helium-based refrigerators use a mixture of two isotopes of helium:  helium-3 and helium-4.  Helium is an inert gas that is not flammable.  As a result, the Atwood Helium Refrigerators do not carry the innate risk of explosive fire that is inherent with hydrogen systems, *i.e.*, the Hindenburg.

100.    Atwood Helium Refrigerators are marketed as "providing superior durability and performance."

101.    While Defendants were certainly aware of, and able to develop a safer refrigerator system since at least 2001 when Atwood was openly marketing the technology, there can be no question that at least as of 2014, when Defendant Dometic acquired Atwood, Defendants in fact possessed reasonable, safer alternative technology to the Defective Gas Absorption Refrigerators.

**F.    Defendants Have an Ongoing Duty to Disclose Material Facts about the Defective Gas Absorption Refrigerators That They Placed into the Stream of Commerce**

102.    Defendants have an ongoing duty to disclose all material facts regarding the Defective Gas Absorption Refrigerators and their dangers because Defendants:  (1) had exclusive knowledge of material facts not known to Plaintiffs and the Class; (2) have actively concealed material facts from Plaintiffs and the Class; and (3) have made only partial representations while suppressing some material facts.

103.    Defendants have a duty to manufacture safe, defect-free products and an ongoing duty to truthfully and completely disclose known defects, hazards and unreasonable safety risks (such as the fire risks here) regardless of any warranty period.  Due to serious dangers, Defendants' duty to disclose known defects is ongoing.

104.    The Defective Gas Absorption Refrigerators have at least one common defect that poses a serious risk of fire, injury, and death, but Defendants have never eliminated the defect, despite actual knowledge of readily available, feasible alternative designs that would lessen or eliminate the risks.

105.    Defendants continue to market the Defective Gas Absorption Refrigerators by omitting material facts regarding their inherent defects, while knowing that their products are dangerously defective and fires are still occurring.

106.    Defendants have a duty to recall and retrofit the products so that they can be made to operate safely.  While Defendants have conducted at least two product safety recalls and represented that the retrofits would render their products safe to use, Defendants know that the retrofits don't work in that, *inter alia*:  (a) they do not eliminate the defect that causes the risk of fire in the first place; and, (b) they are ineffective to counter the risks posed by the defects.  Defendants' products continue to cause fires even after any recall or any retrofit is installed.  These facts, however, are not disclosed to Class members and instead constitute material omissions.

**G.    Defendants Have Concealed and Suppressed Material Facts about the Ongoing Fire Danger Despite any Recalls or Retrofits**

107.    Defendants had and have actual knowledge that their Defective Gas Absorption Refrigerators contain defects which cause fires.  However, Defendants wholly omit, suppress, and conceal from Plaintiffs and the Class that Defendants' recall and retrofit campaigns neither eliminate nor cure the core defects in their refrigerators, and that their recall/retrofits therefore do not eliminate the ongoing risk of fire, damage, injury, and death to users of the Defective Gas Absorption Refrigerators.

108.    Defendants' recall notices convey a false sense of safety to consumers that if the product is retrofitted, it is safe to use.  These omissions result in consumers unknowingly continuing to use dangerously defective products, exposing themselves, and others around them, to the risk of property damage, serious injury, and death.

109.    Despite knowledge of the defects and fire risks, Defendants continue to market their gas absorption refrigerators on their website and in other materials, by claiming that Dometic-branded products "have a solid reputation and are recognized for their high quality," and ascribing various characteristics to their Dometic-branded gas absorption refrigerators in particular—such as "high quality," "award winning and innovative," "quality-guaranteed"—that consumers can rely on and trust, without any mention of the defects and fire risks inherent in each unit.

110.     On their website, Defendants' discussion of hydrogen gas is remarkably duplicitous. Contained in a promotional video under the name "Expert's Corner—About Absorption Technology," Defendants' first tout their history as the "founder" of gas absorption refrigeration technology for both helium and hydrogen based systems.  They then make the fatuous and demonstrably false claim that hydrogen and helium are both "equally safe, reliable and environmentally friendly."[7]  Given Defendants' actual knowledge of the fire claim history of their Defective Gas Absorption Refrigerators, and their concealment and suppression of material facts regarding that history detailed above, these statements are misleading and deceptive.  Further, these statements are intended to deceive in that they convey the false idea that Defendants—as manufacturers of gas absorption refrigerators—have somehow managed to make a hydrogen-fueled consumer product that is completely harmless and safe to use, when in fact the Defendants' gas absorption refrigerators constitute a real and continuing threat of fire, injury, and death.

111.     Furthermore, the Dometic Warranty applicable to the Defective Gas Absorption Refrigerators stated the following or similar:

-     "Congratulations, and Thank You for purchasing **the industry's best built and best backed RV Refrigerator."**

-     "We at Dometic appreciate your business and are confident that you will have many years of trouble-free RV enjoyment."[8]

112.     Common omissions of material fact have been made by Defendants to the entire Class.  Those Class members who never received a recall notice were not informed of the ongoing danger inherent in continued use of their Defective Gas Absorption Refrigerators.  Those Class members who did receive a recall notice likewise were never informed of the ongoing danger

---

[7] *Expert's Corner - About Dometic Absorption Technology*, Dometic, http://link.brightcove.com/ services/player/bcpid1849712935001?bckey=AQ~~,AAAAjhe0fwk~,mZg-vonQQn32VqLmdi-WLzY8cd2nNnBE&bctid=3666708964001 (last accessed March 30, 2016).  *See also*, *e.g.*, http://www.dometic.com/USA/MS-7207-Recreational-Vehicles/PG-7232-Refrigeration/PG-9758-Free-Standing-Refrigerators/MD-117478-Elite-22-Series/SK-117634-Elite-22-RM-1350-WIM (last accessed March 30, 2016).

[8] *See*, *e.g.*, http://www.dometic.com/QBankFiles3/EPiServer/Dometic/US/Manuals/RV-manuals/Refrigerators/Dometic-DMR-DMC-Refrigerators-Manual-Web_29111.pdf (emphasis added) (last accessed March 16, 2016).

inherent in use of their Defective Gas Absorption Refrigerators, regardless of whether their unit was retrofitted.

113.    If Defendants had not concealed the material facts described above, which implicate safety concerns, Plaintiffs and Class members would have been aware of those facts, would have acted differently, and would not been injured and damaged.

114.    As a result of Defendants' concealment and other actions outlined above, Plaintiffs and Class members have been misled by Defendants' omissions into purchasing, keeping and/or using the refrigerators, believing them to be safe for their intended purpose.

115.    Plaintiffs and Class members have further been misled by Defendants' omissions into believing that their refrigerators do not contain dangerous defects or potential risks or, if the refrigerators were part of a product safety recall by Defendants, that any defects or potential safety risks have been eliminated by Defendants' retrofit campaigns.  In fact, the Defective Gas Absorption Refrigerators have never been, and are not, safe for their intended purpose in that Defendants have never eliminated the design and manufacturing defects which cause their products to ignite fires.

116.    Plaintiffs reasonably relied upon Defendants' conduct described herein.  Defendants made material omissions regarding the defects, dangers, and hazards associated with the Defective Gas Absorption Refrigerators, based on information solely within Defendants' control, rendering it impossible for Plaintiffs and the members of the Class to know the hazards associated with the gas absorption refrigerators they purchased.  As a result, Plaintiffs and the Class who own Defective Gas Absorption Refrigerators continue, unknowingly, to be at risk of damage, injury, and death.

**H.     The Retrofits Defendants Installed Through Their Recalls Cause Injury to Consumers by Concealing and Suppressing that the Retrofit Devices Destroy Their Refrigerators in an Ineffective Effort to Prevent a Fire Caused by the Unrepaired Defect**

117.    Defendants' recalls do not correct the defects that cause and/or enhance fires, and therefore do not render the recalled Defective Gas Absorption Refrigerators safe to use.  Rather, the product safety recalls were designed to conceal and mask the true nature and extent of the defects and dangers in Defendants' Defective Gas Absorption Refrigerators, and were designed to mislead consumers and federal regulators into believing that Defendants' recalls were comprehensive and effective, when they were neither.

118.    The retrofit remedy used by Defendants in their manufacturer-initiated recalls in 2006 and 2008 was the same, *i.e.*, the installation of a Thermo Disc and Thermal Fuse to sense temperatures at the cooling unit boiler tube, and, in the event of a cooling unit leak and rise in boiler tube temperature, interrupt electric power to the heaters, propane burner and igniter before a cooling unit leak resulted in a fire.  The Defendants never offered the retrofit kits to owners of all models of the Defective Gas Absorption Refrigerators, notwithstanding the fact that all models of the Defective Gas Absorption Refrigerators shared the same defects and safety risks.

119.    Defendants' retrofit failed to eliminate the defects and inherent safety risks in the Defective Gas Absorption Refrigerators.  For example, the retrofits did not address—much less eliminate—the propensity of the boiler tube walls to corrode and leak cooling solution and flammable gases, which cause the cooling units to overheat and cause fires.  The retrofit remedy has not been able to control—much less eliminate—the excessive temperatures leaking cooling units achieve, which lead to fires.  The retrofit remedy has not addressed the defective design of the safety fuse plug common to all the Defective Gas Absorption Refrigerators.  Finally, the retrofit was not effective to protect the combustibles inside the refrigerator compartment—such as the bare wood of the compartment itself—from the excessive heat and/or fire resulting from a malfunctioning Defective Gas Absorption Refrigerator.  As a result, common defects and risk of dangerous fires still remain in all models of the Defective Gas Absorption Refrigerators, including those that have been retrofitted with the recall remedy.

120.    Based on information and belief, Defendants' retrofit remedy—once tripped— permanently shuts down the refrigerator leaving the owner with no alternative but an expensive repair, replacement of the entire cooling unit, or purchasing a new refrigerator.  Thus, Defendants' retrofit does not "fix" the defects inherent in the Defective Gas Absorption Refrigerators, but instead masks the defects by destroying a malfunctioning cooling unit and refrigerator, presumably before it destroys a consumer's recreational vehicle, or worse, causes a life-threatening fire.  Defendants, and each of them, have and continue to intentionally conceal the operation and effect of their retrofit remedy from consumers and the Class.

121.    Upon information and belief, every Defective Gas Absorption Refrigerators sold by Defendants contains the same design and/or manufacturing defects as described above.

