UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CATHERINE PAPASAN, et al.,

Plaintiffs,

v.

DOMETIC CORPORATION,

Defendant.

Case No.  16-cv-02117-HSG

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DIMISS**

Re: Dkt. No. 47

The named plaintiffs—Catherine Papasan, Nelson Goehle, Andrew Young, Christopher Johnston, Jimmy Byers, and Richard and Leah Vollberg (collectively, "Plaintiffs") —filed their first amended class action complaint on July 8, 2016.  Dkt. No. 38 ("FAC").  On August 19, 2016, Defendant Dometic Corporation ("Dometic") filed the pending motion to dismiss.  Dkt. No. 47 ("Mot.").  Plaintiffs opposed the motion, Dkt. No. 50 ("Opp."), and Dometic replied, Dkt. No. 62 ("Reply").  The Court heard argument regarding the motion on November 17, 2016.  Dkt. No. 58 ("Hr'g Tr.").  For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Dometic's motion to dismiss.

I.   **BACKGROUND**[1]

A.   **Dometic**

Dometic is an American appliance manufacturer that caters to automotive and mobile home markets in Washington, California, Ohio, Texas, Florida, and throughout the United States.  FAC ¶ 112.  Among other products, Dometic manufactures refrigerators intended for use in recreational vehicles and boats.  *Id.* ¶ 116.  The majority of Dometic refrigerator models, including

---

[1]  Given that the FAC is 119 pages long, this background section does not comprehensively describe the allegations.  The remainder of the opinion states additional facts as relevant to the analysis.

those at issue here, employ "gas absorption" cooling units, which pressurize, condense, and re-vaporize ammonia gas to produce a refrigeration effect. *Id.* ¶ 117. This process involves extreme heating and cooling cycles, achieved through a combination of chemical coolant and propane or electric heat sources. *Id.* ¶¶ 121–23.

### B.    Dometic's Allegedly Defective Refrigerators

Plaintiffs allege that Dometic has designed, manufactured, assembled, sold, and otherwise placed into the stream of commerce a variety of dangerously defective refrigerator models since at least 1997. *Id.* ¶ 119. The refrigerators' gas absorption cooling units allegedly share a common structural flaw which, over the course of normal use, causes them to leak pressurized gas and create an "unreasonable risk of fire and explosion." *Id.* ¶¶ 120, 124. Due to the flammable chemicals contained in Dometic's cooling units, this risk allegedly remains high even when the refrigerator is off. *Id.* ¶ 127.

Plaintiffs name seventeen Dometic refrigerator models that use the allegedly defective cooling unit described above. *Id.* ¶ 119. Collectively, these and other unnamed models have allegedly caused "thousands of fires since 1997, and continue to cause *new* fires at an alarming rate." *Id.* ¶ 133 (emphasis in original). Plaintiffs each purchased an RV equipped with an allegedly defective refrigerator between March 2005 and April 2012. *Id.* ¶¶ 12, 30, 46, 63, 79, 96. Allegations regarding each of the plaintiffs are detailed below.

### i.    Plaintiff Catherine Papasan (California)

Catherine Papasan has at all relevant times been a resident of California. *Id.* ¶ 12. In 2005, she purchased a model year 2006 RV equipped with a Dometic DM2652 gas absorption refrigerator. *Id.* Papasan used the refrigerator for its intended purpose and followed all relevant instructions from Dometic. *Id.* ¶ 20. To date, Papasan's refrigerator has not malfunctioned. *See id.* ¶ 28.

### ii.    Plaintiff Nelson Goehle (Washington)

Nelson Goehle has at all relevant times been a resident of Washington. *Id.* ¶ 30. In June 2005, he purchased a model year 2000 RV equipped with a Dometic RM2652 gas absorption refrigerator. *Id.* Goehle used the refrigerator as intended and followed all applicable instructions

United States District Court
Northern District of California

2

from Dometic.  *Id.* ¶ 36.  On March 27, 2016, Goehle saw a fire erupt from his RV's refrigerator vent while the vehicle was parked outside his home.  *Id.* ¶ 37.  The fire completely destroyed his RV and caused damage to his house and surrounding property.  *Id.*

### iii.    Plaintiff Andrew Young (Ohio)

Andrew Young has at all relevant times been a resident of Ohio.  *Id.* ¶ 46.  In 2009, he purchased a model year 2002 RV equipped with a Dometic DM2852 gas absorption refrigerator. *Id*.  At all times, he used the appliance as intended and followed Dometic's instructions on proper use and maintenance.  *Id.* ¶ 49.  On August 16, 2015, Young's refrigerator ignited a fire that completely destroyed his RV and damaged his surrounding property.  *Id.* ¶ 53.

### iv.    Plaintiff Jimmy Byers (Texas)

Jimmy Byers has at all relevant times been a resident of Texas.  *Id.* ¶ 63.  In April 2012, he purchased a model year 2011 RV equipped with a Dometic RM1350 gas absorption refrigerator. *Id.*  He used the appliance as intended and complied with all applicable instructions from Dometic. *Id.* ¶ 69.  In November 2014, Byers's refrigerator stopped working and he had it replaced with a Dometic model CU 949E gas absorption refrigerator.  *Id.*  The repair shop informed him that his previous model had failed due to a leak at the boiler tube, which is part of the cooling unit.  *Id.* ¶¶ 69, 121.

### v.    Plaintiff Christopher Johnston (Texas)

Christopher Johnston has at all relevant times been a resident of Texas.  *Id.* ¶ 79.  In April 2008, he purchased a model year 2008 RV equipped with a "2-door Dometic gas absorption" refrigerator.  *Id.*  Johnston used the appliance as intended at all times and followed Dometic's instructions regarding use and maintenance.  *Id.* ¶ 84.  On March 1, 2016, Johnston's refrigerator ignited a fire while Johnston's RV was parked on his property.  *Id.* ¶ 85.  Johnston's neighbor witnessed flames emanating from the center of the RV, where the refrigerator was located.  *Id.* The fire completely destroyed Johnston's RV and damaged his adjacent property.  *Id.*

### vi.    Plaintiffs Richard and Leah Vollberg (Florida)

Richard and Leah Vollberg have at all relevant times been residents of Florida.  *Id.* ¶ 96. In 2009, they purchased a model year 2005 RV equipped with a Dometic DM2862 gas absorption

refrigerator.  *Id.*  At all times, they followed instructions from Dometic regarding the proper use and maintenance of the refrigerator.  *Id.* ¶ 99.  On March 20, 2012, the refrigerator caught fire without warning, severely damaging the Vollbergs' RV.  *Id.* ¶ 100.  The Vollbergs witnessed the event.  *Id.*  As a result of the fire, they were unable to use their RV for approximately four weeks, incurred "thousands of dollars" of damage, and suffered a "significant" loss in the resale value of their RV.  *Id.* ¶ 102.

### C.    Dometic's Alleged Knowledge of Defects

Dometic allegedly has had "actual knowledge" of the defects inherent in its gas absorption refrigerator models for at least 15 years.  *Id.* ¶ 146.  Since at least 1999, Dometic has maintained databases that track the real-world performance of its refrigerators, "including fire claims and warranty claims."  *Id.*  Dometic has also defended itself against lawsuits arising from fires allegedly caused by its gas absorption refrigerator models.  *Id.*  As a function of that litigation, Dometic has had access to "expert reports from independent fire investigators and engineers," which allegedly document the structural flaws in its products.  *Id.*

Despite its access to such information, Dometic has never stopped "placing its dangerously defective refrigerators into the stream of commerce [or] paused production and sales so that the refrigerators could be modified to operate safely."  *Id.* ¶ 147.  In addition, Dometic allegedly employs field testing procedures that fail to adequately simulate the conditions under which its gas absorption refrigerators operate.  *Id.* ¶ 149.  It allegedly uses the results of those tests to affirm that its product designs are sound, notwithstanding reports to the contrary.  *Id.*

### D.    Dometic's Product Recalls

Dometic recalled select models of its gas absorption refrigerators on two occasions.  *Id.* ¶ 134.  In 2006, it recalled ten two-door refrigerator models for retrofitting, including model RM2652, which was purchased by Plaintiffs Goehle and Papasan.  *See id.* ¶ 135.  In 2008, it recalled nine of the same models for an identical modification.  *Id.* ¶ 137.  Together, the recalls involved over 1.67 million refrigerators.  *Id.* ¶¶ 135, 137.  Dometic claimed that its retrofit campaign was designed to reinforce the thermal components of its cooling units, which were overly susceptible to fatigue.  *Id.* ¶¶ 136–37.  However, the new hardware installed by Dometic

4

allegedly "did not address, much less eliminate, the root cause of the [component's] failures."  *Id.* ¶ 142.  In lieu of further recalls, Dometic made preemptive changes to all gas absorption cooling units manufactured after June 2006.  *Id.* ¶¶ 141–42.  Dometic has never expanded the recalls to include any gas absorption refrigerators manufactured after September 30, 2006, despite such refrigerators allegedly containing the same design defects as those manufactured previously.  *Id.* ¶ 138.