122.    Defendants' concealment of material facts regarding the Defective Gas Absorption Refrigerators and the ineffective, misleading, and fraudulent recall and retrofit campaigns have injured and continue to harm Plaintiffs and Class members in the following ways:

a.    By failing to disclose complete and accurate information regarding the nature and scope of the design and manufacturing defects in their products, Defendants have misled, and continue to mislead consumers into the belief that Defendants' products are safe for their intended purpose, when the products constitute a serious fire hazard.

b.    Defendants' limited, misleading and ineffective recall and retrofit campaigns have created the false impression with Plaintiffs and Class members that (1) if they own a Dometic Model RM2351, RM2354, RM2451, RM2454, RM2551, RM2554, RM3762, DMR/DMC 7-Series, RM2820, RM3962, RM1350 or NDA1402 refrigerator, or a Dometic Model NDR1062, RM2652, RM2662, RM 2663, RM2852, RM2862, RM3662, RM3663, RM3862 and RM3863 manufactured after June 2006, it is not defective and is safe to use, when in fact those models contain the same common defects and safety risks as all of Defendants' Defective Gas Absorption Refrigerators; and (2) if they own a Dometic Model NDR1062, RM2652, RM2662, RM 2663, RM2852, RM2862, RM3662, RM3663, RM3862 and RM3863 and participate in the recall campaigns, their gas absorption refrigerators will be safe to use, when in fact the retrofit is ineffective to prevent their products from causing fires; and, the defects inherent in the refrigerators will continue to cause fires whether retrofitted or not.

c.    Defendants have failed, and continue to fail, to disclose to Plaintiffs and Class members that the retrofit campaigns are not only ineffective in stopping fires, but the devices installed actually render consumers' refrigerators completely inoperable, requiring them to make an expensive repair or purchase a replacement cooling unit or refrigerator.

d.    Defendants have actively concealed and failed to disclose material facts regarding the existence and scope of warranty protection available to Plaintiffs and Class members regarding Defendants' products, and routinely deny warranty coverage to consumers,

notwithstanding the common defects inherent in the products, forcing consumers to incur the entire cost of repairing or replacing the Defective Gas Absorption Refrigerators.  Alternatively, if the refrigerator is replaced under warranty, the consumer is harmed because he or she receives another Defective Gas Absorption Refrigerator with the same defects and risks of fire as the unit replaced.

e.      Whether their refrigerators are replaced or subject to Defendants' retrofit campaign, Plaintiffs and Class members are forced to incur the incidental costs, including costs to deliver their RV/boat to a repair shop, and thereby incur further damages and expenses for loss of use of the RV/boat while the replacement/retrofit is done.  Many consumers have had to incur these costs and expenses on more than one occasion due to the ineffective recall/retrofit campaigns.

f.      Due to Defendants' concealment of material facts, Plaintiffs and Class members own property of diminished value.  From the date the true facts regarding the dangerous and continuing safety hazards inherent in the Defective Gas Absorption Refrigerators is disclosed, the units have diminished value in the marketplace.  All of these costs and expenses to consumers are the result of Defendants placing dangerously defective products into the stream of commerce in the first place, and thereafter failing to effectively recall and retrofit the Defective Gas Absorption Refrigerators so that they are safe for their intended use.

123.    Defendants' conduct, as outlined herein, is unfair, misleading, and deceptive. Plaintiffs and Class members are induced into believing that the Defective Gas Absorption Refrigerators are not defective, or that any defects have been corrected through the product safety recalls.  In reality, Defendants are doing nothing to correct the defects and only installing retrofits that attempt to eliminate the propensity to cause fires by permanently disabling the refrigerator entirely when the risk fire is imminent.

124.    Rather than design and manufacture a product that is safe to use, Defendants are turning their design and manufacturing defects into a profit center.  If the Defective Gas Absorption Refrigerator causes a fire that destroys the product, Defendants make money by selling a new refrigerator.  If a consumer's refrigerator is permanently disabled because of the devices retrofitted by Defendants through their recall campaigns, the effect is the same—Defendants make money selling another refrigerator.  In either event, the consumer is damaged by being forced to pay some or

1   all of the cost of replacing the Defective Gas Absorption Refrigerator.  Further, in those instances

2   where Plaintiffs and the Class have purchased another of Defendants' refrigerators, Defendants have,

3   and continue, to profit from their own wrongful conduct.

4        125.   In all scenarios, Plaintiffs and the Class have not received the value for which they

5   bargained when they purchased a Defective Gas Absorption Refrigerator.

6   **V.      TOLLING OF THE STATUTES OF LIMITATION**

7   **A.      Discovery Rule Tolling**

8        126.   This is the quintessential case for tolling.  Plaintiffs and Class members had no way of

9   knowing about the defects in the Defective Gas Absorption Refrigerators and that Defendants'

10  recalls and repairs did not fix the defects or render the Defective Gas Absorption Refrigerators safe

11  to use.  By contrast, Defendants have expressly hidden the defects through confidential settlements,

12  false advertising, and deceptive and ineffective recalls that were never intended to actually fix the

13  known defects in the design and manufacture of the Defective Gas Absorption Refrigerators.

14       127.   Within the time period of any applicable statutes of limitation, Plaintiffs and the other

15  Class members could not have discovered through the exercise of reasonable diligence that

16  Defendants were failing to disclose defects and the true safety of the Defective Gas Absorption

17  Refrigerators.

18       128.   Plaintiffs and Class members did not discover, and did not know of facts that would

19  have caused a reasonable person to suspect, that Defendants did not report information within their

20  knowledge to federal authorities (including NHTSA), dealerships or consumers, nor would a

21  reasonable and diligent investigation have disclosed that Defendants had information in their

22  possession about the existence and dangerousness of defects and opted to conceal that information,

23  and nor would such an investigation have disclosed that Defendants valued profits over safety and

24  avoiding redesigning or altering the materials in their Defective Gas Absorption Refrigerators to

25  render them safe under normal and intended use.

26       129.   All applicable statutes of limitation have been tolled by operation of the discovery

27  rule.

28

CLASS ACTION COMPLAINT - 38
010520-11  866131 V1

**B.      Fraudulent Concealment Tolling**

130.     All applicable statutes of limitation have also been tolled by Defendants' knowing and active fraudulent concealment and denial of the facts alleged herein throughout the time period relevant to this action.

131.     Instead of disclosing the known safety defects, Defendants falsely represented that the Defective Gas Absorption Refrigerators were safe, reliable, and of high quality, and that they were reputable manufacturers that stood behind their products after they were sold.

**C.      Estoppel**

132.     Defendants were under a continuous duty to disclose to Plaintiffs and the Class the true character, quality, and nature of the Defective Gas Absorption Refrigerators.

133.     Defendants knowingly, affirmatively, and actively concealed the true nature, quality, and character of the Defective Gas Absorption Refrigerators from consumers.

134.     Defendants were also under a continuous duty to disclose to Plaintiffs and the Class that their recalls and purported repairs did not address the underlying defects and safety issues in the Defective Gas Absorption Refrigerators, and thus, even if a consumer had all recalls and retrofits performed on their Defective Gas Absorption Refrigerator, it would remain dangerous under normal use and was at risk of causing fire.

135.     Based on the foregoing, Defendants are estopped from relying on any statutes of limitations in defense of this action.

## VI.      CLASS ALLEGATIONS

136.     Pursuant to Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, Plaintiffs bring this action on behalf of themselves and the following class, with subclasses for Washington, California, Ohio, and Texas (collectively referred to as "the Class"):

> During the fullest period allowed by law, all persons who purchased or own a Defective Gas Absorption Refrigerator manufactured on or after January 1, 1997.

137.     Excluded from the Class are Defendants, their employees, co-conspirators, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated

companies; class counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this case.

138.    Within the Class are subclasses (the "State Subclasses") for Washington, California, Ohio, and Texas defined as set forth in each cause of action below.

139.    Pursuant to Rule 23(a)(1), the Class is so numerous that joinder of all members is impracticable.  Due to the nature of the trade and commerce involved, the members of each State Subclass are geographically dispersed throughout the state of each State Subclass and joinder of all State Subclass members would be impracticable.  While the exact number of Class members in each State Subclass is unknown to Plaintiffs at this time, Plaintiffs believe that there are at least 1.5 million RVs and boats in the various states and District of Columbia that are equipped with Defective Gas Absorption Refrigerators.

140.    Membership in the Class and each State Subclass is readily determinable by reference to Defendants' manufacturing databases, warranty registration databases, aftermarket sales databases, recall/retrofit campaign mailing lists and databases, Original Equipment Manufacturer's ("OEM") manufacturing and sales records, dealership sales records, and, if necessary, license and registration databases of the states.

141.    Pursuant to Rule 23(a)(3), Plaintiffs' claims are typical of the claims of the other members of each State Subclass.  Plaintiffs and other Class members all purchased or own a RV or boat that contains a Defective Gas Absorption Refrigerator.  Defective Gas Absorption Refrigerators were, in relevant part, of uniform design, material and production for sale throughout the United States and Defendants' policies and procedures concerning repair or replacement of Defective Gas Absorption Refrigerators applied uniformly to all members of each State Subclass.  Plaintiffs and Class members purchased or continued to use Defective Gas Absorption Refrigerators with the reasonable expectation that the products were defect-free, safe to use for their intended purpose, and that Defendants would abide by their warranties.  Plaintiffs and the members of the Class have all sustained injury in that:  (1) their Defective Gas Absorption Refrigerators are defectively designed and present an unreasonable risk of fire; (2) they are required to pay additional sums to repair or replace their Defective Gas Absorption Refrigerators; (3) they are required to pay additional sums for

CLASS ACTION COMPLAINT - 40
010520-11  866131 V1

the loss of use of their RVs and boats; and (4) the value of their RVs and boats has decreased due to Defendants' wrongful conduct.

142.    Pursuant to Rule 23(a)(4) and (g)(1), Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class action, product defect, and consumer fraud litigation.

143.    Pursuant to Rules 23(b)(2), Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.  In particular, Defendants have concealed the true nature of the defects in the Defective Gas Absorption Refrigerators; have failed to properly repair the Defective Gas Absorption Refrigerators; and have instead initiated recall and retrofit campaigns which fail to address the underlying defects in the Defective Gas Absorption Refrigerators, fail to alleviate the risk of fire, and when engaged, require the Defective Gas Absorption Refrigerators to be replaced.