**E.    Dometic's Alleged Non-Disclosure of Product Defects**

Plaintiffs contend that Dometic actively concealed, or at the very least, failed to disclose the safety risk associated with its gas absorption refrigerator models.  *See id.* ¶¶ 18, 34, 51, 66, 82, 104.  Dometic's point-of-sale materials, manuals, and warranties failed to notify consumers that the refrigerators posed a risk of "fire, injury, or death," or that Dometic had attempted to mitigate the risk by installing additional hardware.  *Id.*  Additionally, all vehicles equipped with Dometic gas absorption refrigerators prominently displayed a Recreational Vehicle Industry Association ("RVIA") sticker, which certified fire safety.  *Id.* ¶¶ 15–17.  Plaintiffs allegedly relied on this affirmative representation of safety when they decided to purchase their respective RVs.  *Id.* ¶¶ 17, 33, 50, 65, 81, 98.  Notwithstanding the ability to identify and contact purchasers of its products, Dometic never provided Plaintiffs with post-sale warnings or product recall alerts.  *Id.* ¶¶ 24, 41, 57, 73, 89, 106.  Accordingly, Plaintiffs allegedly did not learn that their refrigerators had serious safety-related defects until several years after purchase:  Goehle, Young, Johnston, Byers, and the Vollbergs allegedly discovered the dangers associated with their respective refrigerators when the appliances malfunctioned, *id.* ¶¶ 42, 58, 74, 90, 107, whereas Papasan allegedly discovered the safety risk in August 2015, *id.* ¶ 25.  Papasan does not allege what facts put her on notice.  *Id.*

**F.    Dometic's Allegedly Safer Alternative**

Dometic allegedly possesses a safer alternative to the gas absorption technology that they use in their refrigerators.  *Id.* ¶ 157.  In 2014, Dometic acquired Atwood Mobile Products LLC ("Atwood"), an appliance manufacturer that had been marketing and selling helium-based refrigerators since approximately 2001.  *Id.* ¶ 156.  Unlike hydrogen, helium is "an inert gas that is not flammable."  *Id.* ¶ 157.  Thus, helium-based cooling systems allegedly do not carry the

inherent risk of fire that hydrogen systems do.  *Id.*

### G.    Procedural History

The original class action complaint was filed on April 21, 2016.  Dkt. No. 1.  Dometic filed a motion to dismiss on June 17, 2016.  Dkt. No. 30.  Rather than oppose the motion, Plaintiffs amended the complaint, and Dometic now moves to dismiss.  On behalf of a nationwide class, Plaintiffs assert a claim for violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301, *et seq.*  FAC ¶ 204–18.  In addition, Plaintiffs assert state law claims on behalf of the California, Washington, Ohio, Texas, and Florida subclasses, as detailed below.  *Id.* ¶¶ 219–524.

| | California Claims | Applicable Statutes |
|---|---|---|
| Papasan | Violation of the Song-Beverly Consumer Warranty Act for Breach of Implied Warranty of Merchantability | Cal. Civ. Code §§ 1791.1, 1792 |
| | Violation of the California Unfair Competition Law | Cal. Bus. & Prof. Code §§ 17200, *et seq.* |
| | Breach of Implied Warranty of Merchantability | Cal Com. Code § 2314 |
| | Breach of Contract / Common Law Warranty | |
| | Violation of the Consumer Legal Remedies Act | Cal. Civ. Code §§ 1750, *et seq.* |
| | Violation of California False Advertising Law | Cal. Bus. & Prof. Code §§ 17500, *et seq.* |
| | Unjust Enrichment | |
| | Negligence | |
| | **Washington Claims** | **Applicable Statutes** |
| Goehle | Violation of Washington Consumer Protection Act ("Washington CPA") | Wash. Rev. Code §§ 19.86.010, *et seq.* |
| | Strict Products Liability | Wash. Rev. Code §§ 7.72.010, *et seq.* |
| | Unjust Enrichment | |
| | Negligence | |
| | **Ohio Claims** | **Applicable Statutes** |
| Young | Violation of Ohio Consumer Sales Practices Act ("OCSPA") | Ohio Rev. Code §§ 1345.01, *et. seq.* |
| | Breach of Implied Warranty of Merchantability | Ohio Rev. Code § 1302.27 (U.C.C. § 2-314) |
| | Unjust Enrichment | |
| | Negligence | |
| | Strict Products Liability | Ohio Rev. Code §§ 2307.71–2307.801 |
| | **Texas Claims** | **Applicable Statutes** |
| Byers Johnston | Violation of Texas Deceptive Trade Practices Act ("DTPA") | Tex. Bus. & Com. Code §§ 17.41, *et seq.* |
| | Breach of Implied Warranty of Merchantability | Tex. Bus. & Com. Code § 2.314 |
| | Fraud by Concealment | |
| | Strict Products Liability | Tex. Civ. Prac. & Rem. Code § 82.001, *et seq.* |
| | Unjust Enrichment | |
| | Negligence | |
| | **Florida Claims** | **Applicable Statutes** |
| Vollbergs | Violation of Florida Unfair & Deceptive Trade Practices Act | Fla. Stat. §§ 501.201, *et seq.* |
| | Fraud by Concealment | |
| | Breach of Implied Warranty of Merchantability | Fla. Stat. § 672.314 |
| | Unjust Enrichment | |

United States District Court
Northern District of California

6

## II.   LEGAL STANDARD

### A.   Motion to Dismiss for Lack of Subject Matter Jurisdiction

"[L]ack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). When presented with a jurisdictional attack, the plaintiff has the burden of proving subject matter jurisdiction. *See In re Wilshire Courtyard*, 729 F.3d 1279, 1284 (9th Cir. 2013) ("The burden of establishing subject matter jurisdiction rests on the party asserting that the court has jurisdiction.") A jurisdictional attack under Rule 12(b)(1) may be facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* at 1039. "The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). In contrast, a factual attack "contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings." *Id.* at 1121. When faced with a factual attack, the plaintiff is required to "support her jurisdictional allegations with competent proof under the same evidentiary standard that governs in the summary judgment context. The plaintiff bears the burden of proving by a preponderance of the evidence that each of the requirements for subject matter jurisdiction has been met." *Id.* at 1121 (quotation marks and citations omitted). Where jurisdiction turns on disputed factual issues, the district court may resolve those differences itself, unless the issue of subject matter jurisdiction is "intertwined" with the merits of the claims. *Id.* at 1121–22 & n.3.

### B.   Motion to Dismiss for Failure to State a Claim

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the

7

complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Nonetheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).  And even where facts are accepted as true, "a plaintiff may plead [him]self out of court" if he "plead[s] facts which establish that he cannot prevail on his . . . claim."  *Weisbuch v. County of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (quotation marks and citation omitted).

### C. Heightened Pleading Requirements for Claims Sounding or Grounded in Fraud

Federal Rule of Civil Procedure 9(b) heightens these pleading requirements for all claims that "sound in fraud" or are "grounded in fraud."  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (citation omitted); Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").  "[The Ninth Circuit] has interpreted Rule 9(b) to require that allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong."  *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993) (quotation marks and citation omitted).

In short, a fraud claim must state "the who, what, when, where, and how" of the alleged conduct, *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997), and "set forth an explanation as to why [a] statement or omission complained of was false and misleading," *In re GlenFed, Inc. Secs. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), *superseded by statute on other grounds as stated in Ronconi v. Larkin,* 252 F.3d 423, 429 & n.6 (9th Cir. 2001).

8

United States District Court
Northern District of California

### III.   DISCUSSION

#### A.   Article III Standing

Dometic moves under Rule 12(b)(1) to dismiss all claims for lack of standing.  Mot. at 4–6.  For the reasons articulated below, the Court finds that dismissal for lack of standing is warranted as to Papasan, but not the other plaintiffs.

##### i.   Legal Standard

To establish Article III standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  The plaintiff's pleadings "must clearly allege facts demonstrating each element."  *Id.* at 1547 (quotation marks omitted).  "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical."  *Id.* at 1548 (quotation marks omitted).  To qualify as "particularized," the injury "must affect the plaintiff in a personal and individual way."  *Id.*  To qualify as "concrete," the injury "must actually exist."  *Id.* at 1548.  To qualify as "imminent," the "threatened injury must be *certainly impending*"; thus, "allegations of *possible* future injury" do not establish injury in fact.  *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013) (original emphasis) (brackets omitted).  Nevertheless, literal certainty that the identified harm will occur is not always required, as the Court has "found standing based on a 'substantial risk' that the harm will occur, which may prompt plaintiffs to reasonably incur costs to mitigate or avoid that harm."  *Id.* at 1150 n.5.  Finally, the Article III standing requirements are not loosened for class representatives.  *See Spokeo*, 136 S. Ct. at 1547 n.6 ("That a suit may be a class action adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong.") (ellipses and quotation marks omitted).

##### ii.   Papasan (California)

The Court finds that Papasan lacks Article III standing because she has not met her burden to clearly allege facts demonstrating injury in fact.

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Based on the allegation that "Papasan and all Class Members lost the benefit of their bargain as they unknowingly overpaid for a defective refrigerator," *see* FAC ¶ 28, Papasan argues that she has adequately pled injury in fact under the Ninth Circuit's decision in *Hinojos v. Kohl's Corp.*, 718 F.3d 1098 (9th Cir. 2013). *See* Opp. at 2.  There, the Ninth Circuit held that "when, as here, [p]laintiffs contend that class members paid more for a product than they otherwise would have paid, or bought it when they otherwise would not have done so[,] they have suffered an Article III injury in fact." *Id.* at 1104 n.3 (quotation marks and modifications omitted).  Papasan cites this language from the opinion, but fails to recognize that the facts of *Hinojos* are readily distinguishable. *See* Opp. at 2.  In *Hinojos*, the named plaintiff alleged that he was induced to purchase merchandise that was falsely advertised as being "marked down from a fictitious 'original' or 'regular' price." 718 3.d at 1101.  Thus, as Judge Orrick of this Court later observed, "the economic injury [in *Hinojos*] was not speculative but directly ascertainable." *See Cahen v. Toyota Motor Corp.*, 147 F. Supp. 3d 955, 969 (N.D. Cal. 2015).  In contrast, the economic injury alleged here is vague and speculative:  Papasan alleges in a conclusory manner that she "unknowingly overpaid" for her refrigerator, that refrigerators of that type "have diminished in value," and that she and class members "are or have been exposed to further costs and expenses to dispose of and/or replace such refrigerators." *See* FAC ¶ 28.  Plaintiff fails to plead any facts plausibly supporting these conclusions.

None of the other cases upon which Plaintiff relies change the Court's conclusion that she has not adequately pled injury in fact.  For example, the plaintiffs in *Kearney v. Hyundai Motor Co.*, No. SACV 09-1298 DOC (MLGx), 2010 WL 9093204, at *3–5 (C.D. Cal. June 4, 2010) stated a sufficiently particularized injury by alleging that an air bag's failure to activate when their small-statured relatives were riders prevented plaintiffs from fully enjoying the benefit of their bargain: a functional family vehicle.  Similarly, in *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, & Products Liability Litigation*, 754 F. Supp. 2d 1145, 1166 (C.D. Cal. 2010), the plaintiffs, also vehicle owners, pled specific dates and dollar amounts in alleging that a defect caused them to sell or trade their cars at a loss.  In contrast here, Papasan fails to articulate any particularized facts showing that she suffered tangible losses—economic,

1    functional, or otherwise—from having purchased an allegedly defective Dometic refrigerator. *See*

2    FAC ¶ 28 ("[T]he Defective Gas Absorption Refrigerators have suffered a loss of usefulness . . .

3    ."). Significantly, Papasan confirms that since purchasing her RV in 2005, she has "at all times

4    used [it] for the purpose for which it was intended" without any apparent problem. *Id.* ¶¶ 12, 20.