144.    Pursuant to Rule 23(a)(2) and (b)(3), common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members thereof.  Among the common questions of law and fact are as follows:

       a.    Whether the Defective Gas Absorption Refrigerators have defects that create an unreasonable risk of fire and explosion under normal use and within their expected useful lifespan;

       b.    Whether Defendants had knowledge of the defects in the Defective Gas Absorption Refrigerators;

       c.    Whether Defendants concealed the defects in the Defective Gas Absorption Refrigerators;

       d.    Whether installation of the Thermo Disc and Thermal Fuse satisfied Defendants' warranty obligations with respect to the Defective Gas Absorption Refrigerators;

       e.    Whether Defendants' omissions regarding the Defective Gas Absorption Refrigerators were likely to deceive Class members;

       f.    Whether Defendants' business practices, including the manufacture and sale of the Defective Gas Absorption Refrigerators that Defendants have failed to adequately investigate, disclose and remedy, offend established public policy and cause harm to consumers that greatly outweighs any benefits associated with those practices;

g.   Whether Defendants breached the implied warranty of merchantability because the Defective Gas Absorption Refrigerators were not fit for their ordinary purpose due to the unreasonable risk of fire and explosion;

h.   Whether Plaintiffs and Class members are entitled to damages, restitution, restitutionary disgorgement, equitable relief, and/or other relief;

i.   The amount and nature of such relief to be awarded to Plaintiffs and the Class; and

j.   Whether any applicable statutes of limitations should be tolled due to Defendants' concealment of the defects in the Defective Gas Absorption Refrigerators.

145.   Pursuant to Rules 23(b)(3), a class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all Class members is impracticable.  The prosecution of separate actions by individual members of the classes would impose heavy burdens upon the courts and Defendants, and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to those classes.  A class action would achieve substantial economies of time, effort and expense, and would assure uniformity of decision as to persons similarly situated without sacrificing procedural fairness.

## VII.   CLAIMS ON BEHALF OF THE NATIONWIDE CLASS

### COUNT I
### VIOLATION OF MAGNUSON-MOSS WARRANTY ACT
### (15 U.S.C. § 2301, *et seq.*)

146.   Plaintiffs incorporate by reference and reallege all paragraphs alleged herein.  This Count is asserted by each State Subclass as Count I.

147.   This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. § 1332 (a)-(d).

148.   Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

149.   Defendants, and each of them, are a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

150.   The Defective Gas Absorption Refrigerators are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

151.    15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

152.    Defendants' Defective Gas Absorption Refrigerators' implied warranties are implied warranties within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7).

153.    Defendants breached these warranties as described in more detail above, but generally by not repairing or replacing the Defective Gas Absorption Refrigerators design, materials and workmanship defects; providing the Defective Gas Absorption Refrigerators in unmerchantable condition, *i.e.*, unfit for the purpose for which gas absorption refrigerators are used, and creating an unreasonable risk of fire and explosion when used as intended; providing Defective Gas Absorption Refrigerators that were not fully operational, safe, or reliable; and not curing defects and nonconformities once they were identified.

154.    Plaintiffs and Class members have had sufficient direct dealings with either Defendants or their agents (dealerships or RV/boat manufacturers) to establish privity of contract. Notwithstanding this, privity is not required in this case because Plaintiffs and Class members are intended third-party beneficiaries of contracts between Defendants and their dealers or RV/boat manufacturers; specifically, they are the intended beneficiaries of Defendants' implied warranties. The dealers and manufacturers were not intended to be the ultimate consumers of the Defective Gas Absorption Refrigerators and have no rights under the warranty agreements provided; the warranty agreements were designed for and intended to benefit the ultimate consumers only.  Finally, privity is also not required because Plaintiffs' and Class members' Defective Gas Absorption Refrigerators are dangerous instrumentalities due to the aforementioned defects and nonconformities.

155.    Plaintiffs have satisfied any obligations under 15 U.S.C. § 2310(a)(3), and also provided Defendants an opportunity to cure, even though no such opportunity is required in these circumstances.

156.    Plaintiffs have discussed the Defective Gas Absorption Refrigerators with Defendants and/or their agents without their concerns being resolved.  Plaintiffs have contacted their dealerships and/or manufacturers to discuss their situation without adequate resolution.

CLASS ACTION COMPLAINT - 43
010520-11 866131 V1

157.    Requiring an informal dispute settlement procedure, or affording Defendants a reasonable opportunity to cure their breach of written warranties, would be unnecessary and futile. At the time of sale of each RV or boat containing a Defective Gas Absorption Refrigerator, Defendants knew, should have known, or were reckless in not knowing of their omissions concerning the inability of the Defective Gas Absorption Refrigerators to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design.  Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement—whether under the Magnuson-Moss Warranty Act or otherwise—that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

158.    The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25.  The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.  For each Class member the amount in controversy at least exceeds the sum of $1,000, exclusive of interest and costs, which is the minimum cost to replace the Defective Gas Absorption Refrigerators.  Plaintiffs have also lost money as a result of having to pay hundreds of dollars to repair or replace their Defective Gas Absorption Refrigerators after Defendants' failed attempts to fix the defects. Plaintiffs have also lost money as a result of having to pay hundreds of dollars associated with loss of use of their RVs or boats.  Finally, Plaintiffs have lost money because they paid for a safe and useful gas absorption refrigerator for their RV or boat and the value of their RV or boat has decreased because of the installed Defective Gas Absorption Refrigerator.

159.    Plaintiffs seek all damages, including the diminution in value of their RVs/boats, in an amount to be proven at trial.  In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs and the other Class members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiffs and the other Class members in connection with the commencement and prosecution of this action.

160.    Further, Plaintiffs and the Class are also entitled to equitable relief under 15 U.S.C. § 2310(d)(1).  Based on Defendants' continuing failures to fix the known dangerous defects, Plaintiffs seek a declaration that Defendants have not adequately implemented their recall commitments and requirements and general commitments to fix its failed processes, and injunctive relief in the form of judicial supervision over the recall process is warranted.  Plaintiffs also seek the establishment of a Defendant-funded program for Plaintiffs and Class members to recover out-of-pocket costs incurred in attempting to rectify their Defective Gas Absorption Refrigerators.

## VIII.   STATE LAW COUNTS

### A.    CALIFORNIA

### COUNT I
### VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT
### FOR BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (CAL. CIV. CODE §§ 1792 & 1791.1)

161.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

162.    This claim is brought by Plaintiff Papasan only on behalf of the California Subclass.

163.    Plaintiff Papasan and the California Subclass are "buyers" within the meaning of California Civil Code § 1791.

164.    The Defective Gas Absorption Refrigerators are "consumer goods" within the meaning of  California Civil Code § 1791(a).

165.    Defendants are "manufacturers" of the Defective Gas Absorption Refrigerators within the meaning of California Civil Code § 1791(j).

166.    Defendants impliedly warranted to Plaintiff and the California Subclass that the Defective Gas Absorption Refrigerators were "merchantable" within the meaning of California Civil Code § 1791.1(a) and § 1792, however, the Defective Gas Absorption Refrigerators do not have the quality that a buyer would reasonably expect.

167.    California Civil Code § 1791.1(a) states:

"Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:

(1)   Pass without objection in the trade under the contract description.

(2)   Are fit for the ordinary purposes for which such goods are used.

(3)   Are adequately contained, packaged, and labeled.

(4)   Conform to the promises or affirmations of fact made on the container or label.

168.   The Defective Gas Absorption Refrigerators would not pass without objection in the refrigerator trade because of the defectively designed boiler tube assembly and safety fuse plug, described above, and the resultant risk of fire or explosion.

169.   Because of the defectively designed boiler tube assembly and safety fuse plug, the Defective Gas Absorption Refrigerators fail to operate reliably, and carry an unreasonable risk of causing a fire or explosion, and thus are not fit for ordinary purposes.

170.   Defendants breached the implied warranty of merchantability by manufacturing, selling, and otherwise placing into the stream of commerce gas absorption refrigerators containing dangerous safety defects, *i.e.*, defectively designed boiler tube assemblies and safety fuse plugs. Furthermore, these defects have caused Plaintiff and the California Subclass to not receive the benefit of their bargain in that they have had to spend money to repair or replace their Defective Gas Absorption Refrigerators, and to cover the loss of use of their RVs/boats, which is money that they would have had to spend had the Defective Gas Absorption Refrigerators operated as designed and intended.

171.   Further, Defendants breached the implied warranty of merchantability when they designed, initiated and implemented recalls and retrofits of the Defective Gas Absorption Refrigerators because (1) the recall/retrofit campaigns did not include all the Defective Gas Absorption Refrigerators; (2) the recall/retrofit campaigns did not eliminate the design defects or render the Defective Gas Absorption Refrigerators safe to use for their intended purpose; and (3) the recall/retrofit campaigns installed devices which, unknown to Plaintiff and the Class, degraded and/or destroyed the performance of the Defective Gas Absorption Refrigerators.

172.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff and the California Subclass received goods whose condition substantially

1    impairs their value to Plaintiff and the California Subclass.  Plaintiff and the California Subclass

2    have been damaged as a result of the diminished value of Defendants' products, the products'

3    malfunctioning, and the nonuse of their RVs and boats.

4           173.    Pursuant to  California Civil Code § 1791.1(d) and § 1794, Plaintiff and the California

5    Subclass are entitled to damages and other legal and equitable relief including, at their election, the

6    purchase price of their Defective Gas Absorption Refrigerators, or the overpayment or diminution in

7    value of their RVs or boats.

8           174.    Pursuant to  California Civil Code § 1794, Plaintiff and the California Subclass are

9    entitled to costs and attorneys' fees.

10                                   **COUNT II**
                 **VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW**
11                        **(CAL. BUS. & PROF. CODE § 17200, *et seq.*)**

12          175.    Plaintiffs reallege and incorporate by reference all paragraphs alleged herein.

13          176.    This claim is brought by Plaintiff Papasan only on behalf of the California Subclass.

14          177.    California Business and Professions Code § 17200 prohibits any "unlawful, unfair, or

15   fraudulent business act or practices."  Defendants have engaged in unlawful, fraudulent, and unfair

16   business acts and practices in violation of the Unfair Competition Law ("UCL").

17          178.    Defendants have violated the unlawful prong of section 17200 by its violations of the

18   Magnuson-Moss Warranty Act as set forth in Count I and by the acts and practices set forth in this

19   Complaint.

20          179.    Defendants have violated the fraudulent prong of section 17200 because the

21   omissions regarding the Defective Gas Absorption Refrigerators and the recalls and retrofits as set

22   forth in this Complaint were likely to deceive a reasonable consumer, and the information would be

23   material to a reasonable consumer.