5         The Court does agree with Papasan that, to establish injury in fact, she does not necessarily

6    need to plead that her refrigerator's defect already manifested. *See* Opp. at 2–3; *Toyota I*, 754 F.

7    Supp. 2d at 1161 ("[E]xperiencing an SUA defect is not required for standing."); *cf. Clapper*, 133

8    S. Ct. at 1147 (defining an "imminent" injury as one that is "*certainly impending*") (original

9    emphasis). However, the Court also agrees with the reasoning of cases holding that where the

10   alleged economic loss arises solely from a defect in a product, but that product has not yet failed

11   to perform, "something more" is required beyond simply alleging overpayment for a defective

12   product. *See Cahen*, 147 F. Supp. 3d at 970; *Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp.

13   2d 962, 973 (C.D. Cal. 2014); *cf. Contreras v. Toyota Motor Sales USA, Inc.*, No. C 09-06024

14   JSW, 2010 WL 2528844, at *6 (N.D. Cal. June 18, 2010), *aff'd in part, rev'd in part sub nom.*

15   *Contreras v. Toyota Motor Sales U.S.A. Inc.*, 484 F. App'x 116 (9th Cir. 2012) (affirming

16   dismissal for lack of standing but reversing denial of leave to amend).

17        For example, in *Contreras*, the district court found no injury in fact where the plaintiffs

18   failed to allege that their vehicles had manifested the claimed braking defect, that they were forced

19   to replace their vehicles, that they incurred out-of-pocket expenses, or any other facts supporting

20   their "conclusory" allegation that their vehicles had lost value. *See* 2010 WL 2528844, at *6.

21   Likewise, in *Lee*, which involved the allegedly inadequate performance of the braking feature in a

22   pre-collision system ("PCS"), the court found no injury in fact because the plaintiffs did not allege

23   "that the pre-collision braking feature fails to work as described; that they experienced any

24   problems with PCS; that they are unwilling to drive their vehicles; that they sold or traded-in their

25   vehicles at a loss; or any other facts that plausibly demonstrate any diminished value in their

26   vehicles." 992 F. Supp. at 973. Finally, in *Cahen*—which involved allegedly inadequate

27   electronic security features that permitted vehicles to be controlled by remote hackers—the court

28   declined to find economic injury solely on the basis of a speculative risk of future harm:

11

United States District Court
Northern District of California

> Plaintiffs['] allegation that their vehicles are worth substantially less than they would be without the alleged defect is conclusory and unsupported by any facts.  [They] have not, for example, alleged a demonstrable effect on the market for their specific vehicles based on documented recalls or declining Kelley Bluebook values.  Nor have they alleged a risk so immediate that they were forced to replace or discontinue using their vehicles, thus incurring out-of-pocket damages.  In short, plaintiffs fail to establish economic injury in fact because they have not alleged the required "something more" beyond the speculative risk of future harm that underlies the allegations of economic damage.

147 F. Supp. 3d at 971 (quotation marks and citations omitted).

Here, too, Papasan has failed to plead "something more" beyond the conclusory allegation that she overpaid for her refrigerator.  Her allegedly economic injury, as currently pled, rests only upon a speculative risk of future harm.  This is insufficient to constitute injury in fact.  Consequently, Papasan has failed to establish Article III standing.[2]

### iii.   Goehle (Washington) and Young (Ohio)

Dometic argues that Goehle lacks Article III standing because he "cannot allege a concrete injury *traceable to Dometic*."  Mot. at 6 (original emphasis); *see also Spokeo*, 136 S. Ct. at 1547 (stating that injury in fact must be "fairly traceable to the challenged conduct of the defendant").  In support of its argument, Dometic points to (1) documents allegedly showing that neither Dometic nor its predecessor, Dometic, LLC, were in existence in 2000; and (2) that Goehle purchased a "model year 2000" RV.  *See* Mot. at 5–6 & n.13; FAC ¶ 30.  Specifically, Dometic cites company documents indicating that the brand arose as a leisure appliance division of the company Electrolux, which had named the division "Dometic" "[b]y the end of the 1960s."  Dometic, *History*, https://www.dometic.com/en-us/us/about-us/our-brand/history (last visited Oct. 3, 2017).  Dometic's documents also show that in 2001, Electrolux divested its interest in the leisure market to EQT Northern Europe, a private equity firm, at which point "Dometic ha[d] to stand on its own feet."  *See id.*; Electrolux, *Press Release:  Divestment of leisure-appliances*

---

[2] The Ninth Circuit's recent holding in *Davidson v. Kimberly-Clark Corp.*, No. 15-16173, 2017 WL 4700093, at *9 (9th Cir. Oct. 20, 2017) did not analyze whether the plaintiff's allegations of economic injury were sufficient to establish Article III standing, and thus does not impact the Court's analysis on this question.

1   *operation finalized*, Aug. 1, 2001, http://www.electroluxgroup.com/en/divestment-of-leisure-

2   appliances-operation-finalized-1833/ (last visited Oct. 3, 2017).  In addition, Dometic has

3   proffered records from the Delaware Secretary of State's website, which indicate that Dometic,

4   LLC was incorporated on June 15, 2001; that Dometic Corporation was incorporated on April 6,

5   2005; and that the two entities merged on December 18, 2012, with Dometic, LLC as the non-

6   survivor.  *See* Dkt. No. 48 ("Priedman Decl.") ¶¶ 2–3 & Exs. 1–2.  In response, Goehle contends

7   that his "model year 2000 RV refrigerator is traceable to Dometic because it has been marketing,

8   distributing, and servicing refrigerators under the 'Dometic' brand name since 1989 – including

9   conducting a recall and retrofit campaign in 2006 that included refrigerators manufactured

10  between 1997 and 2003."  Opp. at 4 (citing FAC ¶¶ 134–36).[3]

11          While Dometic attempts a "factual" attack under Rule 12(b)(1), that challenge fails at this

12  stage.  *See Leite*, 749 F.3d at 1121.  The foundation of Dometic's standing challenge—that

13  Dometic could not have manufactured Goehle's RV because Dometic did not exist as a corporate

14  entity until 2005—implicates several disputed factual issues going to the merits of Plaintiffs'

15  allegations.  *See* Mot. at 6 n.14; Opp. at 4–5 n.20.  As both parties recognize, the challenge

16  extends to Dometic's ultimate liability for any pre-2005 Dometic-brand refrigerator.  *Id.*;

17  *Augustine v. United States*, 704 F.3d 1074, 1077 (9th Cir. 1983) ("[W]here the jurisdictional issue

18  and substantive issues are so intertwined that the question of jurisdiction is dependent on the

19  resolution of factual issues going to the merits, the jurisdictional determination should await a

20  determination of the relevant facts on either a motion going to the merits or at trial."); *Leite*, 749

21  F.3d at 1121 n.3.  Even if the Court considers Dometic's evidence that Dometic incorporated in

22  2005, that evidence does not controvert Plaintiffs' claim that Dometic-brand refrigerators have

23  been distributed since 1997.  *See, e.g.*, FAC ¶¶ 14, 16.  Dometic recognizes as much in their

24  motion.  *See* Mot. at 2 n.3 ("[T]he Dometic tradename existed as of 1997 under different corporate

25  _____

26  [3] The cited portion of the FAC does not actually support the statement that "Dometic has been
    marketing, distributing, and servicing refrigerators under the 'Dometic' brand name since 1989."

27  *See* FAC 134–36.  Nevertheless, Plaintiffs allege elsewhere that Dometic began manufacturing gas
    absorption refrigerators as early as 1997.  *See, e.g.*, FAC ¶ 2, 14, 16 (referring to "[e]very gas

28  absorption refrigerator manufactured by Dometic since 1997" and "Dometic-branded gas
    absorption refrigerator[s]". . . manufactured between April 1997 and May 2003).

United States District Court
Northern District of California

1   ownership. . .").  Because all Goehle needs to show is that his injury is fairly traceable to Dometic,

2   a question that Dometic's corporate status does not necessarily resolve conclusively, the Court

3   finds that Goehle satisfies Article III's standing requirements at this stage.

4        Similarly, Dometic argues in a footnote that "[b]ecause Young 'purchased a previously

5   owned model year 2002' RV, he too may not have owned a refrigerator that Dometic

6   manufactured or sold.'"  *See* Mot. at 6 n.14 (quoting FAC ¶ 46).  To the extent the Court considers

7   this cursory argument, it fails for the same reasons.[4]

8            **iv.    Other Plaintiffs**

9        The Court is not persuaded by Dometic's Article III standing arguments regarding the

10   other plaintiffs.  First, Dometic does not dispute that Plaintiffs have pled that they experienced a

11   leak or fire, but contends that they offer only "conclusory allegations that such leak or fire was

12   caused by the alleged defect."  Mot. at 5.  The Court disagrees.  Plaintiffs have pled the nature of

13   the defect in detail, including why the defect allegedly created the risk of leaks and fires before

14   and after the recalls.  *See* FAC ¶¶ 114–45.  Moreover, the case cited by Dometic is inapposite.  *See*

15   *Anderson v. Select Comfort Retail Corp.*, No. CIV 10-128 KJM, 2010 WL 2635079, at *1 (E.D.

16   Cal. June 29, 2010) (granting Rule 12(b)(6) motion to dismiss for failure to plausibly allege that

17   the product defect was a "substantial factor in producing the injury," where the allegations did not

18   identify the defect or describe how the defect caused the plaintiff's injury, instead merely

19   contending that the product was a "potential" cause of the plaintiff's injury).

20        Second, the Court rejects Dometic's argument that Plaintiffs have not met their burden of

21   showing "standing to sue on behalf of boat owners."  *See* Mot. at 4.  The Court is persuaded by the

22   reasoning of *Glenn v. Hyundai Motor America*, No. SA CV 15-2052-DOC (KESx), 2016 WL

23   3621280, at *15–16 (C.D. Cal. June 24, 2016), which recognized a split in authority in this

24   Circuit, but ultimately followed cases that, taking a cue from *Gratz v. Bollinger*, 539 U.S. 244

25   (2003), have held as follows:

26   _____

27   [4] *See First Advantage Background Servs. Corp. v. Private Eyes, Inc.*, 569 F. Supp. 2d 929, 935
     (N.D. Cal. 2008) ("A footnote is the wrong place for substantive arguments on the merits of a

28   motion, particularly where such arguments provide independent bases for dismissing a claim not
     otherwise addressed in the motion.").

> Where a class action complaint encompasses both a product the plaintiff purchased and a product he did not, the plaintiff sufficiently has Article III standing to proceed with claims on behalf of class members who purchased the latter if there is sufficient similarity between the products purchased and not purchased.