24          180.    Defendants have violated the unfair prong of section 17200 because the acts and

25   practices set forth in the Complaint, including the manufacture and sale of the Defective Gas

26   Absorption Refrigerators and Defendants' failure to adequately investigate, disclose and remedy said

27   defects, offend established public policy and because the harm it causes to consumers greatly

28   outweighs any benefits associated with those practices.  Defendants' conduct has also impaired

CLASS ACTION COMPLAINT - 47
010520-11  866131 V1

competition within the RV/Boat refrigerator market and has prevented Plaintiff and California Subclass members from obtaining the repairs and/or replacements to which they are entitled under their warranties.

181. Plaintiff and California Subclass members have suffered an injury-in-fact, including the loss of money or property, as a result of Defendants' unfair, unlawful and/or deceptive practices. Defendants failed to repair or replace the Defective Gas Absorption Refrigerators and, as a result, Plaintiff's and California Subclass members' RVs or boats diminished in value and remain at unreasonable risk of fire that would not exist if the Defective Gas Absorption Refrigerators worked as designed and intended and/or had been repaired as required under the warranties.

182. All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendants' business. Defendants' wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in California and nationwide.

183. Plaintiff and the California Subclass request that this Court enter such orders or judgments as may be necessary to enjoin Defendants from continuing their unfair, unlawful, and/or deceptive practices and to restore to Plaintiff and members of the Class any money Defendants acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in California Business and Professions Code § 17203 and California Civil Code § 3345; and for such other relief set forth below.

### COUNT III
### BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (CAL. COM. CODE § 2314)

184. Plaintiffs incorporate by reference and reallege all paragraphs alleged herein.

185. This claim is brought by Plaintiff Papasan only on behalf of the California Subclass.

186. Defendants are and were at all relevant times merchants under California Commercial Code § 2104.

187. A warranty that the Defective Gas Absorption Refrigerators were in merchantable condition was implied by law in the instant transaction, pursuant to California Commercial Code § 2314.

188.    The Defective Gas Absorption Refrigerators, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which gas absorption refrigerators are used.  Specifically, the Defective Gas Absorption Refrigerators are inherently defective in that there are defects in the cooling systems that cause the boiler tubes to prematurely corrode, crack, and leak causing an unreasonable risk of fire and failure to reliably operate.

189.    Defendants were provided notice of these issues by numerous complaints filed against them, including the instant Complaint, and by numerous individual letters and communications sent by Plaintiff and California Subclass members before or within a reasonable amount of time after the allegations of the Defective Gas Absorption Refrigerators became public.

190.    Plaintiff and California Subclass members have had sufficient direct dealings with either Defendants or their agents (dealerships) to establish privity of contract between Plaintiff and the California Subclass members.  Notwithstanding this, privity is not required in this case because Plaintiff and California Subclass members are intended third-party beneficiaries of contracts between Defendants and their dealers and RV/boat manufacturers; specifically, they are the intended beneficiaries of Defendants' implied warranties.  The dealers/manufacturers were not intended to be the ultimate consumers of the Defective Gas Absorption Refrigerators and have no rights under the warranty agreements provided with the Defective Gas Absorption Refrigerators; the warranty agreements were designed for and intended to benefit the ultimate consumers only.  Finally, privity is also not required because Plaintiff's and California Subclass members' Defective Gas Absorption Refrigerators are dangerous instrumentalities due to the aforementioned defects and nonconformities which can cause the Defective Gas Absorption Refrigerators to catch fire or explode.

191.    As a direct and proximate result of Defendants' breach of the warranties of merchantability, Plaintiff and the California Subclass have been damaged in an amount to be proven at trial.

## COUNT IV
## BREACH OF CONTRACT/COMMON LAW WARRANTY

192.    Plaintiffs incorporate by reference and reallege all paragraphs alleged herein.

193.    This claim is brought by Plaintiff Papasan only on behalf of the California Subclass.

CLASS ACTION COMPLAINT - 49
010520-11  866131 V1

194.     To the extent Defendants' repair commitment is deemed not to be a warranty under California's Commercial Code, Plaintiff pleads in the alternative under common law warranty and contract law.  Defendants limited the remedies available to Plaintiff and the California Subclass to just repairs and replacements needed to correct defects in materials or workmanship of any part supplied by Defendants and/or warranted the quality or nature of those services to Plaintiff and the California Subclass.

195.     Defendants breached this warranty or contract obligation by failing to repair the Defective Gas Absorption Refrigerators, or to replace them.

196.     As a direct and proximate result of Defendants' breach of contract or common law warranty, Plaintiff and the California Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

### COUNT V
### VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT
### (CAL. CIV. CODE § 1750, *et seq.*)

197.     Plaintiffs incorporate by reference and reallege all paragraphs alleged herein.

198.     This claim is brought by Plaintiff Papasan only on behalf of the California Subclass.

199.     Defendants are "persons" as defined in California Civil Code § 1761(c).

200.     Plaintiff and the California Subclass are "consumers," as defined in California Civil Code § 1761(d), who purchased the Defective Gas Absorption Refrigerators for personal, family, or household purposes.

201.     The California Legal Remedies Act ("CLRA") prohibits "unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer[.]" CAL. CIV. CODE § 1770(a).  Defendants have engaged in unfair or deceptive acts or practices that violated California Civil Code § 1750, *et seq.*, as described above and below, by, among other things, representing that the Defective Gas Absorption Refrigerators have characteristics, uses, benefits, and qualities which they do not have; representing that the Defective Gas Absorption Refrigerators are of a particular standard, quality, and grade when they are not; advertising the Defective Gas Absorption Refrigerators with the intent not to sell them

as advertised; and representing that the subject of a transaction involving the Defective Gas Absorption Refrigerators has been supplied in accordance with a previous representation when it has not.

202.    In the course of their business, Defendants willfully failed to disclose dangerous and common defects, risks, and the true performance of the Defective Gas Absorption Refrigerators, including, but not limited to, the propensity of the Defective Gas Absorption Refrigerators' cooling unit boiler tube to corrode, crack, and leak hydrogen gas under normal use.  Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission in connection with the sale of the Defective Gas Absorption Refrigerators.

203.    As described above, for at least fifteen years, Defendants knew about the defects and the real-world performance of the Defective Gas Absorption Refrigerators but have failed to eliminate the defects and/or provide consumers with accurate information.

204.    By failing to disclose and/or actively concealing the dangerous defects of the Defective Gas Absorption Refrigerators and by marketing the Defective Gas Absorption Refrigerators as "hav[ing] a solid reputation and are recognized for their high quality," as "high quality," "award winning and innovative," "quality-guaranteed"—without any mention of the defects and fire risks inherent in each unit—Defendants failed to disclose the true standard, quality, and/or grade of the Defective Gas Absorption Refrigerators in violation of the CLRA.

205.    In the course of Defendants' business, they willfully failed to disclose dangerous defects and risks in the Defective Gas Absorption Refrigerators.  Defendants compounded the deception by repeatedly asserting that the Defective Gas Absorption Refrigerators were safe, reliable, and high quality.

206.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and the California Subclass, about the true safety, reliability, functionality, and quality of the Defective Gas Absorption Refrigerators and the true value of the Defective Gas Absorption Refrigerators.

CLASS ACTION COMPLAINT - 51
010520-11  866131 V1

207.    As described above, Defendants intentionally and knowingly omitted material facts regarding the Defective Gas Absorption Refrigerators with intent to mislead Plaintiff and the California Subclass.

208.    Defendants knew or should have known that their conduct violated the CLRA.

209.    Defendants owed Plaintiff and the California Subclass a duty to disclose the true nature, quality, and character of the Defective Gas Absorption Refrigerators because Defendants:

     a.   Possess exclusive knowledge based on their non-public databases tracking the real-world performance of their products in the field, including fire claims and warranty and return claims, and access to expert reports from independent fire investigators and engineers documenting the defects inherent in their gas absorption refrigerators;

     b.   Intentionally concealed the foregoing from Plaintiff and the California Subclass members; and/or

     c.   Made incomplete representations or omissions about the true nature, quality, and character of the Defective Gas Absorption Refrigerators while purposefully withholding material facts from Plaintiff and the California Subclass that contradicted these representations.

210.    Because Defendants fraudulently concealed and/or made material omissions about the defects, the value of the Defective Gas Absorption Refrigerators is significantly less than what Plaintiff and California Subclass members paid.  Defendants' conduct was material to Plaintiff and California Subclass members.

211.    Plaintiff and California Subclass members suffered an ascertainable loss caused by Defendants' omissions.  Plaintiff and California Subclass members would have purchased a different RV or boat that did not contain a Defective Gas Absorption Refrigerator; decided not to keep an RV or boat with a Defective Gas Absorption Refrigerator; and/or paid less for the RV or boat because of the Defective Gas Absorption Refrigerator or because of the cost of replacing the Defective Gas Absorption Refrigerator with a non-defective product.  As a direct and proximate result of Defendants' violations of the CLRA, Plaintiff and the California Subclass have suffered injury-in-fact and/or actual damages.

212.     Defendants' violations of the CLRA present a continuing risk to Plaintiff, the California Subclass, and the general public.  Defendants' unlawful acts and practices complained of herein affect the public interest.

213.     Plaintiff and the California Subclass seek relief against Defendants as allowed under California Civil Code § 1780(a)(1)-(5).

214.     Plaintiff and the California Subclass seek an order enjoining Defendants' unfair or deceptive acts or practices.

215.     Plaintiff has made a demand in satisfaction of California Civil Code § 1780(a) and may amend this Complaint to assert damages claims under the CLRA once the required 30 days have elapsed.

## COUNT VI
## VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW
### (CAL. BUS. & PROF. CODE §§ 17500, *et seq.*)

216.     Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

217.     Plaintiff Papasan brings this Count on behalf of the California Subclass.

218.     California Business and Professions Code § 17500 states:  "It is unlawful for any … corporation … with intent directly or indirectly to dispose of real or personal property … to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated … from this state before the public in any state, in any newspaper or other publication, or any advertising device, … or in any other manner or means whatever, including over the Internet, any statement … which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

219.     Defendants caused to be made or disseminated throughout California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Defendants, to be untrue and misleading to consumers, including Plaintiff and the other California Subclass members.

220.     Defendants have violated section 17500 because the omissions regarding the safety, reliability, functionality, and quality of the Defective Gas Absorption Refrigerators as set forth in this Complaint were material and likely to deceive a reasonable consumer.