*Glenn*, 2016 WL 3621280, at *15 (modification, brackets, and quotation marks omitted).  In

*Glenn*, the court found that the plaintiffs had Article III standing to assert claims on behalf of class

members who had driven different models of Hyundai cars but nevertheless had allegedly

experienced the same defective sunroofs.  *Id.* at 16.  Similarly, Plaintiffs have shown "sufficient

similarity" with boat owners by alleging that the latter have experienced the same defective

refrigerators.  *See* FAC ¶¶ 116–33, 149(b).

### v.   Conclusion

For the foregoing reasons, the Court finds that Papasan has failed to plead a basis for

Article III standing at this stage of the proceedings.[5]  The Court finds that the other plaintiffs have

adequately established standing.

### B.   Personal Jurisdiction

Moving to dismiss under Rule 12(b)(3), Dometic contends that the Vollbergs "have failed

to establish that the Court has personal jurisdiction over Dometic for purposes of their claims."

Mot. at 1, 6–7.  The Vollbergs do not dispute that the Court lacks specific or general jurisdiction

over their claims.  Opp. at 5–6.  Instead, they argue that "Dometic does not dispute that the Court

has personal jurisdiction over the company as to all claims asserted by the California plaintiff

(Papasan)," and that the Court therefore "can and should maintain *pendent personal jurisdiction*

over the Vollbergs' claims, because those claims arise out of the same nucleus of facts as

Papasan's claims."  *Id.* at 5 (original emphasis).  But Papasan lacks Article III standing, which is

fatal to the Vollbergs' argument.  Consequently, they have not met their burden of establishing

that the Court has personal jurisdiction over Dometic for the purposes of their claims.  *See Ranza*

*v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) ("In opposing a defendant's motion to dismiss

for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is

---

[5] If Papasan is unable to adequately plead a basis for Article III standing in an amended complaint, this may raise the issue of whether this District is the proper venue.  *See* 28 U.S.C. § 1391(b).

United States District Court
Northern District of California

proper.")[6]

### C.   Statute of Limitations and Tolling

As to the remaining Plaintiffs—Young (Ohio), Byers and Johnston (both Texas), and Goehle (Washington)—the Court assesses Dometic's argument that the statute of limitations for their claims has run and no ground for tolling exists.  *See* Mot. at 8–14.  These Plaintiffs do not dispute that their claims would be barred absent a basis for tolling, but argue that the discovery rule and fraudulent concealment doctrine provide such a basis.  Opp. at 7–14.

### i.   Legal Standard

"A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when the running of the statute is apparent on the face of the complaint . . . [and] it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim."  *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (quotation marks and citation omitted), *overruled on other grounds by Galbraith v. City of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002).  A federal court sitting in diversity must apply substantive state law, including state law regarding statutes of limitations and tolling.  *Albano v. Shea Homes Ltd. P'ship*, 634 F.3d 524, 530 (9th Cir. 2011).

### ii.   Fraudulent Concealment

Equitable tolling on the basis of fraudulent concealment must be pled with particularity under Federal Rule of Civil Procedure 9(b).  *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 662 (9th Cir. 1999) (holding that because the Federal Rules of Civil Procedure control diversity cases, Rule 9(b) requires pleading circumstances constituting fraud with particularity, in the context of fraudulent concealment tolling).  Applying this standard, the Court assesses whether, as the allegations are pled, the fraudulent concealment doctrine equitably tolls the statute of limitations of those claims under Texas, Ohio, and Washington law.  Under Ohio law, "[f]raudulent concealment 'is only available in compelling cases' and the 'plaintiff must show that the defendant

---

[6] Dometic has not argued that the Court lacks personal jurisdiction over Dometic as to any of the other plaintiffs' claims.  *See* Mot. at 6–7.  And the Court need not address this issue *sua sponte*. *See Pakootas v. Teck Cominco Metals, Ltd.*, 452 F.3d 1066, 1076 (9th Cir. 2006) ("Because a party can waive personal jurisdiction, we are not required to consider it *sua sponte*.").

United States District Court
Northern District of California

engaged in a course of conduct to conceal evidence of the defendant's wrongdoing, and that the plaintiff, despite the exercise of due diligence, failed to discover the facts supporting the claim.'" *In re Whirlpool*, 45 F. Supp. 3d 706, 722 (N.D. Ohio 2014) (quoting *Perkins v. Falke & Dunphy, L.L.C.*, No. 25162, 2012 WL 6097104, at *3 (Ohio Ct. App. Dec. 7, 2012)).  Under Texas law, "[f]or the [fraudulent concealment] doctrine to apply, the plaintiff must prove the defendant: (1) had actual knowledge of the wrong; (2) had a fixed purpose to conceal the wrong; and (3) did conceal the wrong from the plaintiff." *Quigley v. Bennett*, 256 S.W.3d 356, 360–61 (Tex. Ct. App. 2008).  Finally, to prove fraudulent concealment in Washington, "the plaintiff must show (1) the plaintiff exercised due diligence in trying to uncover the facts, and (2) the defendant engaged in affirmative conduct that would lead a reasonable person to believe that no claim of fraudulent concealment existed." *Casimir v. Remington Arms Co.*, LLC, 2013 U.S. Dist. LEXIS 6765, at *10 (W.D. Wash. Jan. 15, 2013) (internal quotation omitted).

Here, Plaintiffs argue that paragraphs 137, 142, 145–146, and 148–155 of the FAC collectively allege that Dometic (1) has known about the corrosive defect since at least 1999, (2) has taken no steps to warn customers about the defect or to properly retrofit the product, (3) has acquired knowledge of the defect through internal databases, (4) has been engaged in constant litigation about the defect, (5) has had access to expert reports documenting the defect, (6) has mischaracterized the defect as a fatigue crack affecting only a limited number of units, (7) has refused to acknowledge the actual defect in the recalls, (8) has misrepresented the conditions creating the fire risk, (9) has established misleading field testing protocol, (10) has limited the scope of the recalls, (11) has conducted retrofit campaigns falsely represented as fixing the defect, (12) has failed to warn of safety risks, and (13) has concealed safer alternative designs that would minimize or eliminate the safety risks.  Opp. at 13–14.[7]  Dometic argues that those paragraphs fail to meet the heightened pleading requirements for fraudulent concealment under Rule 9(b).  Reply at 7.  The Court disagrees.  The cited paragraphs contain some allegations that, read in isolation,

---

[7] In addition, Plaintiffs argue that they lacked knowledge of the defect prior to discovering it and that the defect is not visible to consumers. *Id.* at 14 (citing FAC ¶¶ 25, 37–38, 53–54, 57–58, 69–70, 85–86, 89–90, 100–103, 106–07, 155).  The Court finds that these cited paragraphs adequately plead Plaintiffs' lack of knowledge of the defect under Rule 9(b).

United States District Court
Northern District of California

might lack the requisite particularity under Rule 9(b). *See, e.g.*, FAC ¶ 145 ("Dometic had actual knowledge of the inadequacy of the retrofit campaign, in that it continued to receive fire claims involving its Defective Gas Absorption Refrigerators that had already been retrofitted with the above devices, or which had the devices installed during production."); *id.* ¶ 151 ("The design and manufacturing defects in the Defective Gas Absorption Refrigerators, Dometic's active concealment of those defects, and the inadequate and fraudulent product safety recall/retrofit campaigns conducted by Dometic, created serious and unreasonable safety risks to consumers and users of Dometic's products, *i.e.*, the risk of property damage, injury, and death by fire.") However, many portions of the cited paragraphs contain substantially more detailed allegations. *See, e.g.*, *id.* ¶ 149(a) & n.4 (quoting Dometic notice dated April 11, 2008 to support its allegation that Dometic failed to adequately disclose the defect); *id.* ¶ 149(e) (alleging that an engineer who ran tests for Dometic lied under oath in 2014 about not having examined a Dometic-brand gas absorption refrigerator that he had determined to have been the cause of an RV fire); *id.* ¶ 149(h) (alleging that Dometic's field testing protocol misleadingly sets the maximum pressure of the leak test at 100 psi, while the normal operating pressure for Dometic's refrigerators is up to 450 psi). The Court finds that, collectively, paragraphs 137, 142, 145–146, and 148–155 of the FAC plead the fraudulent concealment doctrine with the requisite particularity under Rule 9(b), including the *who*, *what*, *when*, *where*, and *how*. It is possible that Plaintiffs may be able to prove some set of facts that would establish the timeliness of their claims pursuant to the fraudulent concealment doctrine under Texas, Ohio, and Washington law. At this stage, that is sufficient.[8]

### D.    Statute of Repose

Dometic argues that the claims asserted by Young are barred by the statute of repose under Ohio law. Mot. at 14. The Ohio statute states in part that "no cause of action based on a product liability claim shall accrue against the manufacturer or supplier of a product later than ten years from the date that the product was delivered to its first purchaser or first lessee." Ohio Rev. Code § 2305.10(C)(1). However, "this section does not apply if the manufacturer or supplier of a

---

[8] Since the Court finds that the fraudulent concealment allegations provide an adequate basis for tolling, it does not reach the parties' arguments regarding the discovery rule.

1    product engaged in fraud in regard to information about the product and the fraud contributed to

2    the harm that is alleged in a product liability claim involving that product." *Id.* § 2305.10(C)(2).

3    Young points to section (C)(2) as providing an exception to application of the statute of repose.

4    Opp. at 14.  Dometic argues that section (C)(2) is inapplicable because "Young has not adequately

5    alleged . . . that Dometic *manufactured* his refrigerator."  Reply at 7 (citing Mot. at 6 n.14).

6    Young purchased a used model 2002 RV.  *See* FAC ¶ 46.  Thus, based upon public records

7    indicating that Dometic LLC was not incorporated until June 15, 2001 and that Dometic

8    Corporation was not incorporated until April 6, 2005, *see* Priedman Decl. ¶¶ 2–3 & Exs. 1–2,

9    Dometic is essentially arguing that Young has not plausibly alleged that Dometic manufactured

10   his refrigerator.  *See* Mot. at 6 n.14.  To the extent that Dometic is seeking to take judicial notice

11   of public records not for their existence, but to prove a disputed fact (i.e., whether Dometic

12   manufactured Young's refrigerator), this is not appropriate on a motion to dismiss.  *See Lee v. City*

13   *of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).  In addition, for the reasons articulated above,

14   *see supra* Part III.C.ii, the Court rejects Dometic's argument that Young's allegations of fraud do

15   not meet the particularity requirement of Rule 9(b).  *See* Mot. at 7.  Hence, the Court finds that

16   Young has plausibly alleged that the fraud exception of section 2305.10(C)(2) applies, such that,

17   at this stage of the proceedings, his claims are not barred by Ohio's statute of repose.