221.     Plaintiff and the other California Subclass members have suffered an injury-in-fact, including the loss of money or property, as a result of Defendants' unfair, unlawful, and/or deceptive practices.  In purchasing their RVs or boats that contained the Defective Gas Absorption Refrigerators, Plaintiff and the other California Subclass members relied on the omissions of Defendants with respect to the safety, reliability, functionality, and quality of the Defective Gas Absorption Refrigerators.  Defendants' representations were not incomplete because the Defective Gas Absorption Refrigerators possessed common design defects and common safety risks in the cooling unit design that Defendants did not disclose.  Had they known this, Plaintiff and California Subclass members would have purchased a different RV or boat that did not contain a Defective Gas Absorption Refrigerator; decided not to keep an RV or boat with a Defective Gas Absorption Refrigerator; and/or paid less for the RV or boat because of the Defective Gas Absorption Refrigerator or because of the cost of replacing the Defective Gas Absorption Refrigerator with a non-defective product.  Accordingly, Plaintiff and the other California Subclass members overpaid and did not receive the benefit of their bargain.

222.     All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendants' business.  Defendants' wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the State of California and nationwide.

223.     Plaintiff, individually and on behalf of the other California Subclass members, request that this Court enter such orders or judgments as may be necessary to enjoin Defendants from continuing their unfair, unlawful, and/or deceptive practices and to restore to Plaintiffs and the other California Subclass members any money Defendants acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

**COUNT VII**
**UNJUST ENRICHMENT**

224.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

225.    Plaintiff Papasan brings this Count on behalf of the California Subclass.

226.    Defendants have received and retained a benefit from the Plaintiff and California Subclass members and inequity has resulted.

227.    Defendants have benefitted from selling the Defective Gas Absorption Refrigerators whose value was artificially inflated by Defendants' omissions regarding the safety, reliability, functionality, and quality of the Defective Gas Absorption Refrigerators, and Plaintiff has overpaid and been forced to pay other costs, including, but not limited to, repairs.

228.    Thus, all California Subclass members conferred a benefit on Defendants.

229.    It is inequitable for Defendants to retain these benefits.

230.    Plaintiff and California Subclass members were not aware of the true facts about the Defective Gas Absorption Refrigerators, and did not benefit from Defendants' conduct.

231.    Defendants knowingly accepted the benefits of its unjust conduct.

232.    As a result of Defendants' conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

**COUNT VIII**
**NEGLIGENCE**

233.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

234.    Plaintiff Papasan brings this Count on behalf of the California Subclass.

235.    Defendants designed, manufactured, sold, or otherwise placed in the stream of commerce the Defective Gas Absorption Refrigerators, as set forth above.

236.    Defendants had a duty to design and manufacture a product that would be safe for its intended and foreseeable uses and users, including the uses to which its products were put by Plaintiff and the other members of the California Subclass.  Defendants breached their duties to Plaintiff and the other members of the California Subclass because they were negligent in the design,

development, manufacture, and testing of the Defective Gas Absorption Refrigerators, and Defendants are responsible for this negligence.

237.     Defendants were negligent in the design, development, manufacture, and testing of the Defective Gas Absorption Refrigerators because they knew, or in the exercise of reasonable care should have known, that the Defective Gas Absorption Refrigerators pose an unreasonable risk of death or serious bodily injury to Plaintiff and the other members of the California Subclass, passengers, other motorists, pedestrians, and the public at large, because they are susceptible to causing fires and explosions in RVs and boats.

238.     Whereupon Plaintiff, individually and on behalf of the other members of the California Subclass, respectfully rely upon the RESTATEMENT (SECOND) OF TORTS § 395.

239.     Defendants further breached their duties to Plaintiff and the other members of the California Subclass by supplying directly or through a third person the Defective Gas Absorption Refrigerators to be used by such foreseeable persons as Plaintiff and the other members of the California Subclass when:

   a.   Defendants knew or had reason to know that the Defective Gas Absorption Refrigerators were dangerous or likely to be dangerous for the use for which they were supplied; and

   b.   Defendants failed to exercise reasonable care to inform customers of the dangerous condition or of the facts under which the Defective Gas Absorption Refrigerators are likely to be dangerous.

240.     Defendants had a continuing duty to warn and instruct the intended and foreseeable users of its Defective Gas Absorption Refrigerators, including Plaintiff and the other members of the California Subclass, of the defective condition of their gas absorption refrigerators and the high degree of risk attendant to using them.  Plaintiff and the other members of the California Subclass were entitled to know that the Defective Gas Absorption Refrigerators, in their ordinary operation, were not reasonably safe for their intended and ordinary purposes and uses.

241.     Defendants knew or should have known of the defects described herein.  Defendants breached their duty to Plaintiff and the other members of the California Subclass because they failed

1    to warn and instruct the intended and foreseeable users of their products of the defective condition of

2    the Defective Gas Absorption Refrigerators and the high degree of risk attendant to using them.

3          242.    Defendants had a post-sale duty to conduct a prompt and adequate recall and retrofit

4    campaign to eliminate the dangerous defects inherent in their gas absorption refrigerators and render

5    them safe to use for their reasonably foreseeable purposes.   Defendants breached this duty by

6    conducting incomplete, untimely and inadequate recall and retrofit campaigns that neither eliminated

7    the defects, nor rendered the Defendants' gas absorption refrigerators safe to use.

8          243.    As a direct and proximate result of Defendants' negligence, Plaintiff and the other

9    members of the California Subclass suffered damages.

10   **B.    OHIO**

11                               **COUNT I**
                    **VIOLATIONS OF THE CONSUMER SALES PRACTICES ACT**
12                       **(OHIO REV. CODE §§ 1345.01, *et seq.*)**

13         244.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth

14   herein.

15         245.    Plaintiff Young brings this Count on behalf of the Class members who are Ohio

16   residents ("Ohio Subclass").

17         246.    Plaintiff Young and the other Ohio Subclass members are "consumers" as defined by

18   the Ohio Consumer Sales Practices Act, Ohio Revised Code § 1345.01 ("OCSPA").  Defendants are

19   a "supplier" as defined by the OCSPA.  Plaintiff's and the other Ohio Subclass members' purchases

20   of RVs or boats containing Defective Gas Absorption Refrigerators were "consumer transactions" as

21   defined by the OCSPA.

22         247.    By failing to disclose and actively concealing the defective design of the cooling unit

23   in the Defective Gas Absorption Refrigerators, Defendants engaged in deceptive business practices

24   prohibited by the OCSPA, including (1) representing that the Defective Gas Absorption

25   Refrigerators have characteristics, uses, benefits, and qualities which they do not have;

26   (2) representing that the Defective Gas Absorption Refrigerators are of a particular standard, quality,

27   and grade when they are not; (3) advertising the Defective Gas Absorption Refrigerators with the

28

CLASS ACTION COMPLAINT - 57
010520-11  866131 V1

1    intent not to sell them as advertised; and (4) engaging in acts or practices which are otherwise unfair,

2    misleading, false, or deceptive to the consumer.

3         248.    As alleged above, Defendants made numerous material omissions about the

4    characteristics of the Defective Gas Absorption Refrigerators that were either false or misleading.

5    Each of these omissions contributed to the deceptive context of Defendants' unlawful advertising

6    and representations as a whole.

7         249.    Defendants were on notice that their conduct was deceptive and/or unconscionable in

8    violation of the Consumer Sales Practices Act, as set forth in Ohio Revised Code § 1345.09(B).

9    Defendants were on notice because the Ohio Attorney General published a court order, prior to

10   Defendants' conduct described herein, declaring substantially similar business practices deceptive.

11        250.    Defendants knew that the Defective Gas Absorption Refrigerators were not suitable

12   for their intended use.  Defendants nevertheless failed to warn Plaintiff and Ohio Subclass members

13   about these defects despite having a duty to do so.

14        251.    Defendants owed Plaintiff and Ohio Subclass members a duty to disclose the

15   defective nature of the Defective Gas Absorption Refrigerators, because Defendants:

16           a.    Possessed exclusive knowledge of the defects rendering the
                   Defective Gas Absorption Refrigerators dangerous and
17                 defective;

18           b.    Intentionally concealed defects in the Defective Gas Absorption
                   Refrigerators' cooling system and design; and/or
19

20           c.    Made incomplete representations about the characteristics and
                   performance of the Defective Gas Absorption Refrigerators'
21                 generally, while purposefully withholding material facts from
                   Plaintiff and the Ohio Subclass that contradicted these
22                 representations.

23        252.    Defendants' unfair or deceptive acts or practices were likely to, and did in fact,

     deceive reasonable consumers, including Plaintiff and Ohio Subclass members, about the true
24
     performance and characteristics of the Defective Gas Absorption Refrigerators.'
25
          253.    As a result of its violations of the OCSPA, as detailed above, Defendants caused
26
     actual damage to Plaintiff and, if not stopped, will continue to harm Plaintiff and Ohio Subclass
27
     members.  Plaintiff and Ohio Subclass members currently own, or within the Class Period have
28

1    owned, a Defective Gas Absorption Refrigerator that is defective.  Defects associated with the

2    Defective Gas Absorption Refrigerators have caused the value of the Defective Gas Absorption

3    Refrigerators to decrease.

4         254.    Plaintiffs and the Ohio Subclass sustained damages as a result of Defendants'

5    unlawful acts and are, therefore, entitled to damages and other relief as provided under the OCSPA.

6         255.    Plaintiff and the Ohio Subclass also seek court costs and attorneys' fees as a result of

7    Defendants' violations of the OCSPA as provided in Ohio Revised Code § 1345.09.

8                                    **COUNT II**
                  **BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
9                   **(OHIO REV. CODE § 1302.27 (U.C.C. § 2-314))**

10        256.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as

11   though fully set forth herein.

12        257.    Plaintiff Young brings this Count on behalf of the Ohio Subclass.

13        258.    Defendants are and were at all relevant times a merchant as defined by Ohio Revised

14   Code § 1302.01(A)(5).

15        259.    A warranty that the Plaintiff's and the Ohio Subclass members' Defective Gas

16   Absorption Refrigerators were in merchantable condition is implied by law in the instant

17   transactions.  Plaintiff's and the Ohio Subclass members' Defective Gas Absorption Refrigerators,

18   when sold and at all times thereafter, were not in merchantable condition and are not fit for the

19   ordinary purpose for which they were intended.  Specifically, the Defective Gas Absorption

20   Refrigerators are inherently defective in that the defects inherent in the design cause the uncontrolled

21   release of highly flammable and explosive gasses that will either self-ignite or be ignited by any

22   ignition source in or around the RV or boat.  As such, the Defective Gas Absorption Refrigerators

23   were not adequately designed, manufactured, and tested.