18        Dometic's statute of repose challenge to Goehle's claims likewise fails.  Mot. at 14.

19   Washington codifies a fraudulent concealment exception similar to that in Ohio: "A product seller

20   may be subject to liability for harm caused by a product used beyond its useful safe life, if: . . . (ii)

21   The product seller intentionally misrepresents facts about its product, or intentionally conceals

22   information about it, and that conduct was a proximate cause of the claimaint's harm."  Wash.

23   Rev. Code Ann. § 7.72.060(i)(b)(ii).  Because the Court finds Goehle's fraud allegations

24   adequately pled, *see supra* Part III.C.ii., his claims likewise survive Dometic's motion to dismiss.

25        **E.    Failure to State Claims for Relief**

26        Under Rule 12(b)(6), Dometic contends that Plaintiffs have failed to state claims upon

27   which relief can be granted.  Mot. at 14–30.  The Court addresses these arguments as they relate to

28   the claims asserted by Young (Ohio), Byers and Johnston (both Texas), and Goehle (Washington).

United States District Court
Northern District of California

19

### i.   Consumer Protection Claims

Dometic argues that "Plaintiffs' consumer protection and fraud by concealment claims, *i.e.*, the Consumer Protection Claims, fail as a matter of law." Mot. at 14–15.

### a.   Young (Ohio)

To bring a class action under the OCSPA, Plaintiffs must satisfy the class action notice requirement of section 1345.09(B) of the Ohio Revised Code. *See Terlesky v. Fifth Dimension, Inc.*, No. 1:15-cv-374, 2015 WL 7254189, at *3 (S.D. Ohio Nov. 17, 2015). This requirement can be satisfied by establishing that "the alleged violation is an act or practice that was determined by a court to violate the OCSPA and the court's decision was available for inspection before the transaction took place." *Id.* (quoting *Marrone v. Philip Morris USA, Inc.*, 850 N.E.2d 31, 34 (Ohio 2006)).[9] Young asserts that the class notice requirement was satisfied by *Brown v. H & S Corp.*, No. 35746, 1974 WL 35420 (Ohio Com. Pl. July 15, 1974). FAC ¶ 310. The Court is not persuaded. The deceptive acts and practices in *Brown* involved a sales scheme (including bulk mailers and in-home sales presentations) that used disinformation to sell swimming pools. *See* 1974 WL 35420, at *1–2. However, "[c]ases that involve industries and conduct very different from the defendant's do not provide meaningful notice of specific acts or practices that violate the [OCSPA]." *See Marrone*, 850 N.E.2d at 36. The Court finds that *Brown* did not provide meaningful notice regarding the alleged deceptive acts and practices here, such that the class notice requirement of section 1345.09(B) is not satisfied. Therefore, dismissal of Young's OCSPA claims is warranted.

### b.   Byers and Johnston (Texas)

The DTPA and fraud by concealment claims asserted by Byers and Johnston must meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *See Luna v. Nationwide Prop. & Cas. Ins. Co.*, 798 F. Supp. 2d 821, 826 (S.D. Tex. 2011) ("Because Rule 9(b) applies by

---

[9] Alternatively, the class notice requirement can be satisfied by establishing that "the alleged violation is an act or practice that was declared to be deceptive or unconscionable by a rule adopted by the Attorney General before the consumer transaction on which the action is based." *Terlesky*, 2015 WL 7254189, at *3 (quoting *Marrone*, 850 N.E.2d at 34). However, this alternative basis is not at issue here. *See* FAC ¶ 310 (asserting that section 1345.09(B)'s class notice requirement is satisfied on basis of prior court decision).

20

its plain language to all averments of fraud, whether they are part of a claim of fraud or not, it applies to statutory claims based on allegations of fraud.  Claims alleging violations of the . . . [DTPA] are subject to the requirements of Rule 9(b).") (quotation marks, citation, and ellipses omitted).  These claims rely on theories of both affirmative misrepresentation and omission.  *See* FAC ¶¶ 353–70, 378–89.  As to the affirmative misrepresentation claims, Plaintiffs' argument that Rule 9(b) is satisfied relies on the RVIA sticker.  *See* Mot. at 16 ("Plaintiffs allege . . . the where (the RVIA sticker) . . . ."); FAC ¶ 65 ("Byers relied on the affirmative representations contained in the RVIA sticker in deciding to purchase the Byers RV."); *id.* ¶ 81 ("Johnston reasonably relied on the affirmative representations contained in the RVIA in deciding to purchase the Johnston RV."). The RVIA stickers placed on the outside of the Byers and Johnston RVs stated that the "*manufacturer* certifies compliance with standard for recreational vehicles."  *See* FAC ¶¶ 65, 81 & Figs. 9–10 (emphasis added).  But Johnston and Byers allege that Dometic manufactured their refrigerators, *not* their RVs.  *See id.* ¶¶ 63, 79.  At oral argument, Plaintiffs' counsel contended that affirmative statements by RV manufacturers could be "imputed" to Dometic, but recognized that there was "no case on point . . . that says . . . we can impute any statements of any assembler of a product to the subsidiaries that assembled it."  Hr'g Tr. at 19:7–9, 20:1–4.  In the absence of such authority, the Court finds that Johnston and Byers cannot support their affirmative misrepresentation claims with representations that Dometic did not make (i.e., the contents of the RVIA stickers).

Nevertheless, the fraud by concealment and DTPA claims asserted by Byers and Johnston may proceed insofar as they are premised upon Dometic's alleged omissions.  *See Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd.*, 896 S.W.2d 156, 160–61 (Tex. 1995) (declaring that both DTPA and fraud claims require proof of causation, which can be premised on either "an act or omission"); *In re Crown Ranch Dev. Ltd.*, No. 11-90052, 2012 WL 1072221, at *4 (Bankr. E.D. Tex. Mar. 29, 2012) (stating that fraud by misrepresentation and fraud by concealment are both treated as common law fraud under Texas law).  The Court finds that Byers and Johnston have satisfied Rule 9(b) by alleging *who* (Dometic), *what* (material omissions regarding safety risks of allegedly defective refrigerators), *when* (since sales began in 1997), *where* (point of sale materials,

owner's manual, and written warranty), and *how* (consumers' reasonable reliance on material omissions causing economic loss).  *See* FAC ¶¶ 66, 82, 112–13, 119–45.[10]

In addition, Dometic contends that Byers and Johnston failed to satisfy the 60-day notice requirement for filing their claims.  Mot. at 21; *see also* Tex. Bus. & Com. Code § 17.505.  Contrary to Dometic's assertion, the failure to satisfy the DTPA's notice requirement is not grounds for dismissal.  *Compare* Mot. at 21 (seeking dismissal) *with Oppenheimer v. Prudential Sec. Inc.*, 94 F.3d 189, 194 (5th Cir. 1996) ("[T]he proper remedy for insufficient notice is abatement not dismissal.").

While abatement is warranted under some circumstances where notice is insufficient under section 17.505, this is not such a case.  As the Texas Supreme Court has held:

> [I]f a plaintiff files an action for damages under the DTPA without first giving the required notice, *and a defendant timely requests an abatement*, the trial court must abate the proceedings for 60 days.  To be timely, the request for an abatement must be made while the purpose of notice—settlement and avoidance of litigation expense—remains viable. Thus, *defendant must request an abatement with the filing of an answer or very soon thereafter*.

*Hines v. Hash*, 843 S.W.2d 464, 469 (Tex. 1992) (citations omitted) (emphasis added).  Here, Dometic has requested only dismissal, not abatement, and the deadline for requesting abatement has long since passed.  This failure to request abatement constitutes waiver of DTPA notice.  *See id.* at 469.  Thus, dismissal of the DTPA claims on grounds of inadequate notice under section 17.505 is unwarranted.

Based on the foregoing, the fraud by concealment and DTPA claims asserted by Byers and Johnston may proceed insofar as they are premised upon Dometic's alleged omissions, but not insofar as they are premised upon alleged misrepresentations in the RVIA sticker.

### c.  Goehle (Washington)

Dometic argues that Goehle's consumer protection claim fails because the complaint's allegations cannot satisfy Rule 9(b)'s heightened pleading requirements.  Mot. at 14–19.  In

---

[10] Although Dometic argues that Plaintiffs have not adequately alleged the state of its "knowledge at the time each Plaintiff purchased his or her refrigerator," *see* Mot. at 16, the Court disagrees, *see* FAC ¶¶ 146–55.

particular, Dometic contends that Goehle fails to show that (1) Dometic had knowledge of the refrigerator's defect when Goehle purchased his Dometic-brand refrigerator; or (2) actual reliance on Dometic's misrepresentation.  *See id.* at 16–18; *see Frias v. Asset Foreclosures Servs.*, 957 F. Supp. 2d 1264, 1271 (W.D. Wash. 2013) (requiring a plaintiff to show that an unfair or deceptive act or practice is causally linked to the plaintiff's injury).

Goehle's allegations satisfy Rule 9(b)'s requirements.  Goehle states that he purchased his 2000 model RV in 2005.  FAC ¶ 30.  Goehle furthermore alleges that Dometic "knowingly omitted material facts" regarding his defective refrigerator, thereby engaging in "deceptive business practices in violation of the Washington CPA."  FAC ¶¶ 422–33.  Goehle indicates that he would have acted differently but for Dometic's omission and concealment, including by declining to purchase an RV with a Dometic-brand refrigerator.  *Id.* at 433.  And, like all other Plaintiffs, Goehle makes specific allegations as to Dometic's knowledge of the product defect in the relevant time period, i.e. since 1999.  *See also* FAC ¶¶ 419–39.  For these reasons, and those already set forth in Part III.C.ii, Goehle's allegations regarding Dometic's fraudulent acts and omissions survive Dometic's dismissal motion.

### ii.   Implied Warranty Claims

Dometic argues that Plaintiffs fail to adequately plead their state implied warranty claims. Mot. at 21–26.  The Court addresses this argument as to the Ohio and Texas claims.