24        260.    Defendants had notice of these issues through the non-public databases tracking the

25   real-world performance of their products in the field that Defendants maintained, including fire

26   claims and warranty and return claims, and access to expert reports from independent fire

27   investigators and engineers documenting the defects inherent in their gas absorption refrigerators.

28   Defendants even engaged in two product safety recalls as described above.

261.     As a direct and proximate result of Defendants' breach of the warranties of merchantability, Plaintiff and the other Ohio Subclass members have been damaged in an amount to be proven at trial.

## COUNT III
## UNJUST ENRICHMENT

262.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

263.     This claim is brought by Plaintiff Young on behalf of members of the Ohio Subclass.

264.     Defendants have received and retained a benefit from the Plaintiff and inequity has resulted.

265.     Defendant has benefitted from selling Defective Gas Absorption Refrigerators whose value was artificially inflated by Defendants' omissions about the quality, grade, and characteristics of the refrigerators, and Plaintiff and the Ohio Subclass members have overpaid for the Defective Gas Absorption Refrigerators and been forced to pay other costs.

266.     Thus, all Ohio Subclass members conferred a benefit on Defendants.

267.     It is inequitable for Defendants to retain these benefits.

268.     Plaintiff and the Ohio Subclass members were not aware of the true facts about the Defective Gas Absorption Refrigerators, and did not benefit from Defendants' conduct.

269.     Defendants knowingly accepted the benefits of its unjust conduct.

270.     As a result of Defendant's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

## COUNT IV
## NEGLIGENCE

271.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

272.     This claim is brought by Plaintiff Young on behalf of members of the Ohio Subclass.

273.     Defendants designed, manufactured, sold, or otherwise placed in the stream of commerce the Defective Gas Absorption Refrigerators, as set forth above.

274.    Defendants had a duty to design and manufacture a product that would be safe for its intended and foreseeable uses and users, including the uses to which its products were put by Plaintiff and the other members of the Ohio Subclass.  Defendants breached their duties to Plaintiff and the members of the Ohio Subclass because they were negligent in the design, development, manufacture, and testing of the Defective Gas Absorption Refrigerators, and Defendants are responsible for this negligence.

275.    Defendants were negligent in the design, development, manufacture, and testing of the Defective Gas Absorption Refrigerators because they knew, or in the exercise of reasonable care should have known, that the Defective Gas Absorption Refrigerators pose an unreasonable risk of death or serious bodily injury to Plaintiff and the other members of the Ohio Subclass, passengers, other motorists, pedestrians, and the public at large, because they are susceptible to causing fires and explosions in RVs and boats.

276.    Whereupon Plaintiff, individually and on behalf of the members of the Ohio Subclass, respectfully rely upon the RESTATEMENT (SECOND) OF TORTS § 395.

277.    Defendants further breached their duties to Plaintiff and the members of the Ohio Subclass by supplying directly or through a third person the Defective Gas Absorption Refrigerators to be used by such foreseeable persons as Plaintiff and the other members of the Ohio Subclass when:

    a.    Defendants knew or had reason to know that the Defective Gas Absorption Refrigerators were dangerous or likely to be dangerous for the use for which they were supplied; and

    b.    Defendants failed to exercise reasonable care to inform customers of the dangerous condition or of the facts under which the Defective Gas Absorption Refrigerators are likely to be dangerous.

278.    Defendants had a continuing duty to warn and instruct the intended and foreseeable users of its Defective Gas Absorption Refrigerators, including Plaintiff and the other members of the Ohio Subclass, of the defective condition of their gas absorption refrigerators and the high degree of risk attendant to using them.  Plaintiff and the other members of the Ohio Subclass were entitled to

1    know that the Defective Gas Absorption Refrigerators, in their ordinary operation, were not

2    reasonably safe for their intended and ordinary purposes and uses.

3        279.    Defendants knew or should have known of the defects described herein.  Defendants

4    breached their duty to Plaintiff and the members of the Ohio Subclass because they failed to warn

5    and instruct the intended and foreseeable users of their products of the defective condition of the

6    Defective Gas Absorption Refrigerators and the high degree of risk attendant to using them.

7        280.    Defendants had a post-sale duty to warn Plaintiff and the members of the Ohio

8    Subclass about the risks associated with the Defective Gas Absorption Refrigerators because, as

9    described above, Defendants knew or should have known about the risks, and a reasonable person in

10    Defendants' position would have warned about the defects and risks.  Further, as described above,

11    the defects and risks were not open and obvious nor a matter of common knowledge to Plaintiff,

12    Ohio Subclass members, or the reasonable consumer.  Defendants breached this duty by failing to

13    provide post-sale warnings and or instructions to the Ohio Subclass members regarding the

14    dangerous defects and safety risks inherent in the use of Defendants' products, and by conducting

15    incomplete, untimely and inadequate recall and retrofit campaigns that neither eliminated the defects,

16    nor rendered the Defendants' gas absorption refrigerators safe to use.  Further, Plaintiff Young did

17    not receive notice of Defendants' recall and retrofit campaigns.

18        281.    As a direct and proximate result of Defendants' negligence, Plaintiff and the other

19    members of the Ohio Subclass suffered damages.

20    **C.    TEXAS**

21    

**COUNT I**
**VIOLATIONS OF THE DECEPTIVE TRADE PRACTICES ACT**
**(TEX. BUS. & COM. CODE §§ 17.41, *et seq.*)**

22

23        282.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth

24    herein.

25        283.    Plaintiffs Byers and Johnston intend to assert a claim on behalf of Class members who

26    are Texas residents ("Texas Subclass") under the Texas Deceptive Trade Practices Act ("DTPA"),

27    which makes it unlawful to commit "[f]alse, misleading, or deceptive acts or practices in the conduct

28    of any trade or commerce." TEX. BUS. & COM. CODE § 17.46.  Plaintiffs have made a demand in

satisfaction of the Texas Business and Commerce Code § 17.45(2), and may amend this Complaint to assert claims under the DTPA once the required sixty days have elapsed.  This paragraph is included for purposes of notice only and is not intended to actually assert a claim under the DTPA.

## COUNT II
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## (TEX. BUS. & COM. CODE § 2.314)

284.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

285.    This claim is brought by Plaintiffs Byers and Johnston only on behalf of the Texas Subclass.

286.    Defendants are and were at all relevant times a merchant with respect to the Defective Gas Absorption Refrigerators.

287.    A warranty that the Defective Gas Absorption Refrigerators were in merchantable condition is implied by law in the instant transactions.  These Defective Gas Absorption Refrigerators, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose used.

288.    Defendants were provided notice of these issues by numerous complaints filed against them, including the instant Complaint, and by numerous individual letters and communications sent by Plaintiffs and Texas Subclass members.

289.    As a direct and proximate result of Defendants' breach of the warranties of merchantability, Plaintiffs and the other Texas Subclass members have been damaged in an amount to be proven at trial.

## COUNT III
## FRAUD BY CONCEALMENT

290.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

291.    This claim is brought by Plaintiffs Byers and Johnston only on behalf of the Texas Subclass.

CLASS ACTION COMPLAINT - 63
010520-11 866131 V1

292.   As alleged above, Defendants intentionally and deceptively concealed and suppressed material facts concerning the quality of the Defective Gas Absorption Refrigerators in tortious violation of law as alleged in this Complaint.  Specifically, Defendants made material statements about the safety, reliability, functionality, and quality of the Defective Gas Absorption Refrigerators that were either false or misleading.

293.   Plaintiffs and Texas Subclass members reasonably relied upon Defendants' omissions.  They had no way of knowing that Defendants' incomplete representations were false and gravely misleading.  As alleged herein, Defendants employed sophisticated and complicated methods of deception, including ineffective recalls and retrofit kits.  Plaintiffs and Texas Subclass members did not, and could not, unravel Defendants' deception on their own.

294.   Defendants owed Plaintiffs and Texas Subclass members a duty to disclose the true safety, reliability, functionality, and quality of the Defective Gas Absorption Refrigerators and the true value of the Defective Gas Absorption Refrigerators.  Defendants:

　　　　a.   Possessed exclusive knowledge of the exact nature and scope of the defects in the Defective Gas Absorption Refrigerators, the fire claim history of the Defective Gas Absorption Refrigerators, and the fact that their recall and retrofit campaigns did not address or eliminate the defects;

　　　　b.   Intentionally concealed the foregoing from Plaintiffs and Texas Subclass members; and/or

　　　　c.   Made incomplete representations about the true safety, reliability, functionality, and quality of the Defective Gas Absorption Refrigerators as well as the true defects, safety risks, and recall/retrofit inadequacies, while purposefully withholding material facts from Plaintiffs and Texas Subclass members that contradicted these representations.

295.   Because Defendants fraudulently concealed the true safety, reliability, functionality, and quality of the Defective Gas Absorption Refrigerators, the value of the Defective Gas Absorption Refrigerators has greatly diminished.

296.   Defendants' fraudulent omissions and its concealment of the true characteristics and safety risks of the Defective Gas Absorption Refrigerators were material to Plaintiffs and the Texas Subclass.  Had Defendants disclosed the true nature and scope of the safety risks inherent in the use of their products in the sales and marketing material provided consumers along with the product, or

1    with warnings prominently placed on the product, Plaintiffs, and all others similarly situated in the

2    Texas Subclass, would have been aware of it and acted differently, *i.e.*, purchased a different RV that

3    did not contain a Defective Gas Absorption Refrigerator; decided not to keep an RV with a Defective

4    Gas Absorption Refrigerator; and/or paid less for the RV or boat because of the Defective Gas

5    Absorption Refrigerator or because of the cost of replacing the Defective Gas Absorption

6    Refrigerator with a non-defective product.

7          297.    Plaintiffs and the Texas Subclass suffered ascertainable loss caused by Defendants'

8    concealment of and failure to disclose material information.  Plaintiffs and the Texas Subclass who

9    purchased a Defective Gas Absorption Refrigerator either would have paid less for or would not

10    have purchased them at all.

11         298.    Defendants' actions constituted a generalized course of deception that impacts the

12    public interest because Plaintiffs and the Texas Subclass members were injured in exactly the same

13    way as all others purchasing an RV or boat that contained a Defective Gas Absorption Refrigerator.