### a.   Young (Ohio)

Under Ohio law, a plaintiff typically may only assert a contract claim for breach of implied warranty against a party with whom he is in privity.  *Curl v. Volkswagen of Am., Inc.*, 871 N.E.2d 1141, 1147 (Ohio 2007).  Dometic argues and Young does not dispute that he is not in privity with Dometic.  *Compare* Mot. at 23–24 *with* Opp. at 26.  Instead, Young contends that he has "adequately allege[d] the third party beneficiary exception to vertical privity."  Opp. at 26. The Court is not persuaded.

Young relies upon *Bobb Forest Products, Inc. v. Morbark Industries, Inc.*, 783 N.E.2d 560 (Ohio 2012).  Opp. at 27 n.194.  There, the court held that "if the promisee intends that a third party should benefit from the contract, then that third party is an 'intended beneficiary' who has

23

United States District Court
Northern District of California

1    enforceable rights under the contract," whereas "[i]f the promisee has no intent to benefit a third

2    party, then any third-party beneficiary to the contract is merely an 'incidental beneficiary,' who

3    has no enforceable rights under the contract."  *Bobb Forest*, 783 N.E. at 576 (quotation marks and

4    ellipses omitted).  Moreover, the court observed that merely conferring "some benefit on the

5    supposed beneficiary by the performance of a particular promise in a contract is insufficient;

6    rather, the performance of that promise must also satisfy a duty owed by the promisee to the

7    beneficiary."  *Id.* (quotation marks and brackets omitted).  Applying this "intent to benefit" test,

8    the court ruled that a particular consumer was the intended third-party beneficiary of a sales

9    contract where (1) the manufacturer knew that it was manufacturing the particular good for the

10   particular consumer's ultimate use; (2) the retailer only purchased the good from the manufacturer

11   after it knew that the consumer would ultimately purchase the good; (3) the manufacturer did not

12   mass produce the good (producing just one unit per year); and (4) the manufacturer knew exactly

13   who the ultimate consumer would be and what the particular consumer's needs and requirements

14   were.  *Id.*  Given that the manufacturer "produced this specific [good] for this specific consumer

15   while knowing this specific consumer's needs," the court ruled that the manufacturer "[c]learly . . .

16   *intended* that this [good] would satisfy [this specific consumer's] needs."  *Id.* (emphasis added).

17       Subsequently, a federal court "decline[d] to extend the limited privity exception

18   articulated in *Bobb Forest* beyond the facts of that case," in light of the Ohio Supreme Court's

19   "unequivocal language" in its intervening *Curl* opinion finding that vertical privity was required to

20   assert an implied warranty claim.  *McKinney v. Bayer Corp.*, 744 F. Supp. 2d 733, 757–58 (N.D.

21   Ohio 2010); *see also Curl*, 871 N.E.2d at 1147 ("The privity requirement, which remains absent in

22   strict liability tort actions, allows sellers of goods to define their scope of responsibility and

23   provides a greater degree of foreseeability regarding potential claimants.  To permit a claimant to

24   recover without establishing vertical privity blurs the distinction between contract and tort.").

25   Other district courts have followed suit in limiting *Bobb Forest* to the facts of that case.  *See, e.g.*,

26   *In re Dial Complete Mktg. & Sales Practices Litig.*, 312 F.R.D. 36, 72 (D.N.H. 2015).

27       The Court agrees with the reasoning of *McKinney* and finds the facts of the instant case

28   clearly distinguishable from *Bobb Forest*.  Young has not plausibly alleged that Dometic knew

24

1    that it was manufacturing his particular refrigerator for his ultimate use, that the manufacturer of

2    Young's RV only purchased the refrigerator after knowing that Young would ultimately purchase

3    the RV, that Young's refrigerator was not mass produced, or that Dometic was aware of Young's

4    particular needs as the ultimate consumer.  To the contrary, the face of the operative complaint

5    indicates that Young's refrigerator was mass produced at least seven years before he bought his

6    RV.  *See* FAC ¶¶ 4, 135, 137 (reflecting that Dometic has manufactured millions of the allegedly

7    defective refrigerators since 1997); *id.* ¶ 46 (indicating that, in 2009, Young purchased his model

8    year 2002 RV).  The operative complaint's conclusory allegations are insufficient to bring the

9    instant case within the *Bobb Forest* exception, and dismissal is therefore warranted.  *See* FAC ¶

10   212 ("Plaintiffs and Class members are intended third-party beneficiaries of contracts between

11   Dometic and its dealers or RV/boat manufacturers; specifically, they are the intended beneficiaries

12   of Dometic's implied warranties.  The dealers and manufacturers were not intended to be the

13   ultimate consumers of the Defective Gas Absorption Refrigerators and have no rights under the

14   warranty agreements provided; the warranty agreements were designed for and intended to benefit

15   the ultimate consumers only."); *Rollolazo v. BMW of N. Am., LLC*, No. CV 16-00966 BRO(SSx),

16   2017 WL 1536456, at *16 (C.D. Cal. Feb. 3, 2017) (dismissing Ohio implied warranty claim

17   asserting similarly conclusory allegations because the case was distinguishable from *Bobb Forest*).

18                              **b.  Byers and Johnston (Texas)**

19            The parties agree that timely pre-suit notice of the implied warranty claims was required

20   under Texas law.  *Compare* Mot. at 25 *with* Opp. at 27; *see also* Tex. Bus. & Com. Code §

21   2.607(c) ("Where a tender has been accepted . . . the buyer must within a reasonable time after he

22   discovers or should have discovered any breach notify the seller of breach or be barred from any

23   remedy."); *McKay v. Novartis Pharm. Corp.*, 751 F.3d 694, 705–07 (5th Cir. 2014) (finding that

24   under section 2.607(c), the plaintiff has burden of alleging and proving pre-suit notice to remote

25   sellers and manufacturers, not just immediate ones).  The dispute centers on whether this pre-suit

26   notice requirement has been adequately pled.  Byers and Johnston allege that they "provided pre-

27   suit notice to Dometic on April 20, 2016 via certified mail as required by Texas Business and

28   Commercial Code § 17.505."  FAC ¶ 377.  However, Dometic argues that Plaintiffs' notice was

                                                25

1    improper.  *See* Mot. at 25 (citing Dkt. No. 48-5).  The Court finds that the notice plausibly could

2    have been adequate to alert Dometic that the Plaintiffs were dissatisfied with their refrigerators.

3    *See Hull v. S. Coast Catamarans, L.P.*, 365 S.W.3d 35, 44 (Tex. App. 2011) ("A general

4    expression of the buyer's dissatisfaction . . . may be sufficient to comply with section 2.607.");

5    *McKay v. Novartis Pharm. Corp.*, 934 F. Supp. 2d 898, 913 (W.D. Tex. 2013) ("[Under section

6    2.607(c)], the notice must have alerted [the defendant] to a particular buyer/end user, namely [the

7    plaintiff], who was having problems with its products."), *aff'd*, 751 F.3d 694 (5th Cir. 2014).

8    Plaintiffs also have met their minimal burden at the pleading stage to allege that notice was timely.

9    *See Gonzalez v. Reed-Joseph Int'l Co.*, No. 4:11-cv-01094, 2013 WL 1578475, at *15 (S.D. Tex.

10    Apr. 11, 2013) ("Notice is ordinarily a question of fact, not a question of law.").  Plaintiffs state

11    that they provided "pre-suit notice to Dometic on April 20, 2016" pursuant to section 2.607 and

12    section 17.505, respectively.  FAC ¶¶ 250, 377.[11]

13          In addition to providing timely pre-suit notice, Byers and Johnston must adequately allege

14    the basic elements of an implied warranty claim under Texas law.  The parties agree that this

15    requires Plaintiffs to state that (1) the product contained a defect rendering it unfit for its ordinary

16    purpose; (2) the defect existed when the product left the manufacturer's possession; and (3) the

17    defect caused injury.  *Gen. Motors Corp. v. Garza*, 179 S.W.3d 76, 81 (Tex. App. 2005).  Dometic

18    contends that Plaintiffs cannot plausibly show that the company's refrigerators failed to provide a

19    "minimum level of quality" in performing their intended function: cooling.  *See* Mot. at 22 (citing

20    *In re iPhone 4S Consumer Litig.*, 2013 U.S. Dist. LEXIS 103058, at *56–57 (N.D. Cal. Jul. 23,

21    2013)); *see also Strauss v. Ford Motor Co.*, 439 F. Supp. 2d 680, 685 (N.D. Tex. 2006)

22    (dismissing an implied warranty claim where the plaintiff failed to allege that his vehicle was unfit

23

24    _____

      [11] To the extent Dometic asserts that the Court may consider the notice for the truth of its contents

25    (i.e., to establish that the notice was not sent until after the lawsuit was filed) on a motion to
      dismiss, the Court disagrees.  *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)

26    (holding that a document may be incorporated by reference only if the document forms the basis
      of the plaintiff's claim or if the plaintiff refers extensively to the document).  Nonetheless, if the

27    notice is authentic (and Plaintiffs do not appear to seriously dispute that it is), that would pose an
      obvious timeliness problem for this claim at the motion for summary judgment stage.  Plaintiffs'

28    counsel should carefully consider their Rule 11 obligations in assessing whether a good-faith basis
      exists for proceeding with this claim.

United States District Court
Northern District of California

for transportation, a vehicle's "sole ordinary purpose").

The Court disagrees.  Byers and Johnston's allegations suffice to suggest that Dometic designed and manufactured refrigerators with an inherent defect rendering those refrigerators unfit for their basic purpose.  *See* FAC ¶¶ 63–64, 68–69, 72 (Byers); *id.* ¶¶ 79–80, 84–85, 91, 94 (Johnston).  For instance, Byers states that the cooling unit in his refrigerator "failed due to a leak at the boiler tube. . . caused by. . . the inherent defect."  FAC ¶ 69.  That failure resulted in Byers being unable to continue using the unit in his RV, and having to replace the cooling unit.  *Id.* While Johnston does not allege failure by leak, he does state that the inherent defect in his refrigerator caused it to "malfunction[] and ignite[] a fire" in his RV while the RV was parked on his property.  FAC ¶ 85.  That fire, purportedly owing to the defect, not only razed Johnston's refrigerator, but also "completely destroyed" his vehicle, and caused property damage.  *Id.; see Hyundai Motor Co. v. Rodriguez ex rel. Rodriguez*, 995 S.W.2d 661, 665 (Tex. 1999) (finding that in a vehicle crashworthiness case, an "unreasonable risk of harm in the event of an accident" renders a vehicle "unfit for the ordinary purposes for which it is used because of a lack of something necessary for adequacy") (internal quotations and alterations omitted); *accord Duran v. City of Eagle Pass, Tex.*, No. SA-10-CV-504-XR, 2012 WL 1593185, at *2 (W.D. Tex. May 3, 2012).