14    All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of

15    Defendants' business and has the potential for repetition.

16         299.    As a direct and proximate result of Defendants' violations, Plaintiffs and the Texas

17    Subclass have suffered injury-in-fact and/or actual damage.

18         300.    Plaintiffs and Texas Subclass members were injured as a result of Defendants'

19    conduct.  Due to Defendants' deceptive or unfair conduct, Plaintiffs and Texas Subclass members

20    overpaid for their Defective Gas Absorption Refrigerators and did not receive the benefit of their

21    bargain and have also suffered a diminution in value.

22         301.    Accordingly, Defendants are liable to Plaintiffs and Texas Subclass members for

23    damages in an amount to be proven at trial.

24

**COUNT IV**
**UNJUST ENRICHMENT**

25

26         302.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth

27    herein.

28

303.     This claim is brought by Plaintiffs Byers and Johnston only on behalf of the Texas Subclass.

304.     Defendants have received and retained a benefit from the Plaintiffs and inequity has resulted.

305.     Defendants have benefitted from selling Defective Gas Absorption Refrigerators whose value was artificially inflated by Defendants' omissions about the quality, grade, and characteristics of the refrigerators, and Plaintiffs and the Texas Subclass have overpaid for the Defective Gas Absorption Refrigerators and been forced to pay other costs.

306.     Thus, all Texas Subclass members conferred a benefit on Defendants.

307.     It is inequitable for Defendants to retain these benefits.

308.     Plaintiffs and the Texas Subclass were not aware of the true facts about the Defective Gas Absorption Refrigerators, and did not benefit from Defendants' conduct.

309.     Defendants knowingly accepted the benefits of its unjust conduct.

310.     As a result of Defendant's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

**COUNT V**
**NEGLIGENCE**

311.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

312.     This claim is brought by Plaintiffs Byers and Johnston on behalf of members of the Texas Subclass.

313.     Defendants designed, manufactured, sold, or otherwise placed in the stream of commerce the Defective Gas Absorption Refrigerators, as set forth above.

314.     Defendants had a duty to design and manufacture a product that would be safe for its intended and foreseeable uses and users, including the uses to which its products were put by Plaintiffs and the other members of the Texas Subclass.  Defendants breached their duties to Plaintiffs and the members of the Texas Subclass because they were negligent in the design,

development, manufacture, and testing of the Defective Gas Absorption Refrigerators, and Defendants are responsible for this negligence.

315.    Defendants were negligent in the design, development, manufacture, and testing of the Defective Gas Absorption Refrigerators because they knew, or in the exercise of reasonable care should have known, that the Defective Gas Absorption Refrigerators pose an unreasonable risk of death or serious bodily injury to Plaintiffs and the other members of the Texas Subclass, passengers, other motorists, pedestrians, and the public at large, because they are susceptible to causing fires and explosions in RVs and boats.

316.    Whereupon Plaintiffs, individually and on behalf of the members of the Texas Subclass, respectfully rely upon the RESTATEMENT (SECOND) OF TORTS § 395.

317.    Defendants further breached their duties to Plaintiffs and the members of the Texas Subclass by supplying directly or through a third person the Defective Gas Absorption Refrigerators to be used by such foreseeable persons as Plaintiffs and the other members of the Texas Subclass when:

    a.    Defendants knew or had reason to know that the Defective Gas Absorption Refrigerators were dangerous or likely to be dangerous for the use for which they were supplied; and

    b.    Defendants failed to exercise reasonable care to inform customers of the dangerous condition or of the facts under which the Defective Gas Absorption Refrigerators are likely to be dangerous.

318.    Defendants had a continuing duty to warn and instruct the intended and foreseeable users of its Defective Gas Absorption Refrigerators, including Plaintiffs and the other members of the Texas Subclass, of the defective condition of their gas absorption refrigerators and the high degree of risk attendant to using them.  Plaintiffs and the other members of the Texas Subclass were entitled to know that the Defective Gas Absorption Refrigerators, in their ordinary operation, were not reasonably safe for their intended and ordinary purposes and uses.

319.    Defendants knew or should have known of the defects described herein.  Defendants breached their duty to Plaintiffs and the members of the Texas Subclass because they failed to warn

1   and instruct the intended and foreseeable users of their products of the defective condition of the

2   Defective Gas Absorption Refrigerators and the high degree of risk attendant to using them.

3          320.    As a direct and proximate result of Defendants' negligence, Plaintiffs and the other

4   members of the Texas Subclass suffered damages.

5   **D.     WASHINGTON**

6                       **COUNT I**

         **VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT**

7              **(WASH. REV. CODE ANN. §§ 19.86.010,** *et seq.***)**

8          321.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth

9   herein.

10         322.    This claim is brought by Plaintiff Goehle only on behalf of Class members who are

11   Washington residents ("Washington Subclass").

12         323.    Defendants and the Washington Subclass are a "person" under Revised Code of

13   Washington ("RCW") § 19.86.010(1) ("Washington CPA").

14         324.    Defendants engaged in "trade" or "commerce" under RCW § 19.86.010(2).

15         325.    In the course of its business, Defendants manufactured and sold the Defective Gas

16   Absorption Refrigerators as described herein and otherwise made material omissions with a tendency

17   or capacity to deceive in a manner injurious to the public interest.  Defendants engaged in unlawful

18   trade practices by employing deception, deceptive acts or practices, fraud,  or concealment,

19   suppression or omission of any material fact with intent that others rely upon such concealment,

20   suppression or omission, in connection with the sale of Defective Gas Absorption Refrigerators.

21         326.    Defendants have known of the defects in the Defective Gas Absorption Refrigerators

22   but concealed or omitted that information.  The purpose and intent of these omissions and

23   suppression was to convey to both consumers and federal regulators that the defects inherent in the

24   Defective Gas Absorption Refrigerators were unlikely to occur, and that the refrigerators were

25   therefore safer to use than they really were.

26         327.    By failing to disclose and/or actively concealing the defects in the Defective Gas

27   Absorption Refrigerators and the true safety, reliability, functionality, and quality of the Defective

28   Gas Absorption Refrigerators; by marketing the Defective Gas Absorption Refrigerators as safe,

1    reliable, and of high quality; and by presenting themselves as a reputable manufacturer that valued

2    safety and quality, and stood behind its products after they were sold, Defendants engaged in

3    deceptive business practices in violation of the Washington CPA.

4          328.    In the course of Defendants' business, they willfully failed to disclose and actively

5    concealed the true safety, reliability, functionality, and quality of the Defective Gas Absorption

6    Refrigerators and serious defects discussed above.  Defendants compounded the deception by

7    repeatedly asserting that the Defective Gas Absorption Refrigerators were safe, reliable, and of high

8    quality during, but not limited to, the 2006 Recall and 2008 Recall; and by presenting themselves as

9    a reputable manufacturer that valued safety and quality, and stood behind the products after they

10   were sold, Defendants engaged in deceptive business practices in violation of the Washington CPA.

11   In truth and fact, there have been thousands of fires in RVs and boats caused by Defendants'

12   Defective Gas Absorption Refrigerators.

13         329.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive

14   reasonable consumers, including Plaintiff and the Washington Subclass, about the safety, reliability,

15   functionality, and quality of Defective Gas Absorption Refrigerators and the true value of the

16   Defective Gas Absorption Refrigerators.

17         330.    Defendants intentionally and knowingly omitted material facts regarding the

18   Defective Gas Absorption Refrigerators with intent to mislead Plaintiff and the Washington

19   Subclass.

20         331.    Defendants knew or should have known that its conduct violated the Washington

21   CPA.

22         332.    As alleged above, Defendants made material statements about the safety, reliability,

23   functionality, and quality of the Defective Gas Absorption Refrigerators that were either false or

24   misleading.

25         333.    Defendants owed Plaintiff and the Washington Subclass a duty to disclose the true

26   safety, reliability, and functionality of Defective Gas Absorption Refrigerators and the true value of

27   the Defective Gas Absorption Refrigerators.  Defendants:

28

a.    Possessed exclusive knowledge of the exact nature and scope of the defects in the Defective Gas Absorption Refrigerators, the fire claim history of the Defective Gas Absorption Refrigerators, and the fact that their recall and retrofit campaigns did not address or eliminate the defects;

b.    Intentionally concealed the foregoing from Plaintiff and the Washington Subclass; and/or

c.    Made incomplete representations about the true safety, reliability, functionality, and quality of the Defective Gas Absorption Refrigerators as well as the true defects, safety risks, and recall/retrofit inadequacies, while purposefully withholding material facts from Plaintiff and the Washington Subclass that contradicted these representations.

334.    Because Defendants fraudulently concealed the true safety, reliability, functionality, and quality of the Defective Gas Absorption Refrigerators, the value of the Defective Gas Absorption Refrigerators has greatly diminished.

335.    Defendants' fraudulent omissions and its concealment of the true characteristics and safety risks of the Defective Gas Absorption Refrigerators were material to Plaintiff and the Washington Subclass.  Had Defendants disclosed the true nature and scope of the safety risks inherent in the use of their products in the sales and marketing material provided consumers along with the product, or with warnings prominently placed on the product, Plaintiff, and Washington Subclass members, would have been aware of it and acted differently, *i.e.*, purchased a different RV that did not contain a Defective Gas Absorption Refrigerator; decided not to keep an RV with a Defective Gas Absorption Refrigerator; and/or paid less for the RV or boat because of the Defective Gas Absorption Refrigerator or because of the cost of replacing the Defective Gas Absorption Refrigerator with a non-defective product.

336.    Plaintiff and the Washington Subclass suffered ascertainable loss caused by Defendants' concealment of and failure to disclose material information.  Plaintiff and Washington Subclass members who purchased a Defective Gas Absorption Refrigerator either would have paid less for or would not have purchased them at all.

337.    Defendants' actions constituted a generalized course of deception that impacts the public interest because Plaintiff and Washington Subclass members were injured in exactly the same way as all others purchasing an RV or boat that contained a Defective Gas Absorption Refrigerator.

1    All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of

2    Defendants' business and has the potential for repetition.

3        338.    As a direct and proximate result of Defendants' violations of the Washington CPA,

4    Plaintiff and the Washington Subclass have suffered injury-in-fact and/or actual damage.

5        339.    Plaintiff and the Washington Subclass members were injured as a result of

6    Defendants' conduct.  Due to Defendants' deceptive or unfair conduct, Plaintiff and the Washington

7    Subclass members overpaid for their Defective Gas Absorption Refrigerators and did not receive the

8    benefit of their bargain and have also suffered a diminution in value.

9        340.    Pursuant to the Washington CPA, RCW § 19.86.095, Plaintiff will serve the

10   Washington Attorney General with a copy of this complaint as Plaintiff and the Washington Subclass

11   members seek injunctive relief.