Dometic stresses that Plaintiffs cannot show a defect at the time of sale because Byers and Johnston's RVs were either used or too old at the time of the alleged injury.  Mot. at 22–23.  But in Texas, "downstream" purchasers seeking to recover for economic loss need "hold the merchant accountable only for the state of the product when it passed to the first buyer."  *MAN Engines & Components, Inc. v. Shows*, 434 S.W.3d 132, 138 (Tex. 2014).  To that end, Plaintiffs sufficiently allege that the injury-causing defect was present at the point-of-sale.  *See* FAC ¶¶ 63–64, 79–80, 373 –76.  Thus, the Court declines to dismiss Byers and Johnston's claims for a breach of the implied warranty of merchantability.

### c.  MMWA Claims

The parties agree that under Ninth Circuit precedent, Plaintiffs' MMWA claims "stand or fall" with their "warranty claims under state law."  *Compare* Mot. at 26 *with* Opp. at 28 & n.203

(both citing *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008)); *see also Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1227 (9th Cir. 2015) (same).  Because the Court dismisses under Ohio law Young's underlying implied warranty claim, the MMWA claim asserted by Young likewise fails.  Byers and Johnston's MMWA claims, however, survive the dismissal motion.

### iii.   Negligence Claims

#### a.   Young (Ohio) and Byers and Johnston (Texas)

The Court does not consider Dometic's argument, unsupported by any further explanation, that "[t]he OPLA . . . preempt[s] Young's . . . common law negligence claim[]."  Mot. at 27. However, Dometic also argues that the economic-loss doctrine bars certain Plaintiffs' negligence claims.  *Id.*  The Court considers that argument as to the negligence claims asserted under Ohio and Texas law.

In Ohio, the "general rule is that a plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable."  *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 537 N.E.2d 624, 630 (Ohio 1989) (internal quotation omitted).  Thus, economic losses cannot typically be recovered for negligence claims without injury to persons or property damage.  *Id.*  But "[f]or an ordinary consumer, *i.e.,* one not in privity of contract with the seller or manufacturer against whom recovery is sought, an action in negligence may be an appropriate remedy to protect the consumer's property interests."  *Id.* at 630–31.  Most federal courts sitting in Ohio adhere to this privity distinction in applying the state's economic loss doctrine.  *See In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 684 F. Supp. 2d 942, 949–50 (N.D. Ohio 2009) ("[T]he foundational doctrinal distinction in the economic loss rule jurisprudence is whether the parties are in privity of contract."); *In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 871–72 (S.D. Ohio 2012) (allowing Ohio plaintiffs to bring negligent design claims against a product manufacturer for purely economic losses).

According to this reasoning, a strong version of the economic loss rule applies if the plaintiff and defendant are in contractual privity.  *In re Whirlpool Corp.*, 684 F. Supp. 2d at 949.

1    "In contrast, when the parties are not in privity of contract, courts apply a more relaxed rule,

2    allowing individual consumers to bring negligence claims for solely economic injuries." *Id.*

3    Courts have accordingly permitted "ordinary" individual Ohio consumers to seek economic

4    damages from manufacturers of allegedly defective goods.  *See id.* (denying a dismissal motion

5    where individual plaintiffs sought economic damages against a washing machine manufacturer

6    under negligent design and failure to warn theories); *State Farm Mut. Auto. Ins. Co. v. Kia Motors*

7    *Am., Inc.*, 828 N.E.2d 701, 707–08 (Ohio App. 2005) (allowing recovery by individual plaintiffs

8    against an automobile manufacturer for negligence claims); *Cincinnati v. Beretta U.S.A. Corp.*,

9    768 N.E.2d 1136, 1146 (Ohio 2002) (holding that plaintiffs in Ohio can pursue "common-law

10   product liability claims" for economic damages alone).  Dometic's primary Ohio authority on this

11   question likewise relies on the privity distinction to dismiss a corporate buyer's negligence claims

12   for pure economic loss.  *See Nationwide Agribusiness Ins. Co. v. CNH Am. LLC*, 2014 U.S. Dist.

13   LEXIS 75997, at *26 (N.D. Ohio June 4, 2014) (highlighting that the plaintiff was "a commercial

14   buyer for purposes of the economic loss rule").

15          The Ohio Plaintiff in this case, Young, is an individual ordinary consumer not in privity

16   with Dometic.  *See* FAC ¶¶ 46–53, 305–15.  His negligence claims for pure economic losses

17   therefore survive Dometic's dismissal motion under Ohio state law.

18          Texas's strict version of the economic loss doctrine differs from Ohio's iteration of the

19   rule.  In Texas, "[t]he economic loss rule applies when losses from an occurrence arise from

20   failure of a product and the damage or loss is limited to the product itself."  *Equistar Chemicals,*

21   *L.P. v. Dresser-Rand Co.*, 240 S.W.3d 864, 867 (Tex. 2007).  "The rule does not preclude tort

22   recovery if a defective product causes physical harm to the ultimate user or consumer or other

23   property of the user or consumer in addition to causing damage to the product itself."  *Id.*; *Pugh v.*

24   *Gen. Terrazzo Supplies, Inc.*, 243 S.W.3d 84, 91 (Tex. App. 2007) (internal quotation omitted).

25   Texas courts accordingly define "other property" to exclude recovery for damages to a "finished

26   product caused by a defective component part."  *Id.*; *see Murray v. Ford Motor Co.*, 97 S.W.3d

27   888, 891–93 (Tex. App. 2003) (denying recovery for damages to a truck that caught fire due to a

28   faulty wiring harness).  But where "'collateral property damage exists *in addition to* damage to the

United States District Court
Northern District of California

29

1    product itself' the plaintiff can recover in tort as well as in contract."  *Alcan Aluminum Corp. v.*

2    *BASF Corp.*, 133 F. Supp. 2d 482, 503 (N.D. Tex. 2001) (quoting *Signal Oil & Gas Co. v.*

3    *Universal Oil Products,* 572 S.W.2d 320, 325 (Tex.1978)).

4         When it comes to defining "component parts," "[t]he boundary between the subject matter

5    of a contract and 'other property' when the former is a component of the latter is not completely

6    clear."  *Id.* at 503–05.  A relevant distinction in that circumstance is whether the parties "bargained

7    separately for individual components" or whether they received the integrated product as a whole.

8    *Id.*  If the plaintiff received the damaged product in a final, integrated form, "[i]njury to [that]

9    machine as a whole caused by a defective component" is non-cognizable economic loss.  *See id.* at

10   505 (denying economic losses for aluminum-based panels due to damage from a pre-existing

11   interior insulating foam); *Hininger v. Case Corp.*, 23 F.3d 124, 126 (5th Cir. 1994) (prohibiting

12   recovery against the manufacturer of a combine wheel that damaged the finished combine); *Essex*

13   *Ins. Co. v. Blount, Inc.*, 72 F. Supp. 2d 722, 724 (E.D. Tex. 1999) (looking to the product as a

14   whole in a negligence action to determine "whether the product injured itself").

15        Here, Johnston states that he purchased his RV already equipped with a defective Dometic

16   refrigerator.  FAC ¶¶ 79–80.  Johnston alleges that this refrigerator caused a fire that completely

17   destroyed his RV, and damaged his personal and surrounding property.  *Id.* ¶ 85.  Under Texas

18   law, Johnston cannot recover damages to his refrigerator or his RV, products that he received as an

19   integrated whole.  *See Mem'l Hermann Healthcare Sys. Inc. v. Eurocopter Deutschland, GMBH*,

20   524 F.3d 676, 678 (5th Cir. 2008) (prohibiting post-sale negligence claims against a helicopter

21   manufacturer where the aircraft's door separated and struck the machine's rotor blades); *American*

22   *Eagle Ins. Co. v. United Technologies Corp.,* 48 F.3d 142, 144–45 (5th Cir.1995) (denying

23   recovery for damage to an aircraft's hull caused by a defective engine); *Alcan Aluminum Corp.*,

24   133 F. Supp. at 503–05.[12]  Johnston can, however, proceed with his negligence claims to the

25

26   [12] If it were considering the question *de novo*, the Court might question whether the "component
     part" analysis should extend to the entirety of a complex, home-like product like a residential
27   vehicle, where the allegedly defective refrigerator is more like a furnishing than a faulty piece of
     wire or combine wheel.  But the Court's narrow task here is to predict what Texas state courts
28   would do "if faced with the issue."  *Alcan Aluminum Corp.*, 133 F. Supp. 2d at 505.  Given the
     above-cited decisions applying the economic loss rule in cases involving defective parts of

1    extent that he seeks damage for his "personal property and surrounding property." *See Signal Oil*

2    *& Gas Co.*, 572 S.W.2d at 325 (allowing for recovery of economic losses to surrounding real

3    property); *Murray*, 97 S.W.3d at 893 (permitting tort claims for fire damage to personal property

4    inside a truck integrating the defective component).

5        Byers, like Johnston, alleges that he purchased his RV already installed with a defective

6    Dometic refrigerator. FAC ¶ 63. But Byers alleges damage only to his Dometic refrigerator as a

7    result of Dometic's negligence, not to his personal or real property. *Id.* ¶ 69. Texas's economic

8    loss doctrine therefore entirely bars Byers's negligence claim.

9                 **b. Goehle (Washington)**

10       As with its OPLA preemption challenge, Dometic levies an equally cursory preemption

11   attack against Goehle's negligence claim. *See* Mot. at 27. Rather than rebut Dometic's

12   preemption argument as it applies to Goehle, however, Plaintiffs effectively concede the point,

13   stating that the negligence claim "may be preempted" by the Washington Products Liability Act

14   ("WPLA") to the extent that Goehle's claim is a "product liability claim seeking to remedy harm

15   other than economic loss." Opp. at 28 n.209. While Plaintiffs suggest that "Goehle asserts a

16   WPLA claim as an alternative to the negligence claim" should the Court find the negligence claim

17   preempted, Plaintiffs cannot state new causes of action not raised in the pleadings via its

18   opposition brief. The Court therefore dismisses Goehle's common law negligence claim as

19   preempted.