12       341.    As a direct and proximate result of Defendants' violation of the Washington CPA,

13   Plaintiff and the Washington Subclass members have been damaged in an amount to be proven at

14   trial, which shall include, but is not limited to, all compensatory damages, incidental and

15   consequential damages, attorneys' fees, costs, treble damages, and other damages allowed by law.

16                              **COUNT II**
                 **BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
17                  **(WASH. REV. CODE ANN. § 62A.2-614)**

18       342.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth

19   herein.

20       343.    This claim is brought by Plaintiff Goehle only on behalf of the Washington Subclass.

21       344.    Defendants are and were at all relevant times a "merchant" with respect to the

22   Defective Gas Absorption Refrigerators.

23       345.    A warranty that the Defective Gas Absorption Refrigerators were in merchantable

24   condition is implied by law in the instant transactions.  These Defective Gas Absorption

25   Refrigerators, when sold and at all times thereafter, were not in merchantable condition and are not

26   fit for the ordinary purpose for which such refrigerators are used.  Specifically, the Defective Gas

27   Absorption Refrigerators are inherently defective and possess common design defects and safety

28   risks in the cooling unit design.

346.     Defendants, and each of them, had notice of these issues by consumer claims and complaints, which were compiled and maintained by Defendants in various databases to track the real-world performance of the Defective Gas Absorption Refrigerators, including, but not limited to, electronic databases of fire claims reported to Defendants allegedly involving their refrigerators, and warranty/return databases of failed refrigerators returned from the field.  The Defendants therefore have at all times had actual knowledge of the dangerous defects inherent in their Defective Gas Absorption Refrigerators, but have failed and refused to eliminate the defects and/or provide consumers with adequate warnings or instructions on the safe use of the product.

347.     As a direct and proximate result of Defendants' breach of the warranties of merchantability, Plaintiff and the other Washington Subclass members have been damaged in an amount to be proven at trial.

**COUNT III**
**UNJUST ENRICHMENT**

348.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

349.     This claim is brought by Plaintiff Goehle only on behalf of the Washington Subclass.

350.     Defendants have received and retained a benefit from the Plaintiff and the Washington Subclass and inequity has resulted.

351.     Defendant has benefitted from selling Defective Gas Absorption Refrigerators whose value was artificially inflated by Defendants' omissions about the quality, grade, and characteristics of the refrigerators, and Plaintiff and Washington Subclass members have overpaid for the Defective Gas Absorption Refrigerators and been forced to pay other costs.

352.     Thus, all Washington Subclass members conferred a benefit on Defendants.

353.     It is inequitable for Defendants to retain these benefits.

354.     Plaintiff and the Washington Subclass were not aware of the true facts about the Defective Gas Absorption Refrigerators, and did not benefit from Defendants' conduct.

355.     Defendants knowingly accepted the benefits of its unjust conduct.

356.     As a result of Defendant's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

**COUNT IV**
**NEGLIGENCE**

357.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

358.     This claim is brought by Plaintiff Goehle on behalf of members of the Washington Subclass.

359.     Defendants designed, manufactured, sold, or otherwise placed in the stream of commerce the Defective Gas Absorption Refrigerators, as set forth above.

360.     Defendants had a duty to design and manufacture a product that would be safe for its intended and foreseeable uses and users, including the uses to which its products were put by Plaintiff and the other members of the Washington Subclass.  Defendants breached their duties to Plaintiff and the members of the Washington Subclass because they were negligent in the design, development, manufacture, and testing of the Defective Gas Absorption Refrigerators, and Defendants are responsible for this negligence.

361.     Defendants were negligent in the design, development, manufacture, and testing of the Defective Gas Absorption Refrigerators because they knew, or in the exercise of reasonable care should have known, that the Defective Gas Absorption Refrigerators pose an unreasonable risk of death or serious bodily injury to Plaintiff and the other members of the Washington Subclass, passengers, other motorists, pedestrians, and the public at large, because they are susceptible to causing fires and explosions in RVs and boats.

362.     Whereupon Plaintiff, individually and on behalf of the members of the Washington Subclass, respectfully rely upon the RESTATEMENT (SECOND) OF TORTS § 395.

363.     Defendants further breached their duties to Plaintiff and the members of the Washington Subclass by supplying directly or through a third person the Defective Gas Absorption Refrigerators to be used by such foreseeable persons as Plaintiff and the other members of the Washington Subclass when:

a.  Defendants knew or had reason to know that the Defective Gas Absorption Refrigerators were dangerous or likely to be dangerous for the use for which they were supplied; and

b.  Defendants failed to exercise reasonable care to inform customers of the dangerous condition or of the facts under which the Defective Gas Absorption Refrigerators are likely to be dangerous.

364.    Defendants had a continuing duty to warn and instruct the intended and foreseeable users of its Defective Gas Absorption Refrigerators, including Plaintiff and the other members of the Washington Subclass, of the defective condition of their gas absorption refrigerators and the high degree of risk attendant to using them.  Plaintiff and the other members of the Washington Subclass were entitled to know that the Defective Gas Absorption Refrigerators, in their ordinary operation, were not reasonably safe for their intended and ordinary purposes and uses.

365.    Defendants knew or should have known of the defects described herein.  Defendants breached their duty to Plaintiff and the members of the Washington Subclass because they failed to warn and instruct the intended and foreseeable users of their products of the defective condition of the Defective Gas Absorption Refrigerators and the high degree of risk attendant to using them.

366.    Defendants had a post-sale duty to warn Plaintiff and the members of the Washington Subclass about the risks associated with the Defective Gas Absorption Refrigerators because, as described above, Defendants knew or should have known about the risks, and a reasonable person in Defendants' position would have warned about the defects and risks.  Further, as described above, the defects and risks were not open and obvious nor a matter of common knowledge to Plaintiff, Washington Subclass members, or the reasonable consumer.  Defendants breached this duty by failing to provide post-sale warnings and/or instructions to the Washington Subclass members regarding the dangerous defects and safety risks inherent in the use of Defendants' products, and by conducting incomplete, untimely and inadequate recall and retrofit campaigns that neither eliminated the defects, nor rendered the Defendants' gas absorption refrigerators safe to use.  Further, Plaintiff Goehle did not receive notice of Defendants' recall and retrofit campaigns.

367.    As a direct and proximate result of Defendants' negligence, Plaintiff and the other members of the Washington Subclass suffered damages.

**PRAYER FOR RELIEF**

       A.     Injunctive relief, restitution, disgorgement, statutory, and punitive damages as set forth above;

       B.     For appropriate damages for breach of implied warranties;

       C.     For damages under the Magnuson-Moss Warranty Act;

       D.     For Punitive damages;

       E.     For Attorneys' fees; and

       F.     For an injunction ordering Defendants to actually repair or replace the Defective Gas Absorption Refrigerators.

**DEMAND FOR JURY TRIAL**

     Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury on all issues so triable.

DATED:  April 21, 2016

HAGENS BERMAN SOBOL SHAPIRO LLP

By */s/ Thomas E. Loeser*
   Steve W. Berman (*pro hac vice* to be filed)
   Thomas E. Loeser (Cal. Bar No. 202724)
   Ashley A. Bede (*pro hac vice* to be filed)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
Telephone:  (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com
toml@hbsslaw.com
ashleyb@hbsslaw.com

Jeff D. Friedman (Cal. Bar. No. 173886)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
jefff@hbsslaw.com

Terrence A. Beard (Cal. Bar No. 98013)
LAW OFFICES OF TERRENCE A. BEARD
525 Marina Blvd.
Pittsburg, CA  94565
Telephone: (925) 778-1060
Facsimile:  (925) 473-9098
TBeard1053@aol.com

*Attorneys for Plaintiffs and the Proposed Class*

1   Jeff D. Friedman (Cal. Bar No. 173886)
    HAGENS BERMAN SOBOL SHAPIRO LLP
2   715 Hearst Avenue, Suite 202
    Berkeley, CA 94710
3   Telephone: (510) 725-3000
    Facsimile:  (510) 725-3001
4   jefff@hbsslaw.com

5   Steve W. Berman (*pro hac vice* to be filed)
    Thomas E. Loeser (Cal. Bar No. 202724)
6   Ashley Bede (*pro hac vice* to be filed)
    HAGENS BERMAN SOBOL SHAPIRO LLP
7   1918 Eighth Avenue, Suite 3300
    Seattle, WA 98101
8   Telephone: (206) 623-7292
    Facsimile:  (206) 623-0594
9   steve@hbsslaw.com
    toml@hbsslaw.com
10  ashleyb@hbsslaw.com

11  Terrence A. Beard (Cal. Bar No. 98013)
    LAW OFFICES OF TERRENCE A. BEARD
12  525 Marina Blvd.
    Pittsburg, CA  94565
13  Telephone: (925) 778-1060
    Facsimile:  (925) 473-9098
14  TBeard1053@aol.com

15  *Counsel for Plaintiffs and Proposed Class*

16                  UNITED STATES DISTRICT COURT

17                  NORTHERN DISTRICT OF CALIFORNIA

18                  SAN FRANCISCO DIVISION

19  CATHERINE PAPASAN, NELSON GOEHLE,          No.
    ANDREW YOUNG, JIMMY BYERS,
20  CHRISTOPHER JOHNSTON, and all persons      DECLARATION RE CLRA VENUE
    similarly situated,
21
                            Plaintiffs,
22
            v.
23
    DOMETIC CORPORATION, a Delaware
24  Corporation; and DOMETIC LLC, a Delaware
    Limited Liability Company,
25
                            Defendants.
26

27

28

1

## DECLARATION RE CLRA VENUE

2   I, Catherine Papasan, do hereby declare and state as follows:

3           1.      I am a party plaintiff in the above captioned action.  Pursuant to Cal. Civ. Code §

4   1780(d), I make this declaration in support of the Class Action Complaint and the claim therein for

5   relief under Cal. Civ. Code § 1780(a).  I have personal knowledge of the facts stated herein and, if

6   necessary, could competently testify thereto.

7           2.      This action for relief under Cal. Civ. Code § 1780(a) has been commenced in a county

8   that is a proper place for trial of this action because defendants Dometic Corporation and Dometic

9   LLC do business throughout the State of California.

10          This declaration is signed under penalty of perjury under the laws of the State of California

11  this 14 day of April 2016.

12

13

14                                                            Catherine Papasan

15

16

17

18

19

20

21

22

23

24

25

26

27

28

816233 V1