20                 **iv. Unjust Enrichment Claims**

21       Dometic argues that there is no independent cause of action for unjust enrichment under

22   Texas law. Mot. at 28. Byers and Johnston respond that a court should not dismiss a claim for

23   unjust enrichment as duplicative of other claims. Opp. at 29–30. In *Hancock v. Chicago Title*

24   *Insurance Co.*, 635 F. Supp. 2d 539, 560–61 (N.D. Tex. 2009), the court dismissed the plaintiffs'

25   unjust enrichment claims on the ground that under Texas law, unjust enrichment is not an

26   independent cause of action, but rather a general theory of recovery for an equitable action seeking

27

28   helicopters, cars and airplanes, the Court feels compelled to conclude that the Texas courts would
find that the rule bars a substantial part of Johnston's claim here.

United States District Court
Northern District of California

1    restitution.[13]  The Court finds *Hancock* persuasive.  On the face of the complaint, Byers and

2    Johnston are seeking to assert unjust enrichment as an independent cause of action.  *See* FAC ¶¶

3    400–08.  Dismissal of the claim is therefore warranted.

4          In addition, Dometic argues that both Young and Goehle fail to adequately plead unjust

5    enrichment under Ohio and Washington law, respectively.  Mot. at 28–29.  The opposition does

6    not respond to this argument, making no mention of either Young or Goehle and citing no case

7    law from either state.  Opp. at 29–30.  The court construes this silence as a concession of

8    Dometic's argument.  *See Linder v. Golden Gate Bridge, Highway & Transp. Dist.*, No. 4:14-cv-

9    03861 SC, 2015 WL 4623710, at *4 (N.D. Cal. Aug. 3, 2015) (dismissing the plaintiff's claim

10   because his opposition brief did not address the defendants' argument in their opening brief); *GN*

11   *Resound A/S v. Callpod, Inc.*, No. C 11-04673 SBA, 2013 WL 1190651, at *5 (N.D. Cal. Mar. 21,

12   2013) (construing failure to respond to the defendant's argument as a concession at to that

13   argument); *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132

14   (C.D. Cal. 2011) ("[I]n most circumstances, failure to respond in an opposition brief to an

15   argument put forward in an opening brief constitutes waiver or abandonment in regard to the

16   uncontested issue." (quotation marks omitted)); *Marziano v. City of Marin*, No. C-10-2740 EMC,

17   2010 WL 3895528, at *4 (N.D. Cal. Oct. 4, 2010) ("[T]he Court views [the plaintiff's] failure to

18   oppose the argument as a concession that the [claim at issue] should be dismissed.")  Accordingly,

19   dismissal of Young and Goehle's unjust enrichment claims are warranted.

20          **v.    Strict Liability Claims**

21          Finally, the Court addresses Dometic's argument that Young, Byers, Johnston, and Goehle

22   fail to adequately plead their strict liability claims.  *See* Mot. at 29–30.  Specifically, Dometic

23   argues that these plaintiffs fail to adequately allege that a feasible and safer alternative design was

24   available when their refrigerators left Dometic's control.  *See id.* at 30.  This requirement is

25   recognized by Ohio law.  *See* Ohio Rev. Code Ann. § 2307.75 ("A product is not defective in

26

27   _____

28   [13] Although *Hancock* was decided on a motion for summary judgment, a federal court has
     followed the opinion's reasoning when assessing whether there was an independent cause of
     action for unjust enrichment in the context of a motion to dismiss.  *See Roach v. Berland*, No.
     3:13-cv-4640-D, 2015 WL 5097987, at *2 (N.D. Tex. Aug. 31, 2015).

*(left margin, rotated)* United States District Court / Northern District of California

design or formulation if, at the time the product left the control of its manufacturer, a practical and technically feasible alternative design or formulation was not available that would have prevented the harm for which the claimant seeks to recover compensatory damages without substantially impairing the usefulness or intended purpose of the product."); *Schwartz v. Honeywell Int'l., Inc.*, 66 N.E.3d 118, 131 (Ohio 2016) ("A product will not be considered defective in design unless the plaintiff demonstrates that a practical and technically feasible alternative design to the product was available that would have prevented the harm for which the plaintiff seeks to recover, without substantially impairing the usefulness of the product."), *appeal allowed*, 148 Ohio St. 3d 1442 (Ohio 2017).  So too under Texas law.  *See* Tex. Civ. Prac. & Rem. Code § 82.005(a) ("In a products liability action in which a claimant alleges a design defect, the burden is on the claimant to prove by a preponderance of the evidence that . . . there was a safer alternative design."); *id.* § 82.005(b) ("In this section, 'safer alternative design' means a product design other than the one actually used that in reasonable probability:  (1) would have prevented or significantly reduced the risk of the claimant's personal injury, property damage, or death without substantially impairing the product's utility; and (2) was economically and technologically feasible at the time the product left the control of the manufacturer or seller by the application of existing or reasonably achievable scientific knowledge."); *Sims v. Kia Motors of Am., Inc.*, 839 F.3d 393, 399 (5th Cir. 2016) ("Texas . . . requires plaintiffs in design defect cases to show that there was a safer alternative design that Defendants could have used.").  Washington applies a similar version of the rule.  Wash. Rev. Code 7.72.030(1)(a) ("A product is not reasonably safe as designed, if, at the time of manufacture, the likelihood that the product would cause the claimant's harm or similar harms, and the seriousness of those harms, outweighed the burden on the manufacturer to design a product that would have prevented those harms and the adverse effect that an alternative design that was practical and feasible would have on the usefulness of the product. . .").

The refrigerators of Young, Byers, and Johnston apparently left Dometic's control no later than 2002, 2008, and 2011, respectively.  *See* FAC ¶ 46 (Young: 2002 model RV); *id.* ¶ 63 (Byers: 2011 model RV); *id.* ¶ 79 (Johnston: 2008 model RV).  Plaintiffs' allegations as to the existence of a safer and feasible alternative design are largely based upon Atwood's marketing and sale of

1   helium-based refrigerators, which allegedly do not carry the same "innate risk of explosive fire."

2   *See id.* ¶ 157.  While Dometic did not acquire Atwood until 2014, Atwood began marketing and

3   selling the refrigerators in or about 2001.  *Id.*  Plaintiffs allege that "[w]hile Dometic was certainly

4   aware of, and able to develop a safer refrigerator system since at least 2001 when Atwood was

5   openly marketing the technology, there can be no question that at least as of 2014, when Dometic

6   acquired Atwood, Dometic in fact possessed reasonable, safer alternative technology to the

7   Defective Gas Absorption Refrigerators.").  *Id.* ¶ 159.  Dometic selectively quotes the second

8   portion of this statement to argue that Plaintiffs have not adequately pled the existence of a

9   feasible and alternative design prior to 2014.  *See* Mot. at 30.  But considering the relevant

10  allegations in full, the Court finds that Young, Byers, and Johnston have plausibly alleged the

11  existence of a safer and feasible alternative design at the time that their allegedly defective

12  refrigerators left Dometic's control.  *See* FAC ¶¶ 149(k), 156–59, 168, 398.  Consequently, the

13  Court finds that dismissal of their strict liability claims under Ohio and Texas law is not warranted

14  at this stage of the proceedings.[14]

15       In contrast, both parties acknowledge that Goehle's RV bore a 2000 model year.  Mot. at

16  29; Opp. at 30 n.21.  This predates Atwood's purportedly safer design.  Because Plaintiffs' fail to

17  include factual allegations regarding a pre-2001 alternative product that could have prevented the

18  harms alleged, the Court dismisses Goehle's strict products liability claim.

## IV.    LEAVE TO AMEND

20       Where dismissal is appropriate under Rule 12(b)(1), a court should grant leave to amend

21  "unless it is clear . . . that the complaint could not be saved by any amendment."  *Maya*, 658 F.3d

22  at 1072 (quotation marks omitted).  Likewise, if dismissal is appropriate under Rule 12(b)(6), a

23  court "should grant leave to amend even if no request to amend the pleading was made, unless it

24  determines that the pleading could not possibly be cured by the allegation of other facts."  *Lopez v.*

25

26  _____

27  [14] Dometic argues that the economic loss doctrine bars Young, Byers, and Johnston from
    recovering in strict liability for "purely economic" injuries.  Mot. at 30.  To the extent that Byers
    and Johnston allege strict products liability damages co-extensive with those flowing from their
28  negligence claims, Byers and Johnston can recover under either tort theory as set forth in Part
    III.E.iii for the reasons provided therein.  *See, e.g.*, *American Eagle Ins. Co.*, 48 F.3d at 144–45.

*Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (quotation marks and citation omitted).  Applying

these standards, the Court grants leave to amend as to all claims that are dismissed, except for the

standalone unjust enrichment cause of action asserted by Byers and Johnston, which is barred as a

matter of law and therefore could not possibly be cured by the allegation of other facts.  *See Lopez*,

203 F.3d at 1130.

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

United States District Court
Northern District of California

35

United States District Court
Northern District of California

## V.   CONCLUSION

For the forgoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Dometic's motion to dismiss as summarized in the table below.  Plaintiffs must file any amended complaint within 28 days of the date of this Order.  In addition to the "clean" version of the second amended complaint, such a filing shall also include a "redlined" version clearly indicating all changes.

| | California Claims | Disposition |
|---|---|---|
| Papasan | All Claims | Dismissed with leave to amend. |
| | **Washington Claims** | **Disposition** |
| Goehle | Violation of Washington CPA | Not dismissed. |
| | Unjust Enrichment | Dismissed with leave to amend. |
| | Negligence | Dismissed with leave to amend. |
| | Strict Products Liability | Dismissed with leave to amend. |
| | **Ohio Claims** | **Disposition** |
| Young | Violation of OCSPA | Dismissed with leave to amend. |
| | Breach of Implied Warranty of Merchantability | Dismissed with leave to amend. |
| | Unjust Enrichment | Dismissed with leave to amend. |
| | Negligence | Not dismissed. |
| | Strict Products Liability | Dismissed with leave to amend. |
| | **Texas Claims** | **Disposition** |
| Byers Johnston | Violation of DTPA | Dismissed with leave to amend as set forth in Part III.E.i.b. |
| | Breach of Implied Warranty of Merchantability | Not dismissed. |
| | Fraud by Concealment | Dismissed with leave to amend as set forth in Part III.E.i.b. |
| | Strict Products Liability | Dismissed with leave to amend as set forth in Part III.E.v. |
| | Unjust Enrichment | Dismissed without leave to amend. |
| | Negligence | Dismissed with leave to amend as set forth in Part III.E.iii.a. |
| | **Florida Claims** | **Disposition** |
| Vollbergs | All Claims | Dismissed with leave to amend. |

**IT IS SO ORDERED.**

Dated:   10/27/2017

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge